**No. 25-60663**

---

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Todd McCain, individually and on behalf of all others similarly situated,

Plaintiff-Appellant

v.

Mary Mahoney's, Incorporated, doing business as Mary Mahoney's Old French House; Anthony C. Cvitanovich; Quality Poultry & Seafood, Incorporated; James W. Gunkel; Todd A. Rosetti; Does 1-10,

Defendants-Appellees

---

**Appeal from the U.S. District Court for the Southern District of Mississippi**
No. 1:24-CV-241, Hon. Louis Guirola, Jr.

---

### ORIGINAL BRIEF OF PLAINTIFF-APPELLANT

---

*Respectfully submitted by:*

H.S. Bartlett III (La. Bar No. 26795),
  *Lead Appellate Counsel*
FISHMAN HAYGOOD LLP
201 St. Charles Ave., Suite 4600
New Orleans, LA 70170
T: (504) 586-5252
F: (504) 586-5250
tbartlett@fishmanhaygood.com

Gerald M. Abdalla, Jr. (MSB No.
  101213)
ABDALLA LAW, PLLC
602 Steed Road, Suite 200
Ridgeland, MS 39157
T: (601) 278-6055
jerry@abdalla-law.com

*Attorneys for Todd McCain, individually
and on behalf all others similarly situated*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Local Rule 28.2.1, undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Anthony Cvitanovich | Tim Holleman of Boyce Holleman & Associates Gulfport, MS |
| Anthony Cvitanovich | Matthew McDade of Balch & Bingham, L.L.P. Gulfport, MS |
| Anthony Cvitanovich | Bryan Sawyers of Balch & Bingham, L.L.P. Gulfport, MS |
| Anthony Cvitanovich | Michael Cavanaugh of Michael F. Cavanaugh Law Firm Biloxi, MS |
| James Gunkel | Joe Owen of Owen, Owen & Smith, P.L.L.C. Gulfport, MS |
| Mary Mahoney's, Incorporated | Tim Holleman of Boyce Holleman & Associates Gulfport, MS |
| Mary Mahoney's, Incorporated | Matthew McDade of Balch & Bingham, L.L.P. Gulfport, MS |
| Mary Mahoney's, Incorporated | Bryan Sawyers of Balch & Bingham, L.L.P. Gulfport, MS |
| Mary Mahoney's, Incorporated | Michael Cavanaugh of Michael F. Cavanaugh Law Firm Biloxi, MS |
| Quality Poultry & Seafood, Incorporated | William Gibbens of Schonekas, Evans, McGoey & McEachin, L.L.C. New Orleans, LA |
| Quality Poultry & Seafood, Incorporated | Emily Hickman of Schonekas, Evans, McGoey & McEachin, L.L.C. New Orleans, LA |

i

| Quality Poultry & Seafood, Incorporated | Wayne Hengen of Hengen & Hangen Biloxi, MS |
|---|---|
| Todd Rosetti | Joseph Hollomon of Joe M. Hollomon & Associates, P.A. Jackson, MS |

| Appellants: | Counsel for Appellants: |
|---|---|
| Todd McCain | Harvey Bartlett of Fishman Haygood, L.L.P. New Orleans, LA |
| Todd McCain | William Gill of Gill, Ladner & Priest, P.L.L.C. Ridgeland, MS |
| Todd McCain | James Priest of Gill, Ladner & Priest, P.L.L.C. Ridgeland, MS |
| Todd McCain | Gerald Abdalla of Abdalla Law, P.L.L.C. Ridgeland, MS |
| Todd McCain | Joey Dumas of Dumas Law Firm, L.L.C. Mobile, AL |

Respectfully Submitted,

*/s/ H.S. Bartlett III*

H.S. Bartlett III (La. Bar No. 26795)
FISHMAN HAYGOOD LLP
201 St. Charles Ave., Suite 4600
New Orleans, LA 70170
T: (504) 586-5252
F: (504) 586-5250
tbartlett@fishmanhaygood.com

*Counsel for Plaintiff-Appellant*

ii

**STATEMENT REGARDING ORAL ARGUMENT**

Plaintiff-Appellant respectfully requests oral argument. The primary legal issue in this appeal—the district court's use of an overly restrictive standard for plausibility in the pleading of injury-in-fact for standing purposes—is an issue that requires this Court's careful guidance for the district courts in this Circuit. And, while the appropriate standard for assessing plausibility is well-established and the district court's erroneous application of that standard is easy and straightforward to discern, this Court's review of the district court's overly restrictive plausibility analysis requires review of a Record on Appeal that contains both the pleadings in this civil proceeding and records from parallel criminal proceedings against the defendants that were incorporated and attached to pleadings in this matter. Oral argument will allow the parties to assist the Court in navigating the Record on Appeal's references to these parallel proceedings, and in laying out the appropriate plausibility standard. *See* FED. R. APP. P. 34(a)(1).

iii

# TABLE OF CONTENTS

Certificate of Interested Persons ..................................................................................i

Statement Regarding Oral Argument ..................................................................... iii

Table of Contents ..........................................................................................................iv

Table of Authorities ....................................................................................................vi

I.     Jurisdictional Statement......................................................................................1

II.    Statement of the Issues .........................................................................................2

III.   Statement of the Case ...........................................................................................3

      A. The Defendants Admitted to Criminally Conspiring to Defraud Their Customers ...................................................................... 5

      B. Todd McCain, on Behalf of Himself and a Putative Class, Brought Suit to Recover his Losses Caused by Defendants' Admitted Criminal Fraudulent Conspiracy ............................... 7

      C. After the District Court Entered Judgment Dismissing the Complaint Without Prejudice, Mr. McCain Moved Under Rules 59(e) and 15(a) for Reconsideration of the Dismissal of the Claims in the First Amended Complaint and for Leave to File a Second Amended Class Complaint.......................................... 12

      D. The District Court Denied Mr. McCain's Motion and Entered Final Judgment Dismissing his Claims ................................. 23

IV.    Standard of Review...............................................................................................25

V.     Summary of the Argument .................................................................................27

VI.    Argument ...............................................................................................................29

      A. The District Court Applied an Overly Strict and Narrow "Plausibility" Requirement ................................................. 29

      B. Mr. McCain Alleged a Plausible Injury-In-Fact ..................... 36

iv

VII.    Conclusion ........................................................................................42

Certificate of Service ...............................................................................43
Certificate of Compliance ........................................................................44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Indem. Co. v. Bhagat*, 164 F.4th 426 (5th Cir. 2026)...........................27, 39

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..............................................................15, 30

*Barilla v. City of Houston*, 13 F.4th 427 (5th Cir. 2021).....................................25, 26

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)......................................................30

*Calhoun v. Collier*, 78 F.4th 846 (5th Cir. 2023)................................................26, 28, 32

*Carson v. Polley*, 689 F.2d 562 (5th Cir. 1982).........................................................26

*Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762 (5th Cir. 2019)..............27, 30

*Cole v. Gen'l Motors Corp.*, 484 F.3d 717 (5th Cir. 2007).....................................36

*Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d
    127 (5th Cir. 2009) ....................................................................................26

*Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686 (5th Cir. 2021) ...........................29

*Earl v. Boeing Co.*, 53 F.4th 897 (5th Cir. 2022) .................................................12, 39

*George v. SI Group, Inc.*, 36 F.4th 611 (5th Cir. 2022) .........................................30

*Ghedi v. Mayorkas*, 16 F.4th 456 (5th Cir. 2021)................................................30, 36

*Lowery v. Mills*, 157 F.4th 729 (5th Cir. 2025) ..................................................27, 30

*Ondrusek v. U.S. Army Corps of Engineers*, 123 F.4th 720 (5th Cir.
    2024) ........................................................................................................30

*Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002) ................ 12-13

*Simon v. U.S.*, 891 F.2d 1154, 1159 (5th Cir. 1990)................................................16

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ..........................................................29

*Stratta v. Roe*, 961 F.3d 340 (5th Cir. 2020) .........................................................26

*Tex. Tribune v. Caldwell County*, 121 F.4th 520 (5th Cir. 2024)............................29

ii

*Wilson v. Centene Management Co., L.L.C.*, --- F.4th ---, 2026 WL
    473217 (5th Cir. 2/19/2026) .......................................................36, 39, 40, 41

## Statutes and Rules

18 U.S.C. § 1964 ....................................................................................................1

28 U.S.C. § 1291 ....................................................................................................2

28 U.S.C. § 1331 ....................................................................................................1

28 U.S.C. § 1367 ....................................................................................................1

Fed. R. Civ. P. 12 ...................................................................................................1

## Other authorities

Black's Law Dictionary (11th ed.).........................................................................33

## I.     Jurisdictional Statement

On August 2, 2024, Plaintiff-Appellant Todd McCain filed his original Class Action Complaint in the Southern Division of the Southern District of Mississippi, on behalf of himself and all those similarly situated, alleging a federal-law claim under RICO, 18 U.S.C. § 1964(c), as well as causes of action under Mississippi state law, against Defendants-Appellees Mary Mahoney's, Inc., doing business as Mary Mahoney's Old French House ("Mahoney's"); and Anthony C. Cvitanovich, the co-owner and manager of Mahoney's.[1] On September 30, 2024, Mr. McCain filed his First Amended Class Action Complaint, adding the Defendants-Appellees Quality Poultry & Seafood, Inc. ("QPS"), a wholesale supplier of seafood to Mahoney's; James W. Gunkel, QPS's business manager; and Todd A. Rosetti, QPS's sales manager.[2] The federal district court's jurisdiction was grounded in federal question jurisdiction pursuant to 28 U.S.C. § 1331, as well as supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

On June 10, 2025, the district court entered an order granting the defendants' motions to dismiss for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1), dismissing Mr. McCain's claims without prejudice.[3] On July 2, 2025, Mr. McCain timely filed a Rule 59(e) motion to alter or amend the June 10 Judgment and Rule

---

[1] ROA.17, ROA.19.
[2] ROA.141, ROA.144 – ROA.145.
[3] ROA.1251, ROA.1263.

15(a) motion for leave to file a Second Amended Class Complaint,[4] limiting his claims to RICO claims under a more focused "class period" of time and revising, *inter alia*, his allegations of injury-in-fact. On November 17, 2025, the district court entered an order denying Mr. McCain's motion to alter or amend the June 10 Judgment and denying leave to file the Second Amended Class Complaint[5]; and also entered a Final Judgment that same day, dismissing Mr. McCain's claims without prejudice.[6] On December 1, 2025, Mr. McCain timely filed a notice of appeal.[7] This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## II.     Statement of the Issues

1.     Broadly, did the district court apply an overly-narrow and restrictive plausibility requirement, subjecting Mr. McCain's allegations of injury-in-fact to a rigorous factual and evidentiary critique rather than taking his allegations as true,[8] which resulted in the district court's June 10 Judgment dismissing Mr. McCain's claims and in the erroneous finding in the November 17 Judgment that Mr. McCain's proposed Second Amended Class Complaint would be futile?

2.     Specifically, whether allegations that the defendants admitted to criminally conspiring to defraud Mahoney's customers by selling them imported

---

[4] ROA.1264.
[5] ROA.1604.
[6] ROA.1613.
[7] ROA.1614.
[8] ROA.1611 – ROA.1612.

frozen fish as premium-priced local-caught fish, and that plaintiff paid for premium-priced local-caught fish at the time that "the overwhelming majority—if not all"[9] of the dishes represented by defendants as containing premium-priced local-caught fish were instead the fraudulently substituted frozen imported fish, and that the defendants' conduct was "an unbroken chain" of fraudulent mislabeling of fish during the time within which Mr. McCain ordered what were misrepresented as local-caught snapper entrées, sufficiently satisfy the pleading requirement that Mr. McCain plausibly allege he was injured-in-fact by the defendants' admitted criminal conspiracy to defraud its customers?

## III.    Statement of the Case

Mahoney's has long been a beloved restaurant institution on the Mississippi Gulf coast,[10] specifically because "iconic Mahoney's [is] recognized nationally for its Southern hospitality, unique atmosphere ***and, yes, Gulf seafood***."[11] However, speaking specifically of Mahoney's and its co-defendants here, the U.S. Attorney

---

[9] ROA.1270.

[10] ROA.864 (Ben Milam, "Fishy Business: Mary Mahoney's pleads guilty to mislabeling fish, wire fraud" (May 30, 2024)) (characterizing Mahoney's as "one of Mississippi's best-known restaurants"); ROA.875 (Peter Romeo, "Landmark Mississippi restaurant admits it sold mislabeled fish" (May 31, 2024)) (characterizing Mahoney's as "a standout of Biloxi's dining scene since 1962"); ROA.877 (Martha Sanchez, "Seafood restaurants, fishermen say Mary Mahoney's guilty plea is sign of industry trouble" (May 31, 2024)) (characterizing Mahoney's as "a spot where celebrities dine, that locals adore and that just this month was named among the most beautiful restaurants in the country");

[11] ROA.881 (Anita Lee, Sun Herald, "Mary Mahoney's is in hot water over mislabeling frozen seafood. Diners love them anyway" (June 4, 2024)).

for the Southern District of Mississippi said, "When people spend their hard-earned dollars to enjoy the incredible local seafood on the Mississippi Gulf Coast, they should get what they paid for, not frozen fish from overseas."[12]

The defendants—Mahoney's and its seafood supplier QPS, along with Mahoney's co-owner/manager and QPS's business manager and sales manager—admitted to criminally conspiring to defraud Mahoney's customers by selling cheap, frozen imported fish as premium-priced, locally caught, fresh fish.[13] At sentencing in the defendants' criminal proceedings, the government represented that it would not seek restitution for the Mahoney's customers who suffered injury from the defendants' admitted criminal conspiracy to defraud them, because of the sheer number of victims and difficulty to identify and locate them all.[14]

With the fraudulent conduct and aim of defrauding customers to pay the higher prices for local-caught, fresh fish when they were instead served frozen foreign fish not just plausible, but admitted, Mr. McCain brought a putative class

---

[12] ROA.855.

[13] ROA.1400 (Criminal Information regarding Mahoney's); ROA.1418 (Plea Agreement of Mahoney's); ROA.1423 (Criminal Information regarding Mr. Cvitanovich); ROA.1425 (Mr. Cvitanovich's Plea Agreement); ROA.1432 (Indictment of QPS); ROA.1445 (QPS's Plea Agreement); ROA.1451 (Mr. Gunkel's Criminal Information); ROA.1454 (Mr. Gunkel's Plea Agreement); ROA.1461 (Mr. Rosetti's Criminal Information); ROA.1465 (Mr. Rosetti's Plea Agreement).

[14] ROA.1296 – ROA.1297 (sentencing transcript for Mr. Cvitanovich) ("… there's been a finding that the identification of the victims would involve too complex a process to identify, locate, and notify all of them; so therefore restitution is not an issue in this case"); ROA.1340 – ROA.1341 (plea transcript for Mr. Cvitanovich) ("… there are multiple victims over a long period of time ….").

4

claim under RICO (and initially under various Mississippi state-law causes of action) to achieve that restitution civilly.[15] Nevertheless, and despite Mr. McCain proposing amendments to his class claims to provide additional details that were developed during the parallel sentencing of the defendants, the district court held that he had not plausibly alleged an injury-in-fact, based on inferences that Mr. McCain was "apparently" satisfied with the fish and its pricing because he returned and ordered the fish again.[16] Mr. McCain brings this appeal.

### A.    The Defendants Admitted to Criminally Conspiring to Defraud Their Customers

On April 26, 2024, Mahoney's was charged criminally with conspiring "to defraud, mislead consumers and thereby to profit" by knowingly receiving and misbranding imported fish as "premium higher priced local species."[17]

> It was the objective of the conspirators and the purpose of their conspiracy to benefit financially by misbranding and by aiding and facilitating the misrepresentation of the species of fish they and others sold, often representing as locally sourced premium fish, species that were neither the species identified on the menu, for which customers were charged nor, as represented, locally caught in the Mississippi Gulf.[18]

Mahoney's was charged with selling to its customers seafood procured from its supplier that it "falsely claim[ed] … to be fresh locally sourced premium species,

---

[15] ROA.17 (original Class Complaint); ROA.141 (First Amended Class Complaint); ROA.1268 (Proposed Second Amended Class Complaint).
[16] ROA.1611.
[17] ROA.1401.
[18] ROA.1402.

including Red Snapper, Snapper, and Redfish, when they knew full well it was neither the species it was represented to be on Mahoney's menu nor sourced from local waters."[19] Mahoney's represented on its menu and on various websites that "all of our seafood is caught in our bountiful gulf waters," in order "to appeal to customers seeking local Gulf Coast seafood."[20] Instead, however, Mahoney's procured from its supplier, and sold as locally caught snapper and red snapper and redfish, Lake Victoria perch, triggerfish, "trigger-style fish," triple tail, and unicorn filefish imported frozen from Africa, Suriname in South America, and India,[21] "selling a cheap fish as an expensive one."[22] The same day, Mr. Cvitanovich, Mahoney's co-owner and manager, was charged as part of the conspiracy with knowingly and willfully purchasing the "imported and other inexpensive seafood" and then "advertis[ing] and sell[ing] it at his restaurant as premium local species when they were neither premium nor local."[23]

On May 30, 2024, Mahoney's and Mr. Cvitanovich pled guilty to the April 26, 2024, Criminal Informations.[24] By entering the Plea Agreement, "Mahoney's admits to the facts alleged in the Information…."[25]

---

[19] ROA.1403.
[20] ROA.1403.
[21] ROA.1404 – ROA.1410.
[22] ROA.1405.
[23] ROA.1424.
[24] ROA.1412; ROA.1425.
[25] ROA.1413.

On July 31, 2024, QPS and Mr. Gunkel and Mr. Rosetti were criminally charged with participating in the conspiracy "to defraud and mislead consumers" by knowingly supplying Mahoney's with imported inexpensive fish species to sell to consumers as "premium priced local fish species."[26] The Criminal Information for QPS identified as overt acts sales of the non-local fish to Mahoney's from January 2015 through November 2019.[27] On August 27, 2024, QPS, Mr. Gunkel, and Mr. Rosetti pled guilty to participating in the conspiracy to defraud consumers.[28]

### B.    Todd McCain, on Behalf of Himself and a Putative Class, Brought Suit to Recover his Losses Caused by Defendants' Admitted Criminal Fraudulent Conspiracy

On August 2, 2024, Mr. McCain brought his original Class Complaint on behalf of himself and a putative class of similarly situated people against Mahoney's and Mr. Cvitanovich[29]; on September 30, 2024, after the criminal charges and guilty pleas of QPS and Mr. Gunkel and Mr. Rosetti, Mr. McCain filed his First Amended Class Complaint to add them as defendants and to incorporate the additional details supplied in their criminal proceedings, to bring

---

[26] ROA.1434 – ROA.1442, ROA.1451 – ROA.1453, ROA.1461 – ROA.1464.
[27] ROA.1436 – ROA.1442.
[28] ROA.1445, ROA.1454, ROA.1465.
[29] ROA.17.

claims "aris[ing] from Defendants' decade long criminal scheme and conspiracy that targeted and financially victimized thousands of trusting customers."[30]

Mr. McCain is an Alabama resident, and he, like many others, made periodic trips to Biloxi to eat at Mahoney's, alleging visits in July 2013, December 2016, and August 2018 to "purchase[] what Defendants marketed and represented as snapper and red snapper."[31] Mr. McCain alleged that the Defendants conspired "to import, mislabel, price, and ultimately sell inexpensive perch, triggerfish, triple tail, and unicorn filefish sourced from Africa, Suriname, and India to unsuspecting customers[,] … [s]tarting as early as 2002, but no later than 2012," amounting to "at least 58,750 pounds (over 29 tons) of inexpensive frozen fish" that was sold "to Plaintiff and the putative class as high-priced premium local fresh fish[.]"[32] Mr. McCain alleged that this conduct "continu[ed] through November 2019,"[33] showing that his three visits were within the period of time the criminal conspiracy to defraud customers was under way.

Mr. McCain alleged that the Defendants' "scheme and conspiracy was to directly profit from the sale of inexpensive frozen Foreign Fish as high-priced premium local fish at the expense of Plaintiff and the putative class," who

---

[30] ROA.141.
[31] ROA.144.
[32] ROA.142.
[33] ROA.146.

therefore "suffered ascertainable monetary losses based on Defendants' fraudulent scheme."[34] Put simply, the defendants' business plan was to profit from fraudulently over-charging for the frozen foreign fish. "[T]hey targeted Plaintiff and the Classes' funds and avoided the expenses associated with selling high-priced premium fresh fish."[35] Mr. McCain alleged that the Defendants' conspiratorial and fraudulent conduct "directly and foreseeably caused Plaintiff and the putative class to purchase inexpensive foreign fish species."[36] And that "Plaintiff and the putative class have suffered actual monetary damages for all amounts paid as a result of Defendants' unlawful scheme."[37] Specifically, in the First Amended Class Complaint, Mr. McCain alleged his and the putative class's injury-in-fact as "[a]ll payments made for the Foreign Fish, as Plaintiff and the Class would not have paid for the Foreign Fish at the time of purchase had Defendants disclosed the true nature of the fish," or in the alternative "the significant overpayment for the Foreign Fish at the time of purchase."[38] "[A]t a minimum," Mr. McCain emphasized, the defendants' fraudulent scheme caused

---

[34] ROA.147.

[35] ROA.166.

[36] ROA.147; *see also* ROA.148 ("Defendants' scheme and conspiracy included marketing and advertising high-priced premium fresh fish on Mary Mahoney's menu and through several interstate wire and electronic communications ….. There and elsewhere, Mary Mahoney's stated that 'all of our seafood is caught in our bountiful gulf waters' to appeal to individuals throughout the United States seeking premium local Gulf Coast seafood.").

[37] ROA.156.

[38] ROA.167.

9

him and the putative class to "pay artificially inflated prices for the Foreign Fish."[39]

Mr. McCain alleged a series of communications among the Defendants acknowledging the pervasiveness of their scheme to sell cheap foreign fish as premium high-priced local fish.[40] These allegations included a January 19, 2018, email among QPS personnel to sell African Perch in place of other fish at the higher pricing: "'Raise the price and make money where we can make money!'"[41] And in September 2018, Mahoney's co-owner Mr. Cvitanovich sent a text message to QPS's Mr. Rosetti ordering African perch while QPS's premises were under a federal search, showing that "Mary Mahoney's *regularly* mislabeled and sold [perch] to customers as local Mississippi Gulf Coast snapper."[42] Mr. McCain alleged that, between December 2013 and November 2019 "at least 58,750 pounds of frozen foreign perch, triggerfish, triple tail, and unicorn filefish" was sold by defendants,[43] citing directly to the Mahoney's Criminal Information (attached as an exhibit to the First Amended Class Complaint) for that number and that time period.[44] And, Mr. McCain alleged, because of "sophisticated methods of deception" employed by the defendants, "[n]ot surprisingly, Plaintiff and the

---

[39] ROA.168.
[40] ROA.149 – ROA.152.
[41] ROA.150.
[42] ROA.150 (emphasis added).
[43] ROA.151; *see also* ROA.162, ROA.163.
[44] ROA.186.

10

putative class did not discover, nor could they have discovered, Defendants' scheme and conspiracy on their own."[45]

Based on the allegations citing the information developed in the criminal proceedings,[46] Mr. McCain alleged that "Defendants *perpetually* misrepresented to Plaintiff and the putative class that they were purchasing high-priced premium local fish, when in fact [they] were purchasing inexpensive frozen perch, triggerfish, triple tail, and unicorn filefish sourced from Africa, Suriname, and India."[47] Mr. McCain specifically alleged that he had "purchased what Defendants fraudulently marketed and represented as high-priced premium local snapper and red snapper at Mary Mahoney's" on July 29, 2013, December 28, 2016, and August 21, 2018,[48] dates squarely within the range of dates of specific alleged activities and communications among the defendants to order and supply the inexpensive frozen fish to Mahoney's.[49]

---

[45] ROA.155.

[46] Mr. McCain's First Amended Class Complaint specifically provided allegations of the defendants' criminal guilty pleas, along with the detailed charges. *See, e.g.*, ROA.153 – ROA.154.

[47] ROA.150 (emphasis added).

[48] ROA.152.

[49] *See* ROA.149 – ROA.151.

**C.    After the District Court Entered Judgment Dismissing the Complaint Without Prejudice, Mr. McCain Moved Under Rules 59(e) and 15(a) for Reconsideration of the Dismissal of the Claims in the First Amended Complaint and for Leave to File a Second Amended Class Complaint**

Nevertheless, despite Mr. McCain's allegations in the First Amended Class Complaint that the defendants' substitution of fresh, local fish with the inexpensive frozen foreign fish was "perpetual" and "regular" for a large time period that encompassed dates when he traveled to Mahoney's and purchased what he had been led to believe was fresh, local fish, and that the defendants had pled guilty to a criminal conspiracy to misrepresent more than 29 tons of such inexpensive frozen foreign fish as fresh, local fish during that period, the district court granted the defendants' 12(b)(1) motion to dismiss for lack of jurisdiction on the basis of a failure to plausibly allege an injury-in-fact.[50]

The district court first turned to Mr. McCain's alleged economic injury as "a full refund based on the assertion that he would not have bought the fish if he had known it was foreign as opposed to local snapper or red snapper,"[51] evaluating that alleged injury isolated from his alternative injury of overcharge. Accordingly, the district court held that the alleged damages were similar to those in *Earl v. Boeing Co.*, 53 F.4th 897 (5th Cir. 2022), and in *Rivera v. Wyeth-Ayerst Laboratories*, 283

---

[50] ROA.1251.
[51] ROA.1256.

12

F.3d 315 (5th Cir. 2002), where the Court held there could be no concrete injury where the plaintiff had paid for an effective pain killer and had "received just that." 283 F.3d at 320-21.[52] The district court held that, similarly, Mr. McCain "paid for fish, which he may have sincerely believed to be local snapper or red snapper. However, he consumed the meal without complaint or concern."[53]

Weighing the allegations and making inferences against Mr. McCain, the district court found, "*[a]pparently satisfied with the fare*, he paid the bill, again without question or objection. … Notably McCain returned on two separate occasions to again eat at Mary Mahoney's restaurant."[54] Continuing to make inferences of the "apparent" facts, the district court concluded, "Thus, on three separate occasion McCain ordered, ate and paid for three, *apparently* satisfactory, fish dinners."[55] The district court held that his later "regret" of making the purchase "does not constitute a … cognizable injury under Article III."[56]

Relying again on *Earl*, the district court then brushed aside Mr. McCain's alternative "economic injury of overpayment."[57] Without examining the allegations that the defendants had "perpetually" and "regularly" substituted inexpensive frozen foreign fish for fresh local fish, the district court found that "he

---

[52] Cited at ROA.1256.
[53] ROA.1257.
[54] ROA.1257 (emphasis added).
[55] ROA.1258 (emphasis added).
[56] ROA.1258.
[57] ROA.1258.

13

does not allege that QPS and Mahoney's mislabeled all of the fish they sold or that Mahoney's mislabeled all of the snapper it sold on a date that he purchased fish."[58] While the district court correctly phrased the relevant question: "the pertinent question in the present case is whether the facts pled by McCain would allow the Court to reasonably infer that Mahoney's restaurant served him foreign fish but charged him for local fish,"[59] it nevertheless ended up granting the defendants' motion to dismiss, dismissing Mr. McCain's claims, though without prejudice.[60] Notably, the district court found that the dates on which Mr. McCain alleged the defendants "purchased or sold mislabeled fish—January 26, 2015, July 5, 2017, January 19, 2018, April 16, 2018, September 19, 2018, September 27, 2018, October 18, 2018, February 21, 2019, and May 26, 2019, through August 16, 2019 … are not close in time to the three dates on which McCain claims he ate seafood at Mahoney's restaurant—July 29, 2013, December 28, 2016, and August 21, 2018."[61] While two of the dates Mr. McCain alleges he ordered "what Defendants fraudulently marketed and represented as high-priced premium local snapper and red snapper at Mary Mahoney's"[62] were within less than a month of the alleged

---

[58] ROA.1258.
[59] ROA.1258.
[60] ROA.1263.
[61] ROA.1261 n.3.
[62] ROA.152.

14

dates of supply of the frozen foreign fish, the district court did not express how "close in time" would have been close enough to clear its plausibility hurdle.

The district court cited the facial plausibility standard from *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), for this inquiry, but ignored the allegations on the face of the First Amended Class Complaint regarding the pervasiveness of the substitution scheme and focused on its characterization that Mr. McCain alleged that he ate at Mahoney's "on only three occasions over a five-year period."[63] The district court then cited to allegations in the First Amended Complaint that varied as to when the scheme started, with alleged start-dates ranging from "as early as 2002" to December 2012, though consistently alleging an end-date of November 2019, to find that the allegations in the First Amended Complaint were "self-contradicting" and "implausible on its face," failing to allege "when foreign fish was substituted for red snapper, and not if any was sold to McCain on any occasion [when] he dined at Mary Mahoney's restaurant."[64] (In fact, Mr. McCain's First Amended Class Complaint specifically alleged three dates when he was served frozen foreign fish that had been "fraudulently marketed and represented as high-priced premium local snapper and red snapper" and that the defendants had "perpetually misrepresented to Plaintiff" that the "inexpensive frozen perch,

---

[63] ROA.1260 – ROA.1261.
[64] ROA.1261 – ROA.1262.

15

triggerfish, triple tail, and unicorn filefish from Africa, Suriname, and India" was actually "high-priced premium local fish.")[65]

While expressly reserving for appeal arguments regarding the standard applied by the district court in granting defendants' Rule 12(b)(1) motion to dismiss,[66] Mr. McCain filed a Rule 59(e) motion to alter or amend the district court's June 10 Judgment and Rule 15(a) motion for leave to file a Second Amended Complaint[67] that sought to address the factual concerns raised by the district court within its application of that standard by incorporating additional and more precise facts that had come out in the ongoing sentencing phase of the parallel criminal proceedings.[68]

In the proposed Second Amended Class Complaint, Mr. McCain relied on newly available documents from the parallel criminal proceedings against the defendants (including the transcripts from Mr. Cvitanovich's sentencing, publicly

---

[65] ROA.152.

[66] ROA.1493 – ROA.1494 ("Plaintiff is aware that Rule 59 motions should not be used to relitigate old matters or raise new arguments. *See Simon v. U.S.*, 891 F.2d 1154, 1159 (5th Cir. 1990). As such, Plaintiff reserves for any necessary appeal his arguments regarding the appropriate standard for evaluating the concrete and particularized nature of the damages alleged in his First Amended Class Complaint that was at issue in the June 10 Judgment; instead, for purposes of this motion, Plaintiff accepts the standard as articulated in the June 10 Judgment and requests that his Court vacate that Judgment and grant leave for Plaintiff to file the Second Amended Class Complaint as the proposed amendment addresses the standard as articulated and applied by this Court.").

[67] ROA.1264.

[68] Other than the criminal proceedings, no additional facts had been developed in this litigation at that point because "[f]ormal discovery has not commenced, as an initial scheduling conference has yet to be set by the Court and there is no scheduling order in this matter." ROA.1488.

released on March 3, 2025, and from Mr. Rosetti's sentencing, publicly available on March 12, 2025).[69] In the revisions of Mr. McCain's allegations in the proposed Second Amended Class Complaint were included a number of amendments that directly addressed the findings underlying the district court's June 10 Judgment:

- As to the district court's finding that Mr. McCain's alleged damages were not sufficiently concrete to the extent the Complaint sought damages for fish dinners "he would not otherwise have purchased,"[70] the Second Amended Class Complaint ("SACC") eliminated the damages theory for full refund and focused solely on the overcharge-by-fraud damages from the First Amended Class Complaint by alleging that Mr. McCain, individually and on behalf of the proposed class, does not seek as damages that the fish dinners would not have been purchased, but solely for the overpayment for those fish dinners due to fraudulent mislabeling of the foreign fish:

  o SACC ¶ 1 ("… tens of thousands of individuals who ordered and ***paid higher prices*** customary for authentic snapper at Mary Mahoney's. Instead, Plaintiff and the putative class received inexpensive and inferior [Foreign Fish]")[71] (emphasis added);

---

[69] ROA.1595.
[70] ROA.1258.
[71] ROA.1268.

17

- o SACC ¶ 2 (identifying the scheme as involving fraud with the purpose of increasing profits (not to sell fish that otherwise would not be purchased at all))[72];

- o SACC ¶ 3 (identifying the fraud as involving substitution of low-price fish for higher-priced fish: "Defendants collectively imported, mislabeled, and sold approximately 55,500 entrées to Plaintiff and the putative class at higher prices customary for authentic snapper, when in fact, each entrée was instead inexpensive foreign fish")[73];

- o SACC ¶ 8 (identifying the crux of the fraud as a pricing concern, not the sale of the fish altogether: "The Foreign Fish were not as marketable *pricewise*; as they were inferior and accordingly much less expensive in comparison to authentic snapper. Hence, the reason the Defendants concealed the scheme.")[74] (emphasis added);

- o SACC ¶ 9 (alleging the class losses as "equal to the difference between what Mary Mahoney's paid QPS for the Foreign Fish and the actual price Mary Mahoney's would have paid for authentic snapper during the class period.")[75];

---

[72] ROA.1269.
[73] ROA.1269.
[74] ROA.1270.
[75] ROA.1270.

- o SACC ¶ 27 ("Plaintiff and the putative class accordingly paid a significantly higher price for authentic snapper.")[76];

- o SACC ¶ 28 (alleging that Defendants' scheme "… caused Plaintiff and the putative class to overpay …")[77];

- o SACC ¶¶ 53-54 (alleging that "Plaintiff and the putative class were the direct and foreseeable victims of Defendants' scheme and paid an accordingly higher price charged by Mary Mahoney's for authentic snapper. … Plaintiff and the putative class suffered financial losses equal to the difference between what Mary Mahoney's paid QPS for the Foreign Fish and the actual price Mary Mahoney's would have paid for authentic snapper during the class period.")[78];

- As to the district court's finding that the varying start-dates to the time period of fraudulent activity that had been alleged in the First Amended Class Complaint were inconsistent and undermined the ability to find that a particularized injury to Plaintiff had been properly alleged, the Second Amended Class Complaint defined a much narrower and more focused "class period" of January 1, 2016, through November 18, 2019, and tied all of its allegations to that class period. *See* SACC ¶¶ 3, 4, 5, 6, 7, 9, 16, 18, 19,

---

[76] ROA.1275.
[77] ROA.1275.
[78] ROA.1281.

19

21, 26, 30, 31, 33, 35, 54, 87, 95, 97, 105.[79] The Second Amended Class Complaint identified as the source of this more focused "class period" the transcript of the Cvitanovich Sentencing, where the District Court observed that the Presentence Report provides that, "during the period from 2016 to 2019, roughly 55,500 lunch or dinner entrées were sold that were misbranded at a time when Mr. Cvitanovich was solely responsible for purchasing the fish." SACC at n.1[80]; SACC Exh. A at 14:21-24.[81]

- As to the district court's finding that the allegations in the First Amended Class Complaint failed to allege facts supporting the likelihood that the fish dinners purchased by Mr. McCain included the mislabeled Foreign Fish, the Second Amended Class Complaint alleged that he purchased snapper dinners, specifically, during the newly defined class period (SACC ¶¶ 3, 5, 6, 16)[82]; that 55,500 snapper dinners were purchased during the class period (SACC ¶ 3, 6, 7, 26, 35, nn.1, 2) that actually were comprised of the inexpensive frozen foreign fish[83]; and that this number constituted a "regular" and "continuous" occurrence during the class period (SACC ¶¶ 3 ("continuing repetitiously and regularly"), 4 (noting that Judge Ozerden

---

[79] ROA.1269 – ROA.1270, ROA.1272 – ROA.1276, ROA.1281, ROA.1287 –ROA.1289, ROA.1291.
[80] ROA.1269.
[81] ROA.1307.
[82] ROA.1269 – ROA.1270, ROA.1272.
[83] ROA.1269 – ROA.1270, ROA.1274, ROA.1276.

20

"described the conduct as 'repetitious,' 'regular,' and 'similar.'"), 31 (alleging that the Defendants' scheme was not "in isolation, but as part of a widespread scheme that was continuous, repetitious, and regular during the class period"), 105 (alleging that the defendants' fraudulent scheme involved "continuous predicate acts")[84]; and that it was an "overwhelming majority — if not all" of the snapper dinners sold by Mary Mahoney's during the class period. SACC ¶ 7[85]; *see also* SACC n.2 (characterizing the mislabeled foreign fish as comprising the "overall total number of" the 55,500 Snapper Entrées sold in the class period)[86], SACC ¶ 16 ("Based on Defendants' ***widespread, regular, and repetitious*** scheme—and like the ***overwhelming majority, if not all***, of the individuals who ordered Snapper Entrées during the class period, he too received inexpensive Foreign Fish.").[87] The Second Amended Class Complaint notes from Mr. Cvitanovich's Plea Transcript that Mr. Cvitanovich was aware "that ***most of the fish*** he ordered from his restaurant's primary supplier [QPS] … was not the local species that Mahoney's advertised and identified on its menu." SACC n.4.[88]

---

[84] ROA.1269, ROA.1275, ROA.1291.
[85] ROA.1270.
[86] ROA.1269 – ROA.1270.
[87] ROA.1272 (emphasis added).
[88] ROA.1270.

- Critically, the Second Amended Class Complaint attached and relied on newly available transcripts from the ongoing parallel criminal proceedings, including the sentencing transcript for Mr. Cvitanovich, Mahoney's manager in charge of ordering seafood from 2016 through 2019. While the time frame encompassed in the charging instrument was 2018 and 2019, the Presentence Report for Mr. Cvitanovich included 2016 and 2017 as additional relevant conduct for being part of the same "course of conduct."[89] The district court in the criminal proceedings found,

> So here when the Court compares the time frame encompassed by the charging instrument, to which the defendant pled guilty, with the earlier time period included in the Presentence Report, 2016, 2017, it seems fairly clear that the conduct in that earlier time period was part of the same course of conduct as that which occurred during the time period covered by the bill of information. As is stated in the Presentence Report, when the previous head chef retired in 2016, Mr. Cvitanovich assumed all responsibility for ordering seafood and fish products for the kitchen. And the scheme was apparently preexisting and he was aware of it, but he continued it knowing what was going on. So in other words, *there was essentially an unbroken chain* of either identical or substantially similar conduct that occurred from the time the defendant began ordering the seafood products for the kitchen and continuing through the time period covered by the bill of information. The conduct was *repetitious,* it was *regular,* it was similar, and it was at regular and rather small time intervals.[90]

---

[89] ROA.1311 – ROA.1312.
[90] ROA.1312 – ROA.1313 (emphasis added).

Therefore, Mr. McCain's dates he alleged he ordered snapper entrées from Mahoney's during the class period were within the "unbroken chain" of time when the defendants were selling the frozen foreign fish as more expensive, fresh-caught local snapper at Mahoney's.

### D. The District Court Denied Mr. McCain's Motion and Entered Final Judgment Dismissing his Claims

The district court denied Mr. McCain's Rule 59(e)/Rule 15(a) motion.[91] The defendants had not opposed that motion on the basis of bad faith or dilatory motive or repeated failure to cure deficiencies in previous amendments, but on the basis of undue delay and futility of amendment. The district court held that any delay in the proposed amendment "has not caused a sufficient burden on Defendants and the Court to warrant denying McCain's Motion to Amend on that basis," but then turned to the futility-of-amendment argument.[92]

The district court again made inferences against Mr. McCain's maintenance of his claims by making findings of what his return to eat at Mahoney's "apparently" suggested about whether he had suffered an injury-in-fact: "He was *apparently* satisfied with the fish because he consumed it and paid the price set by Mahoney's on at least two occasions."[93] The district court, ignoring the allegations

---

[91] ROA.1604.
[92] ROA.1608.
[93] ROA.1611 (emphasis added).

23

that the defendants had concealed their substitution of the foreign fish for the local-caught fish in order to fraudulently extract higher prices from customers, remarked that Mr. McCain "concedes that he had no idea that he may have been served something other than snapper until criminal arrests were announced."[94]

Then, after having noted the allegations of 55,500 snapper entrées having been sold during the class period but ignoring the allegations that this substitution during the class period was "regular," "continuous," and involved the "overwhelming majority, if not all," of the snapper entrées, and the supporting material that the district court in the criminal proceedings had found that there was an "unbroken chain" of such conspiratorial fraud during this period, the district court made a finding that "there are no facts from which the Court could infer the number of times Mahoney's sold the entrée(s) McCain purchased during the class period or the number of times that entrée may have been mislabeled."[95] With Mr. McCain revising the dates on which he purchased a snapper entrée to the two dates within the newly alleged "class period,"—December 28, 2016, and August 21, 2018—the district court again found that those dates were not "close in time" to the dates in the QPS indictment showing when Mahoney's purchased foreign fish from QPS.[96] Not only were those two dates within less than a month of dates

---

[94] ROA.1612.
[95] ROA.1612.
[96] ROA.1611.

mentioned in the QPS indictment[97] (which had already been attached to the *First Amended Class Complaint*), but the additional criminal-proceedings materials also supported dates close in time to the dates Mr. McCain alleged he purchased the fraudulently substituted fish.[98] Nevertheless, the district court concluded that Mr. McCain's proposed Second Amended Class Complaint had "merely alleged a possibility that he may have been overcharged for the entrées he consumed."[99]

Accordingly, by making inferences *against* Mr. McCain, by failing to take all of the well-pled allegations in the proposed Second Amended Class Complaint as true, and by applying a rigorous factual and evidentiary analysis at the pleading stage, the district court found that Mr. McCain's proposed amended complaint was futile. The district court denied Mr. McCain's Rule 59(e)/Rule 15(a) motion,[100] then entered a Final Judgment dismissing Mr. McCain's lawsuit "without prejudice for lack of jurisdiction."[101]

## IV.    Standard of Review

This Court "review[s] the district court's dismissal for lack of standing de novo." *Barilla v. City of Houston*, 13 F.4th 427, 430 (5th Cir. 2021) (citing

---

[97] ROA.1436 – ROA.1438.
[98] ROA.1452 (Rosetti Information, charging sale of foreign fish on November 4, 2016); ROA.1463 (Rosetti Information, charging communications regarding and sale of foreign fish on September 19 and September 27, 2018)
[99] ROA.1612.
[100] ROA.1612.
[101] ROA.1613.

*Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 133 (5th Cir. 2009)). Mr. McCain's burden on a Rule 12(b)(1) motion to dismiss is to "allege facts that give rise to a plausible claim of standing." *Id.* at 431 (internal quotations and modifications omitted). "In assessing whether [Mr. McCain] has met this standard, 'we take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff.'" *Id.* (quoting *Stratta v. Roe*, 961 F.3d 340, 349 (5th Cir. 2020)).

The district court's denial of Mr. McCain's Rule 59(e)/Rule 15(a) motion seeking reconsideration of the June 10 Judgment under the allegations of the proposed Second Amended Class Complaint is reviewed by this Court under an abuse of discretion standard, though under a strictly constrained district court discretion that turns on whether there is a "substantial reason to deny leave to amend" supported by the record:

> While this court reviews the denial of the Rule 59(e) or 15(a) motions for abuse of discretion—***with a bias in favor of granting leave to amend***—'Discretion' may be a misleading term, for Rule 15(a) severely restricts the judge's freedom…. Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.

*Calhoun v. Collier*, 78 F.4th 846, 854 (5th Cir. 2023) (quoting *Carson v. Polley*, 689 F.2d 562, 584 (5th Cir. 1982)).

## V.    Summary of the Argument

The district court erred in dismissing Mr. McCain's claims by subjecting Mr. McCain to a requirement to disprove any inferences that he had not been served fraudulently substituted frozen foreign fish when he had paid for a higher-priced fresh-caught local fish, rather than taking Mr. McCain's allegations as true. This improperly conflates a summary-judgment-like evidentiary review standard with the pleading standard applicable at the Rule 12(b)(1) stage, which this Court has ruled to be contrary to the plausibility standard of *Ashcroft v. Iqbal* in the analogous 12(b)(6) context. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019); *see also Allstate Indem. Co. v. Bhagat*, 164 F.4th 426, 434 (5th Cir. 2026); *Lowery v. Mills*, 157 F.4th 729, 737 (5th Cir. 2025).

The district court's error in brushing aside Mr. McCain's allegations as failing to disprove the district court's contrary inferences is magnified by the district court's failure to take as true his allegations that the defendants had "perpetually" and "regularly" substituted inexpensive frozen foreign fish for fresh local fish.[102] This error was repeated by finding Mr. McCain's proposed Second Amended Class Complaint would have been futile, even though Mr. McCain had alleged in the proposed amended complaint that the fraudulent scheme to substitute the inexpensive frozen foreign fish for fresh-caught local snapper during the class

---

[102] ROA.1251.

27

period was "regular," "continuous," and involved the "overwhelming majority, if not all," of the snapper entrées,[103] and where he had attached the sentencing transcript for Mr. Cvitanovich where the district court in the criminal proceeding had found that the fraudulent conspiracy was comprised of an "unbroken chain" of conduct from 2016 through 2019.[104]

The effect of the district court's errors is to create a situation where defendants can admit to a criminal conspiracy to defraud customers, they can be so successful that the effort to render a restitution award in the criminal proceedings is deemed infeasible due to the number of victims, but then a RICO claim by those victims to achieve that restitution civilly is not allowed to go forward even when based on the admitted criminal acts. Because this result runs contrary to this Court's precedent regarding the plausibility requirement for pleading an injury-in-fact, and because there is no "substantial reason to deny"[105] Mr. McCain's motion for leave to address the district court's overly restrictive Rule 12(b)(1) analysis in his proposed Second Amended Class Complaint, this Court should reverse the district court's June 10 and November 17 Judgments granting the defendants' motion to dismiss Mr. McCain's claims for lack of jurisdiction and denying Mr.

---

[103] ROA.1272, ROA.1291.
[104] ROA.1312.
[105] *Calhoun*, 78 F.4th at 854.

McCain's Rule 59(e)/Rule 15(a) motion to reconsider that dismissal under the proposed Second Amended Class Complaint.

## VI.    Argument

### A.    The District Court Applied an Overly Strict and Narrow "Plausibility" Requirement

"This is a case about standing's first requirement—injury in fact. To establish injury in fact, a plaintiff must show he 'suffered an invasion of a legally protected interest that is concrete and particularized.'" *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 689 (5th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). "The initial standing requirement, injury in fact, helps ensure that the plaintiff has a personal stake in the outcome of the controversy. A plaintiff establishes injury in fact by showing an 'invasion of a legally protected interest' that is both 'concrete and particularized' and also 'actual or imminent, not conjectural or hypothetical." *Tex. Tribune v. Caldwell County*, 121 F.4th 520, 526 (5th Cir. 2024) (quoting *Spokeo*; other internal quotation marks and citation omitted).

In assessing the injury-in-fact element of standing this Court has recently confirmed that, "[a]t the motion-to-dismiss stage, [the plaintiff] 'must allege facts that give rise to a plausible claim of his standing,' and in 'assessing whether [the plaintiff] has met this standard, [the court must] take the well-pled factual allegations of the complaint as true and view them in the light most favorable to

29

the plaintiff.'" *Lowery v. Mills*, 157 F.4th 729, 737 (5th Cir. 2025). This Court has repeatedly applied this "plausibility" requirement to review of allegations of injury-in-fact. *See, e.g.*, *Ondrusek v. U.S. Army Corps of Engineers*, 123 F.4th 720, 734 (5th Cir. 2024); *Ghedi v. Mayorkas*, 16 F.4th 456, 465 (5th Cir. 2021).

This articulation of the plausibility standard echoes the *Iqbal*-grounded plausibility standard that is applied in the 12(b)(6) context. *See George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) ("First, '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (other internal quotation marks and citations omitted)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, this Court has recognized in the 12(b)(6) context that this "something more than a sheer possibility" must not be transformed into a requirement of proof subjected to a "rigorous factual or evidentiary analysis." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) ("We reiterate, however, that a

court errs by requiring a plaintiff to plead something more than the ultimate elements of a claim. A court thus inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss.") (internal quotation marks and citation omitted).

Here, the district court applied a plausibility standard in the 12(b)(1) context that this Court has prohibited in the 12(b)(6) context, employing a "rigorous factual or evidentiary analysis" and failing to draw reasonable inferences in Mr. McCain's, rather than the defendants', favor. In its June 10 Judgment granting the defendants' Rule 12(b)(1) motion to dismiss the First Amended Class Complaint, the district court engaged in a rigorous factual testing of Mr. McCain's allegations of injury-in-fact when it found that the allegations in the First Amended Complaint were "self-contradicting" and "implausible on its face" with regard to the differing start-dates of the fraudulent scheme that Mr. McCain had derived from the criminal proceedings to that point. [106] The district court also subjected Mr. McCain's factual allegations of injury-in-fact to a "rigorous … evidentiary analysis" when it took the First Amended Class Complaint allegations to task for failing to allege precise

---

[106] ROA.1261 – ROA.1262.

dates "when foreign fish was substituted for red snapper, and … if any was sold to McCain on any occasion [when] he dined at Mary Mahoney's restaurant."[107]

The district court failed to accept as true Mr. McCain's allegations, which were based on documented charges and admissions in the parallel criminal proceedings, that the defendants were engaged in the supply and sale of frozen foreign fish as premium-priced, local-caught fish on specific dates within less than a month of dates Mr. McCain purchased what was represented to be snapper at Mahoney's; and that the defendants had "perpetually" and "regularly" substituted inexpensive frozen foreign fish for fresh local fish.[108] Instead, the district court applied an overly rigorous factual analysis by finding that this conspiratorial activity and fraudulent sale to Mr. McCain was not sufficiently "close in time."[109]

Eschewing its charge to find "substantial reason to deny"[110] Mr. McCain's proposed amendments to address the defects found in the June 10 Judgment, in its November 17 Judgment the district court held amendment would be futile merely based on repeating its prohibited rigorous factual and evidentiary analysis: "[T]here are no facts from which the Court could infer the number of times Mahoney's sold the entrée(s) McCain purchased during the class period or the

---

[107] ROA.1261 – ROA.1262.
[108] ROA.1251.
[109] ROA.1261 n.3.
[110] *Calhoun*, 78 F.4th at 854.

32

number of times that entrée may have been mislabeled."[111] And the district court also repeated its "not close in time" fact standard.[112] On the face of the district court's November 17 Judgment—looking for "facts from which" the purchase of fraudulently substituted fish could be inferred—the district court employed the language of a "rigorous factual and evidentiary analysis" rather than a review for facial plausibility of the allegations. Notably, however, even in this rigorous factual and evidentiary analysis, the district court missed—or improperly discounted—the finding by the district court in the criminal proceeding that the fraud on customers had been part of an "unbroken chain" of conduct from 2016 through 2019.[113]

The district court applied an overly restrictive "plausibility" analysis when it flipped the direction of the inferences it is required to draw, drawing those inferences *against* Mr. McCain in reviewing for allegations of injury-in-fact rather in his favor. This inference flip is flagged wherever the district court modified its findings with "apparently," drawing the inference of what was "apparent" to the district court though not expressed in the allegations themselves. *See* Black's Law Dictionary, "inference" (11th ed.) (defining "inference" to include a finding of what is "apparent" from the evidence). When the district court here found with

---

[111] ROA.1612.
[112] ROA.1611.
[113] ROA.1312.

regard to the First Amended Class Complaint that Mr. McCain was "apparently" satisfied with the fish he was served, as undermining the plausibility of his injury-in-fact,[114] it was inferring from the facts alleged of Mr. McCain's return to order more of the fish either that he wasn't served the inexpensive frozen foreign fish or that he didn't experience damage from such fraudulent service. The district court repeated this inference against Mr. McCain's alleged injury-in-fact when it repeated, this time with regard to the proposed Second Amended Class Complaint, that he was "apparently" satisfied with the fish he was served when he ordered it twice.[115]

As detailed further below, these inferences are directly contrary to Mr. McCain's allegations; but they also clearly are antagonistic to reasonable inferences that would actually favor maintenance of Mr. McCain's claims of injury-in-fact. Rather than suggesting that it is "apparent" that Mr. McCain either was not served fraudulently substituted fish or that he enjoyed the inferior fish and therefore could not plausibly claim to be injured-in-fact by paying the fraudulently inflated price for the substituted inferior fish, the inferences drawn by the district court, the reasonable inferences are the opposite: That Mr. McCain returned to order and eat the snapper entrees again create the reasonable inference that it is

---

[114] ROA.1257 – ROA.1258.
[115] ROA.1611.

34

"apparent" that the defendants successfully concealed their fraud and therefore successfully defrauded their customers into the injury-in-fact of years of "regular," "perpetual," "repetitive," "continuous," and "an unbroken chain" of overpayment for the inferior frozen foreign fish. The former is an inference drawn ***against*** the plaintiff's alleged injury-in-fact and standing to pursue the claim, and was the inference drawn by the district court, while the latter, dictated by the appropriate plausibility standard eschewed by the district court, is a reasonable inference drawn in favor of finding that Mr. McCain has plausibly alleged injury-in-fact. Indeed, another reasonable inference to be drawn from Mr. McCain's allegations is that, if the defendants were, as alleged, communicating to each other that they should engage in this scheme to "make money where we can make money!", ROA.150, they would not have stopped the "unbroken chain" of using the cheap foreign fish as a substitute and gone back to the expensive, fresh-caught local fish on occasions that happened to coincide with Mr. McCain's visits to Mahoney's.

Therefore, both because the district court imposed a "rigorous factual and evidentiary analysis" on Mr. McCain's allegations of injury-in-fact, and because the district court then drew inferences from that factual and evidentiary analysis against finding a plausible allegation of injury-in-fact, the district court's June 10 judgment applied a "plausibility" standard that is not in line with the plausibility standard dictated by this Court. And by repeating these same legal errors in its

35

analytical framework, the district court failed to find a "substantial reason to deny" Mr. McCain's proposed amendments to his complaint to address the court plausibility concerns, rendering its November 17 Judgment in error.

### B.    Mr. McCain Alleged a Plausible Injury-In-Fact

Applying the appropriate plausibility standard, Mr. McCain's First Amended Class Complaint, as well as his proposed Second Amended Class Complaint, alleged a plausible injury-in-fact. "Because the Plaintiffs' ability to recover for a claim 'under governing law is a separate question' from standing, 'it is sufficient for standing purposes that the Plaintiffs seek recovery for an economic harm that they allege they have suffered.'" *Wilson v. Centene Management Co., L.L.C.*, --- F.4th ---, ---, 2026 WL 473217, *6 (5th Cir. 2/19/2026) (quoting *Cole v. Gen'l Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007)). To move beyond a "mere possibility" of injury to a concrete and particularized allegation of injury, this Court has accepted allegations that, where the injury-inducing conditions are encountered "frequently," there is a plausible allegation of injury-in-fact. *Ghedi v. Mayorkas*, 16 F.4th 456, 465 (5th Cir. 2021).

Here, in allegations in the First Amended Class Complaint that the district court failed to address in its plausibility analysis, Mr. McCain alleged that "Mahoney's ***regularly*** mislabeled and sold [foreign fish] to customers as local

36

Mississippi Gulf Coast snapper"[116]; and that the defendants "***perpetually***

misrepresented to Plaintiff and the putative class that they were purchasing high-

priced premium local fish, when in fact [they] were purchasing inexpensive frozen

perch, triggerfish, triple tail, and unicorn filefish sourced from Africa, Suriname,

and India."[117] Underscoring the plausibility of these allegations of "regularly" and

"perpetually" serving to customers the fraudulently substituted inexpensive foreign

fish, Mr. McCain alleged, based on information admitted by Mahoney's in its

guilty plea to the criminal information against it, that "at least 58,750 pounds of

frozen foreign perch, triggerfish, triple tail, and unicorn filefish" was sold by

defendants.[118] And Mr. McCain specifically alleged that he had purchased this

fraudulently substituted foreign fish at the higher prices for the misrepresented

local-caught fresh fish on three dates while this 29 tons of fraudulently substituted

fish was being sold,[119] two of those dates within less than a month of specific

orders and sales of the frozen foreign fish. These are not just allegations where it

can be inferred reasonably that Mr. McCain suffered a concrete and particularized

injury-in-fact, but they are direct allegations of such an injury-in-fact.

---

[116] ROA.150 (emphasis added).
[117] ROA.150 (emphasis added).
[118] ROA.151; *see also* ROA.162, ROA.163.
[119] ROA.152.

Likewise, in allegations of Mr. McCain's proposed Second Amended Class Complaint, Mr. McCain alleged that, "[b]ased on Defendants' ***widespread, regular, and repetitious*** scheme—and like the ***overwhelming majority, if not all***, of the individuals who ordered Snapper Entrées during the class period, he too received inexpensive Foreign Fish."[120] He alleged that the defendants' fraudulent scheme of substitution of inexpensive frozen foreign fish for fresh-caught local fish occurred "regularly" and "repetitiously."[121] He attached to his Second Amended Class Complaint newly available transcripts from the criminal sentencing of the defendants, where the district court in the criminal proceedings found that the defendants' fraudulent conduct was part of an "unbroken chain" of conduct from 2016 through 2019,[122] encompassing the dates Mr. McCain alleged he ordered the fraudulently labeled and over-priced snapper entrées at Mahoney's. His allegations reiterated that the fraudulent substitution and overcharge constituted the "overwhelming majority— if not all" of the snapper dinners sold by Mary Mahoney's during the class period.[123] Mr. McCain's proposed Second Amended Class Complaint, for ease and precision of the plausibility analysis, and based on the continually developing facts in the parallel criminal proceedings, alleged a

---

[120] ROA.1272 (emphasis added).
[121] ROA.1269.
[122] ROA.1312.
[123] ROA.1279.

38

curtailed and consistent "class period," and specific to two "snapper entrées," and alleged repeatedly that 55,500 snapper entrées—"most, if not all," of which contained fraudulently substituted frozen foreign fish—were sold during that class period, with specific dates when he ordered snapper entrees during that period.[124]

Like cases in recent decisions where this Court has reversed dismissals on district courts' erroneous findings of a lack of plausibly alleged injury-in-fact, Mr. McCain's allegations in both his First Amended Class Complaint and his proposed Second Amended Class Complaint "are anything but speculative." *Allstate*, 164 F.4th at 434. Unlike in *Earl*, relied on here by the district court, Mr. McCain is not making an unsupportable inference that the price for the cheaper fish would have been less than what he and the putative class were charged for what was fraudulently represented as fresh-caught local fish; he has concretely alleged that the defendants knowingly paid less than they would have to procure fresh, local-caught fish, while still charging Mahoney's customers the price for the more expensive local fish. "[I]t is not an unsupportable inference to assume that the Plaintiffs in this case would have expected to pay less for access to [inferior frozen foreign fish], or, more likely, that the Plaintiffs would not have purchased the [Mahoney's fish] at all." *Wilson*, 2026 WL 473217 at *7. The *Wilson* Court specifically distinguished *Earl* on this basis. *Id.*

---

[124] ROA.1269 – ROA.1270, ROA.1274, ROA.1276.

In *Wilson*, the "overcharge-by-fraud" theory was invoked by plaintiffs who alleged that they were overcharged higher premiums for participation in a health insurance product that had a fraudulently represented greater provider network than was actually part of the plan they received. The district court had relied on *Earl* to deny class certification to the *Wilson* plaintiffs on the basis that the named plaintiffs had not alleged a plausible injury-in-fact. This Court laid out the review framework for such an action:

> In considering a plaintiff's Article III standing in the Rule 23 context, courts accept *arguendo* the merits of the plaintiff's legal claim. Because the Plaintiffs' ability to recover for a claim under governing law is a separate question from standing, it is sufficient for standing purposes that the Plaintiffs seek recovery for an economic harm that they allege they have suffered. … We agree with an earlier panel of this court that caution should be exercised when assessing evidence of standing at the class-certification stage, especially when some elements of standing might be said to be intertwined with the merits that are still to be decided. In *Robertson*, a panel of this court held that where there is "substantial overlap between" standing and the merits of a plaintiff's claim, "the better course" is to treat the attack on standing "as an attack on the merits … rather than as a question of standing." 287 Fed. Appx. at 360. We endorse that analysis.

*Wilson*, 2026 WL 473217 at *6 (internal quotation marks and citations omitted).

While health insurance and snapper entrées are clearly different products, conceptually the claims here and in *Wilson*, and the resulting analytical framework, are the same. In *Wilson*, the plaintiffs thought they were getting a more valuable insurance plan with a greater provider network but got a less-valuable limited-provider network for the higher price; here, Mr. McCain and the class thought they

were getting a more valuable fresh local-caught fish but were served a less-valuable frozen foreign fish for the higher price. Just as this Court in *Wilson* held that "it is not an unsupportable inference to assume that the Plaintiffs in this case would have expected to pay less for access to an inaccurate and inadequate provider network, or, more likely, that the Plaintiffs would not have purchased the Ambetter policy at all," 2026 WL 473217 at *7, it also is not an unsupportable or unreasonable inference that Mr. McCain and the class in this case would have expected to pay less for inferior frozen foreign fish than for access to a fresh, local-caught premium fish (or, more likely, that they would not have purchased the frozen foreign fish at all).

Here, Mr. McCain and the putative class were not merely paying for a fish dinner, which they received, but were paying higher prices for a dinner of local-caught fresh fish, which they did ***not*** receive. This is the only reasonable reading of Mr. McCain's plausible allegations in the First Amended Class Complaint, which was made even clearer in his proposed Second Amended Class Complaint. At the pleading stage, this is all that is necessary to survive the motion to dismiss for lack of standing. By applying an overly rigorous factual and evidentiary analysis to Mr. McCain's allegations of injury-in-fact in the First Amended Class Complaint, and again to his allegations in the proposed Second Amended Class Complaint, and by making inferences that were not reasonable inferences and that were inferences

41

against maintenance of his claims, the district court erred, both in the initial dismissal on June 10 and in the denial of Mr. McCain's motion for leave to amend on November 17.

## VII.  Conclusion

For these reasons, this Court should reverse the district court's June 10 Judgment dismissing without prejudice Mr. McCain's First Amended Class Complaint, reverse the district court's November 17 Judgment denying his motion for leave to file the Second Amended Class Complaint, and remand for further proceedings.

Respectfully submitted,

*/s/ H.S. Bartlett III*
H.S. Bartlett III (La. Bar No. 26795),
   *Lead Appellate Counsel*
FISHMAN HAYGOOD LLP
201 St. Charles Ave., Suite 4600
New Orleans, LA 70170
T: (504) 586-5252
F: (504) 586-5250
tbartlett@fishmanhaygood.com

Gerald M. Abdalla, Jr. (MSB No. 101213)
ABDALLA LAW, PLLC
602 Steed Road, Suite 200
Ridgeland, MS 39157
Telephone: (601) 278-6055
jerry@abdalla-law.com

Attorneys for Todd McCain, individually
and on behalf all others similarly situated

42

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2026, I electronically filed the foregoing with the Clerk of Court via the court CM/ECF system, which sent a notice of filing to all counsel of record.

/s/ H.S. Bartlett III
H.S. Bartlett III

## RULE 32(g) CERTIFICATE OF COMPLIANCE

1.  This Brief contains less than 13,000 words, exclusive of parts exempted by Fed. R. App. P. 32(f). The exact word count is 9,220, exclusive of parts exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font in text and 12-point Times New Roman font in footnotes.

Date: February 24, 2026                    Respectfully submitted,

                                           /s/ H.S. Bartlett III
                                           H.S. Bartlett III