No. 25-60663

# In the
# United States Court of Appeals
# for the Fifth Circuit

---

TODD MCCAIN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,
*Plaintiff-Appellant*,

v.

MARY MAHONEY'S, INCORPORATED, DOING BUSINESS AS MARY MAHONEY'S OLD
FRENCH HOUSE; ANTHONY C. CVITANOVICH; QUALITY POULTRY & SEAFOOD,
INCORPORATED; JAMES W. GUNKEL; TODD A. ROSETTI; DOES 1-10,
*Defendants-Appellees*

---

On Appeal from the United States District Court
for the Southern District of Mississippi,
Civil Action No. 1:24-cv-241, Hon. Louis Guirola, Jr., Presiding

---

**ORIGINAL BRIEF OF APPELLEES**
**QUALITY POULTRY & SEAFOOD, INCORPORATED,**
**JAMES W. GUNKEL, AND TODD A. ROSETTI**

---

Patrick S. McGoey, La. Bar #24549
Andrea V. Timpa, La. Bar #29455
SCHONEKAS, EVANS, MCGOEY &
MCEACHIN, LLC
909 Poydras St., Suite 1600
New Orleans, Louisiana 70112
Telephone: (504) 680-6050
Facsimile: (504) 680-6051
patrick@semmlaw.com
andrea@semmlaw.com

*Counsel for Defendant-Appellee*
*Quality Poultry Seafood, Inc.*

Joe Sam Owen, MS Bar #3965
OWEN, OWEN AND SMITH, PLLC
1414 25th Ave.
Gulfport, Mississippi 39501
Telephone: (228) 868-2821
jso@ooslaw.com

*Counsel for Defendant-Appellee,*
*James W. Gunkel*

*AND – Additional counsel on following*
*page*

i

Joe M. Hollomon, MS Bar #2551
JOE M. HOLLOMON & ASSOCIATES,
P.A.
107 North State Street
Jackson, Mississippi 39201
Telephone: (601) 353-1300
Facsimile: (601) 353-1308
jhollomon@outlook.com
joehollomonlaw@yahoo.com

*Counsel for Defendant-Appellee,*
*Todd A. Rosetti*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**Plaintiff-Appellant,**
**Todd McCain, individually and on behalf of all others similarly situated**

**Counsel for Plaintiff-Appellant,**
**Todd McCain, individually and on behalf of all others similarly situated:**
H. S. Bartlett III
FISHMAN HAYGOOD LLP
201 St. Charles Ave., Suite 4600
New Orleans, Louisiana 70170
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
tbartlett@fishmanhaygood.com

James M. Priest, Jr.
William Bobby Gill, III
GILL, LADNER & PRIEST, PLLC
344 Highway 51, Suite 00
Ridgeland, Mississippi 39157
Telephone: (601) 352-5700
Facsimile: (601) 352-5353
jamie@glplawfirm.com
bobby@glplawfirm.com

Gerald M. Abdalla, Jr.
ABDALLA LAW, PLLC
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Telephone: (601) 278-6044
jerry@abdalla-law.com

Jerry Dewayne Dumas
DUMAS LAW FIRM
P. O. Box 3046
Mobile, Alabama 36652
Telephone: (251) 423-2307
joey@joeydumaslaw.com

| | |
|---|---|
| **Defendant-Appellee,**<br>**Quality Poultry & Seafood,**<br>**Incorporated** | **Counsel for Defendant-Appellee,**<br>**Quality Poultry & Seafood,**<br>**Incorporated:**<br>Patrick S. McGoey<br>William P. Gibbens<br>Andrea V. Timpa<br>Emily H. Ribera<br>SCHONEKAS, EVANS, MCGOEY &<br>MCEACHIN, LLC<br>909 Poydras St., Suite 1600<br>New Orleans, Louisiana 70112<br>Telephone: (504) 680-6050<br>Facsimile: (504) 680-6051<br>patrick@semmlaw.com<br>andrea@semmlaw.com |
| **Defendant-Appellee,**<br>**James W. Gunkel** | **Counsel for Defendant-Appellee,**<br>**James W. Gunkel:**<br>Joe Sam Owen<br>OWEN, OWEN AND SMITH, PLLC<br>1414 25th Ave.<br>Gulfport, Mississippi 39501<br>Telephone: (228) 868-2821<br>jso@ooslaw.com |
| **Defendant-Appellee,**<br>**Todd A. Rosetti** | **Counsel for Defendant-Appellee,**<br>**Todd A. Rosetti:**<br>Joe M. Hollomon<br>JOE M. HOLLOMON & ASSOCIATES, P.A.<br>107 North State Street<br>Jackson, Mississippi 39201<br>Telephone: (601) 353-1300 |

iv

Facsimile: (601) 353-1308
jhollomon@outlook.com
joehollomonlaw@yahoo.com

**Defendants-Appellees,
Mary Mahoney's, Incorporated
and
Anthony Cvitanovich**

**Counsel for Defendant-Appellee,
Mary Mahoney's, Incorporated and
Anthony Cvitanovich:**
Matthew W. McDade
Bryan C. Sawyers
Leo E. Manuel
BALCH & BINGHAM, LLP
1310 25th Ave.
Gulfport, Mississippi 39501
Telephone: (228) 214-0414
Facsimile: (228) 864-9900
mmcdade@balch.com
bsawyers@balch.com
lmanuel@balch.com

Tim C. Holleman
BOYCE HOLLEMAN AND ASSOCIATES, PA
1720 23rd Ave.
Gulfport, Mississippi 39501
Telephone: (228) 863-9829
Facsimile: (228) 863-9829
tim@boyceholleman.com

Michael F. Cavanaugh
MICHAEL F. CAVANAUGH, ATTORNEY
2526 South Shore Dr.
Biloxi, Mississippi 39532
Telephone: (228) 365-1941
mcavana106@aol.com

Dated: April 27, 2026

/s/Patrick S. McGoey
PATRICK S. McGOEY

v

**STATEMENT REGARDING ORAL ARGUMENT**

This appeal involves the application of well-settled principles of law. The record is complete, and includes a thorough reason for judgment by the district court. The facts and legal arguments are fully presented in the briefs. Appellees believe oral argument is unnecessary as it would not materially assist the Panel in issuing its ruling.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ iii

STATEMENT REGARDING ORAL ARGUMENT .............................................. vi

TABLE OF CONTENTS ........................................................................................ vii

TABLE OF AUTHORITIES .................................................................................... ix

INTRODUCTION ....................................................................................................1

ISSUES PRESENTED ..............................................................................................3

STATEMENT OF THE CASE ..................................................................................3

    I.    PLAINTIFF'S ALLEGATIONS ................................................................3

    II.   PROCEDURAL HISTORY. ......................................................................7

        A.  Defendants' Motions to Dismiss. ........................................................7

        B.  Plaintiff's Rule 59(e) Motion to Alter or Amend Judgment and Rule 15(a) Motion for Leave to Amend. ........................................................8

    III.   McCAIN'S APPEAL. ..............................................................................12

SUMMARY OF THE ARGUMENT .......................................................................13

STANDARD OF REVIEW .....................................................................................13

    I.   STANDARD OF REVIEW OF DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION. .....................................................................13

    II.  STANDARD OF REVIEW OF DENIAL OF RULE 59(E) AND 15(A) MOTIONS. ............................................................................................19

ARGUMENT ...........................................................................................................20

    I.   THE DISTRICT COURT CORRECTLY DISMISSED THE FIRST AMENDED COMPLAINT FOR LACK OF STANDING. ..............................20

    II.  THE DISTRICT COURT'S DENIAL OF LEAVE TO AMEND WAS NOT AN ABUSE OF ITS DISCRETION. ..................................................25

A.  The Proposed Second Amended Complaint Still Failed to Allege Facts that Indicate a Plausible Particularized Injury-in-Fact. ............................................25

B.  The Second Amended Complaint Still Failed to Allege Facts that Plausibly Indicate a *Concrete* Injury-in-Fact. .................................................................31

III.    McCAIN HAS NOT DEMONSTRATED ERROR OR AN ABUSE OF DISCRETION. ................................................................................................33

CONCLUSION ........................................................................................................39

CERTIFICATE OF SERVICE ...............................................................................40

RULE 32(g) CERTIFICATE OF COMPLIANCE ..................................................41

## TABLE OF AUTHORITIES

**Cases**

*Akridge v. Whole Foods Market Grp., Inc.*,
  No. 20-1090, 2022 WL 955945, at *7-8 (S.D.N.Y. Mar. 30, 2022).....................29

*Allstate Indem. Co. v. Bhagat*,
  164 F.4th 426, 433 (5th Cir. 2026) ................................................................34

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 (2009) ........................................................................ 14, 18

*Burnett Specialists v. Cowen*,
  140 F.4th 686, 693 (5th Cir. 2025) ............................................................ 14, 15

*Butler v. Denka Performance Elastomer*, L.L.C.,
  16 F.4 427, 437 (5th Cir. 2021).....................................................................20

*Carter v. Target Corp.*,
  541 Fed. App'x 413, 417 (5th Cir. 2013)...............................................................35

*Cicalese v. Univ. of Texas Med. Branch*,
  924 F.3d 762, 766 (5th Cir. 2019) ...................................................................33

*Clapper v. Amnesty Int'l, USA*,
  568 U.S. 398, 409, (2013) ..............................................................................16

*Clark v. Dep't of Public Safety and Corrections*,
  141 F.4th 653, 661 (5th Cir. 2025) ...................................................................20

*Cole v. General Motors Corp.*,
  484 F.3d 717, 722-23 (5th Cir. 2007) ...............................................................27

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496, 498 (5th Cir. 2000) ...................................................................14

*Crosswell v. Martinez*,
  120 F.4th 177, 184 (5th Cir. 2024) ...................................................................14

*Doe v. Univ. of Texas M.D. Anderson Cancer Ctr.*,
  653 F.Supp.3d 359, 370 (S.D. Tex.2023) ...........................................................35

*Dunning v. Supergoop, LLC,*
No. 23-11242, 2025 WL 34822, at *2, 6 (S.D.N.Y. Jan. 6, 2025) .......................28

*Earl v. Boeing Co.,*
53 F.4th 897, 903 (5th Cir. 2022) ..................................................... 14, 16, 18, 37

*Elson v. Black,*
56 F.4th 1002, 1008 (5th Cir. 2023) ....................................................................14

*Esquibel v. Colgate-Palmolive Co.,*
No. 23-742, 2025 WL 178565, at *3 (S.D.N.Y. June 27, 2025) ..........................28

*FDA v. All. for Hippocratic Med.,*
602 U.S. 367, 382, 144 S.Ct. 1540, 219 L.Ed.2d 121 (2024) .............................24

*Glass v. Paxton,*
900 F.3d 233, 238 (5th Cir. 2018) ........................................................................15

*Huertas v. Bayer US LLC,*
120 F.4th 1169, 1179, 1180-81 (3d Cir. 2024) .....................................................28

*In re Recalled Abbott Infant Formula Products Liab. Litig.,*
97 F.4th 525, 531 (7th Cir. 2024) .................................................................. 16, 17

*John v. Whole Foods Mkt. Grp., Inc.,*
858 F.3d 732, 736 (2d Cir. 2017)................................................................... 29, 31

*Kell v. Lily's Sweets, LLC,*
No. 23-147, 2024 WL 1116651 (S.D. N.Y. Mar. 13, 2024) .................................17

*Lowery v. Mills,*
157 F.4th 729, 737 (5th Cir. 2025) .......................................................................34

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ....................................................................... 15, 16, 23, 33

*Lurenz v. The Coca-Cola Company,*
No. 22-10941, 2024 WL 2943834, at *3-4 (S.D.N.Y. June 10, 2024).................29

*Onaka v. Shiseido Americas Corp.,*
No. 21-10665, 2023 WL 2663877, at *5 (S.D.N.Y. Mar. 27, 2023) ....................28

*Physician Hosps. of Am. v. Sebelius,*
    691 F.3d 649, 652 (5th Cir. 2012) ................................................................15

*Rivera v. Wyeth-Ayerst Laboratories,*
    283 F.3d 315, 319 (5th Cir. 2002) .............................................. 16, 17, 18, 24, 37

*Rosenzweig v. Azurix Corp.,*
    332 F.3d 854, 863 (5th Cir. 2003) ................................................................19

*Shaw v. Restoration Hardware, Inc.,*
    93 F.4th 284, 288 (5th Cir. 2024) ................................................................19

*Simmons v. Peavy–Welsh Lumber Co.,*
    113 F.2d 812, 813 (5th Cir.), *cert. denied,* 311 U.S. 685, 61 S.Ct. 63, 85 L.Ed.
    442 (1940)...........................................................................................34

*Spokeo, Inc. v. Robins,*
    578 U.S. 330, 338 (2016) ....................................................................... 15, 16

*Stem v. Gomez,*
    813 F.3d 205, 209 (5th Cir. 2016) ................................................................19

*Summers v. Earth Island Institute,*
    555 U.S. 488, 499 (2009) ..........................................................................32

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149, 158 (2014) ..........................................................................15

*TransUnion LLC v. Ramirez,*
    594 U.S. 413, 427 (2021) ..................................................................... 15, 16, 24

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,*
    355 F.3d 370, 377 (5th Cir. 2004) ................................................................34

*Walker v. Hunt,*
    No. 1:19-cv-246, 2019 WL 13541235, at *1 (S.D. Miss. 2019) (Guirola, J.) .....20

*Wallace v. ConAgra Foods, Inc.,*
    747 F.3d 1025, 1031-33 (8th Cir. 2014) ..................................... 16, 19, 21, 27, 31

*Wilson v. Centene Mgmt. Co., L.L.C.,*
    168 F.4th 217, 221 (5th Cir. 2026) ........................................................ 37, 38, 39

## Other Authorities

18 U.S.C. §§ 1961-1968 ..................................................................................6

## Rules

Fed. R. App. Proc. 32 ...................................................................................41

Fed. R. Civ. Proc. 12 ........................................................................ 3, 7, 20, 33

Fed. R. Civ. Proc. 15 ...................................................................................19

Fed. R. Civ. Proc. 9 .....................................................................................14

**INTRODUCTION**

On August 2, 2024, Plaintiff/Appellant, Todd McCain ("McCain"), an Alabama resident, brought this putative class action, claiming that while traveling to Biloxi, Mississippi on three separate occasions between July of 2013 and August of 2018, he may have "unknowingly" consumed mislabeled fish when he dined at the popular seafood restaurant Mary Mahoney's. McCain did not allege that he had suffered any health related injuries. And McCain admitted that not everyone that dined at Mary Mahoney's purchased mislabeled seafood. In sum, McCain alleged that he, and others, may have overpaid for their meals, if Mary Mahoney's had, in fact, served them mislabeled fish.

McCain also admitted that he had not learned of the mislabeling scheme until May of 2024 when the United States Attorney published Mary Mahoney's indictment and plea agreement. McCain incorporated into his First Amended Complaint a chart of 72 dates in 2019 that the U.S. Attorney asserted that Quality Poultry & Seafood ("QPS") had delivered foreign fish to Mary Mahoney's. But these deliveries occurred well <u>after</u> McCain had eaten at Mary Mahoney's in 2013, 2016, and 2018. At best, McCain alleged a speculative, hypothetical potential injury to his wallet, as opposed to an actual concrete and particularized injury.

Defendants/Appellees, Quality Poultry & Seafood, Inc. ("QPS"), James Gunkel, and Todd Rosetti McCain (collectively the "QPS Parties"), filed Rule

12(b)(1) and 12(b)(6) motions in the district court urging that McCain lacked Article III standing (i.e. he had no injury-in-fact) and that his pleadings failed to allege a plausible injury-in-fact.[1]

In a well-reasoned and thoroughly supported opinion, the district court granted the motions to dismiss, finding that McCain lacked standing as he had not alleged a concrete, cognizable injury under Article III. With respect to McCain's alleged overpayment by fraud standing theory, the court found that based upon the facts plead by McCain, it could not reasonably infer that Mary Mahoney's had served McCain mislabeled, foreign fish. Because McCain had not tied the dates that Mary Mahoney's purchased foreign fish to the three dates that McCain had dined, the district court determined his allegations were "implausible on its face."

McCain then moved for reconsideration and for leave to file a second amended complaint, which he claimed cured his standing defects. They did not. While McCain eliminated the chart of the 2019 deliveries of foreign fish to Mary Mahoney's, he still attached the same criminal indictments and plea agreements that contained allegations that contradicted McCain's conclusions. The district court denied McCain's motions, finding the amendment to be futile because the facts alleged in the proposed second amended complaint still failed to allege an actual and

---

[1] The other defendants, defendants Mary Mahoney's, Inc. and Anthony Cvitanovich (the "Mahoney Parties"), similarly filed motions to dismiss which the QPS Parties joined.

2

particularized injury and were not plausible. The district court entered a final judgment dismissing McCain's suit, and McCain filed this appeal.

McCain now claims that the district court performed too "rigorous" of a factual analysis in concluding that McCain had not alleged a plausible injury-in-fact, and it erred in disregarding his new allegations describing the mislabeling scheme as being "perpetual" and "regular." But McCain still failed to identify a sale or delivery of foreign fish to Mary Mahoney's near in time and before McCain dined at Mary Mahoney's. As shown herein, McCain has failed to show that the district court's dismissal for lack of standing was wrong, or that the district court abused its discretion in refusing to grant leave to file a second amended complaint.

## ISSUES PRESENTED

1.  Did the district court correctly grant defendants' motions to dismiss plaintiff's putative class action for lack of standing under Federal Rule of Civil Procedure 12(b)(1)?

2.  Did the district court abuse its discretion in denying plaintiff's Rule 59(e) motion to alter or amend judgment and Rule 15(a) motion for leave to file a second amended complaint?

## STATEMENT OF THE CASE

### I.    PLAINTIFF'S ALLEGATIONS.

In May of 2024, following a lengthy multi-year investigation by the Food and Drug Administration ("FDA"), the United States asserted charges, first against the Mahoney Parties, and then against the QPS Parties, alleging violations of the Food, Drug, and Cosmetic Act ("FDCA") labeling laws regarding seafood. ROA.176-200,

3

212-13, 227-29, 237-40 (Exhibits C, D, G, J, L to First Amended Complaint). All parties entered Plea Agreements within a few months of the charges being brought. ROA.201-05, 214-20, 221-26, 230-36, 241-47 (Exhibits E, H, I, K, M).

Relying solely upon allegations and documents in the criminal proceeding against the Mahoney Parties and the QPS Parties, McCain sought to recover civilly.[2] ROA.142-143.   On August 2, 2024, McCain filed his original Class Action Complaint in the U. S. District Court for the Southern District of Mississippi. ROA.17.   On September 30, 2024, McCain filed a First Amended Class Action Complaint (the "First Amended Complaint"). ROA.141.

The First Amended Complaint listed alleged instances of "Defendants' Racketeering Activities," including text messages in 2018 and 2019 among QPS and Mary Mahoney's regarding the sale and purchase of fish that was not on Mary Mahoney's menu, at least once "[d]ue to the shortage on snapper." ROA.151-52, ¶ 38.  In the First Amended Complaint, McCain reproduced a spreadsheet contained in the criminal charges indicating that QPS had delivered "thousands of pounds of" foreign fish to Mary Mahoney's in 2019. *Id.*

Specifically, McCain picked up on 72 sales/deliveries in 2019 and inserted the below chart into paragraph 38 of the First Amended Complaint:

---

[2]      Mr. Cvitanovich is a co-owner/manager of Mary Mahoney's, Mr. Gunkel is QPS's business manager, and Mr. Rosetti is its sales manager. ROA.142, ¶ 2.

| 1/7/19 | 1/11/19 | 1/15/19 | 1/21/19 | 1/25/19 | 1/31/19 | 2/5/19 | 2/8/19 |
|---|---|---|---|---|---|---|---|
| 2/13/19 | 2/20/19 | 2/21/19 | 2/26/19 | 3/4/19 | 3/7/19 | 3/13/19 | 3/16/19 |
| 3/19/19 | 3/20/19 | 3/22/19 | 3/27/19 | 4/1/19 | 4/5/19 | 4/10/19 | 4/15/19 |
| 4/18/19 | 4/25/19 | 5/2/19 | 5/7/19 | 5/10/19 | 5/15/19 | 5/20/19 | 5/28/19 |
| 6/3/19 | 6/5/19 | 6/10/19 | 6/11/19 | 6/12/19 | 6/18/19 | 6/20/19 | 6/24/19 |
| 6/28/19 | 7/2/19 | 7/9/19 | 7/15/19 | 7/18/19 | 7/22/19 | 7/26/19 | 7/30/19 |
| 8/5/19 | 8/8/19 | 8/13/19 | 8/15/19 | 8/22/19 | 8/23/19 | 8/27/19 | 9/3/19 |
| 9/6/19 | 9/16/19 | 9/19/19 | 9/24/19 | 9/27/19 | 10/4/19 | 10/8/19 | 10/11/19 |
| 10/16/19 | 10/23/19 | 10/24/19 | 10/29/19 | 10/31/19 | 11/7/19 | 11/12/19 | 11/15/19 |

ROA.198, *see also* ROA.148-49, ¶¶ 31-32.[3]

McCain did not (and could not) allege that QPS was Mary Mahoney's exclusive wholesale supplier of seafood, or that all of the seafood sold by QPS to Mary Mahoney's was foreign fish.  Significantly, McCain admitted that **"[s]ome of the products sold by the Enterprise were legitimate, including other types of seafood and poultry that were not mislabeled and fraudulently sold to consumers."**  ROA.163, ¶ 95.  (emphasis added).  And McCain did not allege that Mary Mahoney's other seafood suppliers were part of the mislabeling scheme.

As for McCain's only specific allegations, he claimed that on three occasions in the prior 11 years (on 7/29/13, 12/28/16, and 8/21/18), he had dined at Mary Mahoney's restaurant.  ROA.144.  McCain then concluded that he had "purchased what Defendants fraudulently marketed and represented as high-priced premium local snapper and red snapper."  ROA.152, ¶ 41.  Stated another way, McCain alleged

---

[3]    The United States had also alleged "[b]etween May 26, 2019 and August 16, 2019, [Mary Mahoney's] posted its menu on the publicly-accessible website www.marymahoney.com … advertising the sale of premium local species for which … QPS, [Mary Mahoney's, and individuals] substituted imported frozen fish of lesser value."  ROA.198.

that he *suspected* he may have "unknowingly" ingested "inexpensive frozen Foreign Fish" that "he would not have purchased and ingested" had he known the species of fish was not snapper. *Id.*; *see also* ROA.141, 144, ¶¶ 1, 12.

Though McCain claimed that the Mahoney and QPS Parties' actions *could have* resulted in "numerous public health hazards," he did not allege that any such public safety hazards actually befell him or the putative class. ROA.141-42, 155, n.4, ¶¶ 1, 2, 56. McCain filed his Complaint and First Amended Complaint on behalf of himself and a putative class, alleging that the defendants violated the civil Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, and further alleging common law fraud, civil conspiracy, and unjust enrichment under Mississippi law. ROA.160-70, ¶¶ 78-138. McCain and the putative class sought monetary damages, restitution, disgorgement of funds, treble damages, punitive damages, attorney's fees, and costs. *Id.*[4]

As for the class allegations, McCain purported to bring his lawsuit on behalf of eight years worth of Mary Mahoney's diners – specifically, McCain defined the class as:

Nationwide Class
All persons residing in the United States who purchased the foreign fish species between January 1, 2012, and November 30, 2019.

---

[4]    Though restitution was available for anyone victimized by these crimes, McCain did not allege that he has sought restitution through the criminal proceedings. Rather, by filing this civil lawsuit, McCain sought to recover on behalf of himself and a class of alleged victims, among other things, treble damages.

ROA.157-58, ¶ 65.

## II.   PROCEDURAL HISTORY.

### A.   Defendants' Motions to Dismiss.

The QPS Parties filed Motions to Dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and alternatively for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ROA.303-05, 339-65, 514-547.[5] In sum, the QPS Parties argued that McCain lacked Article III standing and failed to plausibly allege an injury-in-fact.

On June 10, 2025, the district court rendered a Memorandum Opinion and Order on the Motions to Dismiss. ROA.1251-63. The district court found that the First Amended Complaint did not contain sufficient facts for McCain "to establish a plausible injury-in-fact for purposes of Article III standing to pursue the lawsuit." *Id.* Under the prevailing authorities, the district court held that McCain's allegation that "he regrets his purchases [of fish dinners from Mahoney's] and was injured by paying for fish he would not have otherwise purchased does not constitute a concrete … cognizable injury under Article III of the United States Constitution." ROA.1258.

---

[5]   Additionally, the QPS Parties individually filed separate Rule 12(b)(6) Motions to Dismiss on the grounds that the claims asserted in the First Amended Complaint were time barred or otherwise failed to state claims upon which relief could be granted. ROA.602-35, 706-73.

The court noted that McCain did "not allege that QPS and Mahoney's mislabeled all of the fish they sold or that Mahoney's mislabeled all of the snapper it sold on a date that he purchased fish." *Id.* In fact, McCain "concede[d] there [was] no way to determine whether he was actually served foreign fish or red snapper." *Id.* Citing to the various inconsistencies and contradictory allegations in the First Amended Complaint, the district court held that the facts pled do not allow for a reasonable inference that McCain was served foreign fish substituted for red snapper. It held:

> In the light most favorable to the Plaintiff, McCain has essentially alleged that it is *possible* that on one, or two, or three occasions, within a span of five years, he was unsuspectingly served a mislabeled seafood dinner, which he would not have otherwise purchased, and the consumption of which has heretofore caused him no harm. The claims in the Amended Complaint are based on possibilities, supported by assumptions and suppositions, but do not present facts from the Court may draw the reasonable inference that the defendants are liable for the misconduct alleged.

ROA.1262-63. The district court granted the Rule 12(b)(1) Motions and dismissed the lawsuit without prejudice for lack of subject matter jurisdiction. *Id.*, ROA.1263.

### B. Plaintiff's Rule 59(e) Motion to Alter or Amend Judgment and Rule 15(a) Motion for Leave to Amend.

On July 2, 2025, McCain moved to alter or amend the judgment and for leave to file a Second Amended Complaint. ROA.1264. Therein, McCain did not argue in his motion or supporting memorandum that the district court's ruling contained any

8

manifest error of law. ROA.1264-66, 1490-96. Rather, the sole basis for the motion was that certain "information" related to the criminal proceedings against the defendants "only became publicly available after McCain filed his First Amended Complaint." ROA.1487. This "new" information was allegedly obtained from Mr. Cvitanovich's November 18, 2024 sentencing transcript and/or May 30, 2024 Transcript of Plea, which were attached to the Second Amended Complaint as "new" Exhibits "1.A" and "1.B." ROA.1294-1375. Thus, McCain requested leave to file a Second Amended Complaint which he claimed resolved the deficiencies in his pleading raised by the district court in its order of dismissal. *Id.*

McCain claimed his Second Amended Complaint resolved three general concerns of the district court that allegedly became known after McCain filed the First Amended Complaint. However, the three changes were not new information, instead they were tweaks that did not allege a concrete injury. McCain's changes were:

- To narrow the definition of the "Class" and "Class Period" to "All persons residing in the United States who ordered and paid for a mislabeled Snapper Entrée at Mary Mahoey's between January 1, 2016, through November 18, 2019." ROA.1491; *see also* ROA.1282.

- To add allegations as to the approximate number of snapper entrees sold during the Class Period as 55,500 and that the "overwhelming majority – if not all" of those sales were actually "substituted Foreign Fish." ROA.1492.

- To clarify his theory of damages claiming his losses "equal … the difference between what Mary Mahoney's paid QPS for the Foreign

Fish and the actual price Mary Mahoney's would have paid for authentic snapper during the Class Period." ROA.1490.

On July 23, 2025, the QPS Parties[6] and Mahoney Parties opposed the Motion. ROA.1510-79. The QPS Parties urged that McCain's motion must be denied because he could have, but failed to, seek leave to amend in response to the Motions to Dismiss, rather than arguing that the First Amended Complaint was sufficient. *Id.* They also argued that the proposed Second Amended Complaint did not contain any new facts which rendered his theory of economic harm plausible. ROA.1510-36, 1554-79. They further argued that the proposed amendment was futile. *Id.*

On November 17, 2025, the district court issued another thorough and well-reasoned Memorandum Opinion and Order. ROA.1604-12. The district court denied McCain's Motion. *Id.* The district court agreed with the QPS Parties and the Mahoney Parties that McCain had access to the information sought to be added before briefing was closed on the Defendants' Motions to Dismiss. ROA.1608. It held, however, that this delay, alone, was insufficient ground to deny leave to amend. *Id.*

The district court, nonetheless, concluded that the proposed Second Amended Complaint did not cure the deficiencies and was futile. ROA.1612. Specifically, it noted that although McCain now alleged an approximate number of red snapper

---

[6]    Excluding Mr. Rosetti, who did not file an opposition.

entrees sold, and claimed the "overwhelming majority" were actually Foreign Fish, he failed to include any additional facts to demonstrate he personally suffered a concrete, particularized injury. ROA.1606, 1609-10. In fact, McCain now contended that he allegedly consumed and paid for Foreign Fish on only two occasions – December 28, 2016 and August 21, 2018 – rather than three occasions. ROA.1610. Moreover, the district court held that McCain's reliance on Mr. Cvitanovich's sentencing transcript, attached to the Second Amended Complaint, did not support his assertions, stating:

> The Court finds Cvitanovich's objection does not lead to a plausible inference that Mahoney's always or almost always substituted frozen, foreign fish for its snapper entrees. **In fact, the sentencing transcript contains no reference to snapper.**[7]

ROA.1611 (emphasis added).

The district court also found that the QPS' Indictment lists dates on which Mahoney's allegedly purchased foreign fish from QPS but "[n]one of those dates are close in time to the dates on which McCain alleges he purchased snapper from Mahoney's." *Id.* In light of these deficiencies, the district court correctly held:

> The facts in McCain's proposed amended complaint do not lead to a plausible inference that McCain purchased and consumed mislabeled fish. He was apparently satisfied with the fish because he consumed it and paid the price set by Mahoney's on at least two occasions. And he

---

[7]    The district court further found that McCain's other exhibits "indicate that snapper may not have been the only local fish substituted with foreign fish." ROA.1611.

11

concedes that he had no idea that he may have been served something other than snapper until criminal arrests were announced. McCain has not provided the name of the snapper entrees he ate, and **there are no facts from which the Court could infer the number of times Mahoney's sold the entrée(s) McCain purchased during the class period or the number of times that entrée … may have been mislabeled. McCain does not have Article III standing** because he has not alleged that he suffered an actual and particularized injury. **He has merely alleged a possibility that he may have been overcharged for the entrees he consumed**.

ROA.1611-12 (emphasis added). The district court entered a Final Judgment on November 17, 2025 dismissing McCain's lawsuit without prejudice for lack of standing. ROA.1613. This Appeal followed. ROA.1614.

## III.   McCAIN'S APPEAL.

McCain raises two "issues" in his Original Brief. The first, in essence, is that the district court applied an "overly-narrow and restrictive plausibility requirement" in granting the Motions to Dismiss and later denying his request to file the proposed Second Amended Complaint. *See* Appellant's Brief, p. 2. As discussed below, the district court cited and applied the correct legal standards. This assignment of error is without merit.

The second "issue" raised by McCain is more difficult to comprehend. Essentially, McCain argues that defendants "admitted" to a criminal conspiracy to defraud related to the sale of mislabeled frozen fish for local caught fish; that McCain paid for "premium-priced local-caught fish" during the alleged timeframe

12

of the conspiracy when "the overwhelming majority – if not all" fish sold had been fraudulently mislabeled; and that these allegations taken together are sufficient to demonstrate he sustained an injury-in-fact. *Id.*, pp. 2-3. This assignment of error also lacks merit. As correctly found by the district court, McCain's allegations set forth only a possible and speculative injury, not a plausible one.

## SUMMARY OF THE ARGUMENT

The injury alleged by McCain in his First Amended Complaint was that he possibly overpaid for and consumed mislabeled foreign fish on one of the three occasions he dined at Mary Mahoney's. The district court correctly found that the allegations were insufficient to constitute a plausible injury-in-fact for purposes of Article III standing as they were entirely speculative.

The district court also did not abuse its discretion in denying leave to file a Second Amended Complaint where it would be futile. As the district court correctly found, the newly added allegations did not transform McCain's injury into a concrete and plausible injury-in-fact. The documents on which he relied and incorporated into the Second Amended Complaint in fact contradicted his positions.

## STANDARD OF REVIEW

**I.  STANDARD OF REVIEW OF DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION.**

This Court reviews motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), including for lack of standing, *de novo*. *Burnett Specialists v.*

13

*Cowen*, 140 F.4th 686, 693 (5th Cir. 2025). This Court applies the same standards as the district court applied. When, as here, the challenge is limited to a facial attack, then the familiar facial plausibility standards applicable in the Rule 12(b)(6) context apply. *Earl v. Boeing Co.*, 53 F.4th 897, 903 (5th Cir. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Thus, the district court must accept as true the non-conclusory factual allegations of the complaint, including any attachments thereto, to ascertain if standing is plausible on its face. *Ashcroft*, 556 U.S. at 678; *see also Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

Where fraud is alleged, Rule 9(b) "require[s] 'circumstances constituting fraud' to be pleaded 'with particularity.'" *Crosswell v. Martinez*, 120 F.4th 177, 184 (5th Cir. 2024) (quoting Fed. R. Civ. P. 9(b)). Rule 9(b)'s "heightened pleading standard" "applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." *Elson v. Black*, 56 F.4th 1002, 1008 (5th Cir. 2023) ("[t]he application of Rule 9(b) is fatal when a claim is premised entirely upon a course of fraudulent conduct that is not sufficiently pled."). "At a minimum, Rule 9(b) requires allegations of the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Crosswell*, 120 F.4th at 184 (citations omitted).

The burden is on the plaintiff, as the party invoking jurisdiction, to establish subject matter jurisdiction and standing. *Burnett*, 140 F.4th at 693. Plaintiff must

14

"allege a plausible set of facts establishing jurisdiction." *Id.* (*quoting Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012)). "[A]t the pleading stage, the plaintiff must clearly … allege facts demonstrating each element [of standing]." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). Under Article III's standing requirement, the plaintiff must establish three elements "(1) injury in fact, (2) a sufficient 'causal connection between the injury and the conduct complained of' and (3) 'a likelihood that the injury will be redressed by a favorable decision.'" *Burnett*, 140 F.4th at 693 (*quoting Glass v. Paxton,* 900 F.3d 233, 238 (5th Cir. 2018) (*quoting Susan B. Anthony List,* 573 U.S. at 158)).

Importantly, "an injury in law is not an injury in fact[;]" rather, "[o]nly those plaintiffs who have been **concretely harmed** by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (emphasis added). As stated by this Court:

> standing requires a claim of injury that is '**concrete, particularized, and actual or imminent**.' That means a claimed injury must be real—'**it must actually exist**.' *Spokeo*, 578 U.S. at 340, 136 S.Ct. 1540. And it must not be 'too speculative for Article III purposes.'

15

*Earl*, 53 F.4th at 901–02 (*quoting TransUnion*, 594 U.S. at 423; *Spokeo*, 578 U.S. at 339; *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 409, (2013)) (emphasis added). "No concrete harm, no standing." *TransUnion LLC*, 594 U.S. at 417, 442.

"[M]ere speculation" regarding whether an injury did or might have occurred "cannot satisfy the requirement that any injury in fact must be fairly traceable to" the defendants' challenged conduct. *Clapper*, 568 U.S. at 410-11. "Standing is not an ingenious academic exercise in the conceivable" rather it requires "a factual showing of [or plausible allegations indicating] perceptible harm." *Lujan*, 504 U.S. at 566. Under these standards, "[m]erely asking for money does not establish an injury in fact." *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315, 319 (5th Cir. 2002).

In the consumer context, courts routinely reject assertions of standing grounded on an overpayment or benefit of the bargain theory of harm when the plaintiff's theory of injury remains just that—a theory. *See Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1031-33 (8th Cir. 2014) (dismissing proposed class action for failure to allege a particularized injury in fact where consumers who claimed to have paid a "premium price" for "100% Kosher" products could only speculate that the products they purchased contained non-kosher beef); *In re Recalled Abbott Infant Formula Products Liab. Litig.*, 97 F.4th 525, 531 (7th Cir. 2024) ("plaintiffs here cannot and do not maintain that the infant formula they

16

purchased was contaminated [and thus] Plaintiffs have no economic injury because the products they purchased were not rendered valueless; they received the infant formula for which they bargained."); *see also Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002) (finding no standing for consumer who purchased a pain killer that was later recalled where she did not claim to have suffered any adverse health consequences); *Kell v. Lily's Sweets, LLC*, No. 23-147, 2024 WL 1116651 (S.D. N.Y. Mar. 13, 2024) (dismissing for lack of standing where "the allegation that [plaintiff] purchased chocolate contaminated with lead is supported only by the anecdotal findings of *Consumer Reports* based on a limited sample of allegedly contaminated products").

In *Abbott,* the Seventh Circuit provided this hypothetical to explain why plaintiffs' theory of injury did not confer standing:

> Consider a popular restaurant at which a diner gets food poisoning. An investigation reveals the restaurant did not meet the sanitation code, so its food was at risk of contamination. The sick diner had a real, particularized injury. But any patron who has ever eaten at the restaurant does not have a real, particularized injury. The risk that other patrons' food could have been contaminated because it was prepared and served at a restaurant that did not meet the sanitation code does not mean that the other patrons' food was ever contaminated. Any injury to those other patrons is hypothetical or conjectural, and they have no particular or individual harm. So, the other patrons would not have standing to sue the restaurant under a risk-of-harm theory of injury, unlike the diner with food poisoning who suffered an actual harm.

*Abbott,* 97 F.4th at 532.

17

This Court underscored these Article III vetting principles in *Earl v. Boeing Company*, *supra*. There, this Court, reversing class certification, determined that a putative class of buyers of airplane tickets who brought a civil RICO case for alleged fraud in connection with the certification and marketing of a faulty aircraft failed to plausibly allege that they suffered any *de facto* concrete injury and lacked Article III standing. *Earl*, 53 F.4th at 903.[8]

On the overpayment theory, this Court in *Earl* determined that plaintiffs' first suggestion—that they were harmed because defendants' fraud induced them to buy tickets they never would have bought otherwise—was doomed by *Rivera v. Wyeth-Ayerst Laboratories*, *supra*. *Id.* at 902. And, plaintiffs' second overpayment-by-fraud theory of standing was implausible because it rested on two unsupportable inferences. *Id.* at 903 (citing *Iqbal*, 556 U.S. at 678). Though it is "always the case that in a hypothetical world where the fraud didn't happen, anyone injured by the fraud would have been better off[,]" plaintiffs must still plausibly allege that they actually are worse off financially due to the defendants' fraud. *Id.*

---

[8]    Specifically, there, eleven named plaintiffs sued an airplane manufacturer and airline, seeking to represent everyone who purchased a ticket for air travel on Southwest or American Airlines during the class period, seeking to recover under RICO for alleged fraud in connection with the certification and marketing of the Boeing aircraft. *Id.* at 900-01. The plaintiffs contended that the defendants fraudulently concealed defects in the Boeing 737 MAX 8 aircraft (a defect that threatened passengers with a serious risk of physical injury or death). *Id.* During the class period (August 2017 to March 2019), the MAX 8 aircraft made up at most 34 of over 700 planes in Southwest's fleet and 28 of over 1,500 planes in American's fleet. *Id.* After two MAX 8 crashes, it was grounded worldwide. *Id.*

In a novel fraud case, courts still require that plaintiffs satisfy the requirements present in an ordinary fraud case: identifiable victims who lost money that they would not have lost without the fraud. Manufacturing a theory concerning how *some* victim hypothetically lost money falls short of satisfying Article III standards, even at the pleading stage. *Wallace*, 747 F.3d at 1030.

## II. STANDARD OF REVIEW OF DENIAL OF RULE 59(E) AND 15(A) MOTIONS.

A Rule 59(e) motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence," and "cannot be used to raise arguments which could, and should, have been made before the judgment." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003). When the Court dismisses without prejudice a lawsuit, and Plaintiff files a Rule 59(e) post-judgment motion to amend that judgment, the considerations of Rule 15(a) are also invoked. *Id.* at 864. "Denial of a motion to amend is reviewed for abuse of discretion." *Shaw v. Restoration Hardware, Inc.*, 93 F.4th 284, 288 (5th Cir. 2024) (*quoting Stem v. Gomez*, 813 F.3d 205, 209 (5th Cir. 2016)).

Under Rule 15(a), "when justice so requires[,]" leave to amend pleadings should be "freely give[n]." Fed. R. Civ. P. 15(a). "[T]hough Rule 15(a)(2) 'evinces a bias in favor of granting leave to amend,' … leave to amend 'is by no means automatic.'" *Clark v. Dep't of Public Safety and Corrections*, 141 F.4th 653, 661 (5th

19

Cir. 2025) (citations omitted, cleaned up). District courts maintain discretion to deny leave to amend if "there is a substantial reason" to do so. *Id.* (citation omitted).

Substantial or "[p]ermissible reasons for denying a motion for leave to amend include … futility of amendment, etc." *Walker v. Hunt*, No. 1:19-cv-246, 2019 WL 13541235, at *1 (S.D. Miss. 2019) (Guirola, J.). "Amending pleadings would be futile 'if the complaint as amended would be subject to dismissal.'" *Clark*, 141 F.4th at 662 (citations omitted). Courts assess futility "under the same standards as dismissal under Rule 12(b)(6)." *Id.* (quoting *Butler v. Denka Performance Elastomer*, L.L.C., 16 F.4 427, 437 (5th Cir. 2021)).

## ARGUMENT

### I. THE DISTRICT COURT CORRECTLY DISMISSED THE FIRST AMENDED COMPLAINT FOR LACK OF STANDING.

As the District Court correctly found, the First Amended Complaint failed to allege a plausible injury-in-fact that is both <u>actual</u> and <u>particularized</u>. McCain did not allege that he suffered physical injury from consuming fish at Mary Mahoney's. Rather, his complaint alleges buyer's remorse only *if he was actually served mislabeled fish*. McCain alleged that he ordered snapper from Mary Mahoney's menu, but that it is possible that—and *still* unbeknownst to him—he *may have been* served some other type of fish that resembled or could pass as a convincing substitute for snapper but that was not snapper, and thus was mislabeled on the menu. Critically, other than in conclusory fashion, McCain did not allege that on the three

20

occasions he dined at Mary Mahoney's, he was, in fact, served mislabeled foreign fish. Rather, he speculates. Much like the putative *Wallace* class, McCain appeared to "pin his Article III hopes on the allegation that he paid a premium" for snapper, believing it to be snapper, but given that the defendants have pled guilty to seafood fraud (and given the spreadsheet included in those criminal allegations indicating the dates that QPS sold Mary Mahoney's tons of fish that was not caught in the Gulf of Mexico), it's *possible* that he may have been served mislabeled fish that was not snapper. But, just like in *Wallace*, where it was possible that the plaintiffs had paid for and received kosher beef products, it is possible that McCain paid for and was indeed served snapper.

It would be "pure speculation" and conjecture to say that the particular pieces of fish McCain consumed on three occasions during the prior 11 years (which McCain believed was snapper), in fact, was not snapper or was not some other fish listed on Mary Mahoney's menu/described by the server/otherwise found in the Gulf of Mexico. As the district court correctly found "McCain concedes there is no way to determine whether he was actually served foreign fish or red snapper." ROA.1258. Thus, even construing the pleaded facts in his favor—including allegations that QPS and Mary Mahoney's sold correctly labeled fish as well—there is no way to know. And, it follows, there was no actual and particularized injury in fact. As such, the

21

district court correctly found that McCain did not allege an actual, particularized injury. And his unsupported conclusions did not suffice to confer standing.

As the above summarized cases make clear, this Court assesses the plausibility of what was alleged, what was not alleged, and indeed what could not be alleged in assessing overpayment by fraud standing theories. Critically, McCain conceded and specifically alleged that "[s]ome of the products sold by [Mary Mahoney's and QPS] were legitimate, including other types of seafood and poultry that were not mislabeled and fraudulent sold to consumers[.]" ROA.163, ¶ 95. McCain did not (and cannot) allege that that QPS was the exclusive and sole supplier of fish to Mary Mahoney's. Similarly, McCain did not and cannot allege that Mary Mahoney's served no snapper, much less no Gulf sourced fish, on the three occasions that McCain dined with Mary Mahoney's between 2013 and 2018. Absent allegations of exclusivity—or absent allegations that McCain genetically tested the fish he was served and ate on those occasions and/or that Mary Mahoney's served *only* mislabeled fish and never any snapper—McCain did not and cannot plausibly allege that the fish he ate was not, in fact, snapper. In fact, McCain had no complaints or suspicions at the time that he did not eat snapper. Under these circumstances, McCain's hindsight speculation is insufficient to confer standing.[9]

---

[9]    McCain's theory of standing as to each of his claims against QPS, Mr. Gunkel, and Mr. Rosetti is even more speculative and attenuated. There are no allegations that the QPS Parties ever made any representation to McCain, much less they had any involvement in

22

Benefit of the bargain or overpayment theories of economic harm are doomed unless plaintiffs sufficiently and plausibly allege an actual *de facto* economic injury; they cannot base their standing theory on their mere subjective belief in the product's quality, or their speculation and conjecture that they may have consumed a product that was mislabeled. Being merely "conceivable" is not enough. *Lujan*, 504 U.S. at 566. The mere potential risk of conceivable harm, economic or otherwise (*i.e.,* in a no-injury products liability case where some units of a product contain a defect, as opposed to a universal defect inherent in all products), is insufficient to confer standing.

Accepting McCain's standing theory on these allegations would offend fundamental constitutional standing requirements as well as the general principle that an injury in law (or a mere technical or abstract violation of law) is not an injury in fact. Accordingly, each of McCain's claims should meet the same fate as those plaintiffs/consumers who claimed that *some* Hebrew National beef products were not, as their label read, "100% kosher," or others who claimed economic harm but who had alleged nothing more than that they had consumed a product that functioned as expected.

---

what Mary Mahoney's stated on its menu or to its customers like McCain. Nor is there any allegation that the QPS Parties had any involvement in the ultimate decision on what fish to serve or at what cost to Mary Mahoney's customers. Though injury-in-fact is the most glaringly absent element of standing here, McCain likewise failed to plausibly allege that any injury was directly caused by, or traceable to, the QPS Parties.

23

There is no case or controversy unless McCain has standing to sue. Without a judicially cognizable interest to vindicate, much less concrete injury of his own, McCain conjures nothing more than a vicarious representative interest in the administration of criminal laws relating to seafood fraud. However, a pure violation of criminal laws does not translate into a case or controversy absent actual, cognizable and redressable harms presented by a plaintiff with standing.

Not everyone who dined at Mary Mahoney's purchased mislabeled fish. McCain's claims, as pled, allege nothing more than a bystander's request for money based on the vindication of public rights or generalized grievances. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382, 144 S.Ct. 1540, 219 L.Ed.2d 121 (2024) ("The injury in fact requirement prevents the federal courts from becoming a 'vehicle for the vindication of the value interests of concerned bystanders.'"); *see also Rivera*, 283 F.3d at 319 ("[m]erely asking for money does not establish an injury in fact"). "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion LLC*, 594 U.S. at 427 (quotation omitted).

The district court correctly concluded that McCain failed to allege a concrete, non-speculative, and particularized injury-in-fact that actually exists. Its order dismissing his First Amended Complaint should be affirmed.

24

## II.   THE DISTRICT COURT'S DENIAL OF LEAVE TO AMEND WAS NOT AN ABUSE OF ITS DISCRETION.

The district court did not abuse its discretion in denying McCain leave to file his proposed Second Amended Complaint on the grounds of futility.[10]

### A.   The Proposed Second Amended Complaint Still Failed to Allege Facts that Indicate a Plausible Particularized Injury-in-Fact.

The district court correctly concluded that McCain's proposed second amendment would be futile. The same cases and authorities discussed above, and applied by the district court on the Motions to Dismiss, doomed McCain's proposed Second Amended Complaint. As before, in the proposed Second Amended Complaint, McCain predicated his standing on a price-premium overpayment-by-fraud theory of injury. As such, to plausibly plead particularity, he was required to allege sufficient *facts* to allow the plausible inference that the species of fish in the entrée that *he* purchased was, in fact, mislabeled. He still failed to overcome this hurdle.

The Second Amended Complaint contained a "narrower" class period of four years, alleged that during that time some 55,500 "Snapper Entrees" were sold, and reduced the number of relevant visits McCain paid to Mary Mahoney's from three to two. ROA.1269-70, 1272, ¶¶ 3, 16, n.1, 2 He also inserted conclusory, and

---

[10]   As the district court correctly found, McCain could have, but chose not to, seek leave to amend while briefing on the defendants' Motions was still open. Although the district court did not rely entirely on this factor, it was relevant nonetheless.

gratuitous, allegations that the alleged substitution scheme was "repetitious," "regular," "continuous," and involved an "overwhelming majority, if not all," of the Snapper Entrees sold. ROA.1269, 1272 ¶¶ 4, 16. Based on this, he asked the district court to infer that it was plausible he was sold Foreign Fish on his visits. McCain, however, neglected to place the 55,500 figure in context. As indicated in footnote 3 of the proposed Second Amended Complaint (and the referenced sentencing transcript colloquy), that figure was a "rough" estimate accepted by the sentencing court to inform Mr. Cvitanovich's sentencing exposure. ROA.1270, n.3.

In any event, nothing had changed from the First Amended Complaint: as a "rough" estimated total number of misbranded snapper entrees sold, the figure corresponds *directly* to how McCain framed the total in the First Amended Complaint: 58,750 pounds of fish.[11] McCain merely reframed the same (rough) total from pounds to entrees. ROA.142, ¶ 3. This was insufficient in the prior complaint and insufficient in the proposed complaint to demonstrate injury-in-fact. As before, McCain continued to pin his Article III hopes on the allegation that he paid for local fish—based on his *two* meals during the four-year mislabeling period—but it's

---

[11]    In his Opposition to QBE's Rule 12(b)(1) Motion to Dismiss, McCain made the same argument, which was rejected by the district court, that 58,750 pounds translates into "55,000 fraudulent meals" sold by Mary Mahoney's. ROA.458.

merely possible that Mary Mahoney's served *him* imported fish. *See Wallace*, 747 F.3d at 1030-31.

Absent factual allegations that directly link the product a plaintiff purchased to the universe of products that were allegedly mislabeled, a plaintiff might endeavor to allege facts indicating that the mislabeling was uniform or universal[12] or, failing that, widespread. Because McCain did not test the product or food he consumed and there are no facts alleged that plausibly support that *all* Snapper Entrees were mislabeled, McCain must allege facts indicating something less than uniform mislabeling, (*i.e.,* that it was **widespread** and pervasive based on such facts as third-party testing). Focusing on defendants' conduct and alleging widespread fraud is not sufficient to plausibly alleging particularity. In such cases, as here, McCain also must allege sufficient facts indicating that he **regularly** purchased such products with sufficient **frequency** close in time/during the mislabeling period [**temporal proximity**], that it is plausible that any given product was mislabeled (and thus his was too). Failing to do so does not nudge allegations beyond the merely possible.

Put differently, because McCain failed to allege sufficient facts meaningfully linking the results of independent testing/investigations to the products he actually

---

[12] For universal defects/misbranding, it could be undisputed that a product line was uniformly defective/mislabeled (*see, e.g., Cole v. General Motors Corp.*, 484 F.3d 717, 722-23 (5th Cir. 2007)) and/or testing revealed such universal mislabeling/defectiveness, or a recall of all products issued.

purchased, his allegations fail for lack of particularity. *See, e.g., Huertas v. Bayer US LLC*, 120 F.4th 1169, 1179, 1180-81 (3d Cir. 2024) (dismissing claims of some plaintiffs who failed to allege facts linking the products they purchased to the benzene contamination; merely alleging temporal proximity is insufficient); *Esquibel v. Colgate-Palmolive Co.*, No. 23-742, 2025 WL 178565, at *3 (S.D.N.Y. June 27, 2025) (where plaintiff purchaser of "natural" mouthwash failed to allege he bought the product with regularity, his allegations were insufficient to support an inference that the product was so widely contaminated that any purchase in the two-year period plausibly could have been affected); *Onaka v. Shiseido Americas Corp.*, No. 21-10665, 2023 WL 2663877, at *5 (S.D.N.Y. Mar. 27, 2023) ("Even if the Court assumed that the Complaint adequately alleges that the Defendant regularly sold ["natural" make-up] products containing PFAS, it is still not plausible that Plaintiffs overpaid because the Complaint does not provide any nonconclusory allegations that the Plaintiffs purchased the products with any regular frequency."); *Dunning v. Supergoop, LLC*, No. 23-11242, 2025 WL 34822, at *2, 6 (S.D.N.Y. Jan. 6, 2025) (dismissing complaint for lack of Article III standing, notwithstanding plaintiff's allegations that she would not have purchased or would have paid significantly less for sunscreen had she known it actually provided materially less sun protection than the SPF level represented on the bottle, given the lack of specific allegations that would permit the inference that the mislabeling was so widespread

28

as to render it plausible that any plaintiff purchased a mislabeled product; and otherwise rejecting plaintiff's suggestion that she had standing to sue Supergoop to enforce the FDCA's regulations); *Lurenz v. The Coca-Cola Company*, No. 22-10941, 2024 WL 2943834, at *3-4 (S.D.N.Y. June 10, 2024) (dismissing complaint for lack of Article III standing where factual allegations failed to meaningfully link results of testing of some products to actual product purchased by plaintiff).

McCain's modified allegations in an attempt to show a "systematic overcharging" coupled with two purchases (December 28, 2016 and August 21, 2018) still failed to meet the standard articulated in *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017). Whereas John alleged both widespread (study indicated nearly 90% of pre-packaged foods were mislabeled) **and** regular and frequent (monthly for months) purchases of pre-packaged foods,[13] McCain still did not allege that in the proposed amendment. McCain's allegation that he twice dined at Mary Mahoney's during the alleged four-year class period/alleged mislabeling

---

[13] *Compare Akridge v. Whole Foods Market Grp., Inc.*, No. 20-1090, 2022 WL 955945, at *7-8 (S.D.N.Y. Mar. 30, 2022) (granting Whole Foods' motion to dismiss for lack of Article III standing where FDA warning letter did not indicate what percentage of the packaged foods were mislabeled and plaintiff failed to allege facts indicating he purchased prepared food products with any regularity or frequency).

29

scheme flunks the regularity and frequency prong.[14] McCain also still failed to allege facts that would permit the district court to plausibly infer what *percentage* of fish served was mislabeled (or when). The insertion of words like regular, continuous, and overwhelming without facts to back them up does not suffice.

Beyond sheer speculation that 55,500 seems like a lot of entrees—just like 58,750 pounds of fish seems like a lot of fish—without more, one can venture nothing more than a wild guess as to *what proportion* of snapper entrees sold were mislabeled during a four year period, much less extrapolate whether it is plausible that *any* of the roughly 55,500 total mislabeled entrees sold from January 1, 2016 to mid-November 2019 were served to McCain when he dined at Mary Mahoney's on December 28, 2016 and August 21, 2018. Indeed, McCain's allegations in footnote 4 indicating (as before in the First Amended Complaint) that QPS was not Mary Mahoney's exclusive supplier (which would fairly suggest or at least not eliminate

---

[14]    Temporal proximity remained questionable as well. As the district court indicated in parsing McCain's allegations in his First Amended Complaint regarding total pounds of fish sold over various durations of time, alleged dates on which Mary Mahoney's purchased seafood from QPS do not indicate *when* foreign fish was sold to customers. In his proposed Second Amended Complaint, McCain still alluded to dates suggesting intended purchases by Mary Mahoney's from QPS—September 19, 2018, September 27, 2018, October 18, 2018, and February 21, 2019—but none appear close in time to the two dates on which McCain now claimed he ate fish at Mary Mahoney's—December 28, 2016 (McCain alleges he consumed one entrée almost two years before an alleged purchase date) and August 21, 2018 (approximately a month before the alleged purchase dates). ROA.1277-78, ¶ 40; ROA.1272, ¶ 16. McCain, notably, deleted from his proposed Second Amended Complaint the 2019 table of alleged sales inserted in the First Amended Complaint since McCain does not claim to have dined at Mary Mahoney's in 2019. ROA.151-52, ¶ 38; ROA.1277-78, ¶ 40.

the possibility that Mary Mahoney's also sourced from other suppliers) and at least some of the fish Mary Mahoney's ordered from QPS was the local species listed on its menu (ROA.1270, n.4) continue to suggest that Mary Mahoney's sold both Gulf-caught and foreign fish and, therefore, the universe of mislabeled foreign fish sold was certainly less than all.[15] Regardless, even if the Court accepts McCain's conclusion that the rough estimated total of mislabeled fish entrees sold permits an inference (as opposed to speculation) that some presumably large proportion of mislabeled fish entrees qualifies as "widespread" mislabeling, this alone renders it merely *possible* that on two occasion in four years McCain received one of the mislabeled entrees. A mere possibility is not enough. *Wallace*, 747 F.3d at 1030-31.

### B. The Second Amended Complaint Still Failed to Allege Facts that Plausibly Indicate a *Concrete* Injury-in-Fact.

As discussed, buyer's remorse—without more—is not an Article III injury-in-fact. As previously briefed, McCain consumed two fish entrees that apparently functioned as expected.  His theoretical and abstract allegations, and resistance to alleging any reliance harm he suffered, fail to plausibly implicate any actual economic injury. Standing cannot be based on the merely "conceivable but requires a factual showing [or allegations] of perceptible harm." *See Summers v. Earth Island*

---

[15]  Plaintiff would not need to contort the alleged facts to attempt to meet the "widespread" mislabeling conduct prong of *John* if he had alleged facts to indicate that *all* snapper entrees were mislabeled for four years. McCain can never satisfy *John* where he alleges he ate just two fish dinners over four years because he fails the regularity and frequency of purchase prong.

*Institute*, <u>555 U.S. 488, 499</u> (2009) (internal quotations, citation omitted). Yet, in his proposed Second Amended Complaint, McCain continued to anchor his economic harm theory of standing to conclusions, threadbare allegations, labels, and conjecture. He continued to focus on the defendants' conduct, while failing to include facts concerning himself and any harm that befell him due to his reliance on the defendants' alleged mislabeling scheme. Repeating conclusory allegations that the defendants sold mislabeled entrees "at higher prices customary for authentic snapper, when in fact, each entrée was instead inexpensive foreign fish" falls short of stating a concrete injury-in-fact.

That *someone* was likely injured due to fraud does not suffice to confer standing on a plaintiff where the plaintiff does not allege facts plausibly indicating that he suffered a palpable harm or injury. The proposed Second Amended Complaint contained no allegation that McCain perceived any harm at the time he twice consumed fish entree at Mary Mahoney's (or ever). Only when media sources alerted the public that, some five-plus years prior, diners *may have been* served fish indistinguishable from local fish, did McCain request his money back because he speculated in conclusory fashion, that he and the class members may have paid more *if* Mary Mahoney's served the wrong (to him) species of fish. In this regard, McCain merely alleges an abstract interest or hopeful expectation (not alleged to be anchored anywhere in law) that restaurants price their entrees "accordingly" -- whether that is

32

according to some intrinsic value of the fish, or market price, is unclear.[16] This is not sufficiently concrete to confer standing. *Lujan*, 504 U.S. at 560, 573. Absent concrete and particularized injury, standing doctrine prevents McCain from pursuing redress in federal court for his mere theoretical conception of a harm perhaps suffered by others. Accordingly, the district court correctly denied leave to file McCain's proposed Second Amended Complaint on the grounds of futility.

## III.    McCAIN HAS NOT DEMONSTRATED ERROR OR AN ABUSE OF DISCRETION.

McCain's primary argument in his Original Brief is that the district court allegedly applied an "overly strict and narrow 'plausibility' requirement." Appellant's Original Brief, p. 31. He alleges that "the district court engaged in a rigorous factual testing of Mr. McCain's allegations of injury-in-fact" and "evidentiary analysis" contrary to law. *Id.* This is incorrect.

First, the authorities cited by McCain are distinguishable. *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) did not concern pleading standards for Article III standing or injury in fact, but was on review of a Rule 12(b)(6) motion to dismiss a disparate treatment claim under Title VII. Acknowledging that to survive dismissal, the plaintiff need not "submit evidence to establish a prima facie case," this Court correctly cautioned that the plaintiff must

---

[16]    Absent from the proposed amended complaint are any allegations of restaurant pricing practices or regulations or any fish or entrée valuation or market price, only vague references to "premium" versus "inexpensive" fish, copied and pasted from the criminal charges or press releases.

"plead sufficient facts on all of the *ultimate elements* of [his] claim to make [his] case plausible." *Id.* This, McCain failed to do. Likewise, *Allstate Indem. Co. v. Bhagat*, 164 F.4th 426, 433 (5th Cir. 2026) is of little relevance as this case also did not concern Article III standing. While *Lowery v. Mills*, 157 F.4th 729, 737 (5th Cir. 2025) did concern Article III standing, it was in the context of an alleged First Amendment violation. There, this Court made clear the plaintiff "must have suffered an injury in fact – a concrete and imminent harm to a legally protected interest …." *Id.* The plaintiff met that standard in the context of the legal elements of his free speech claim; McCain, here, does not.

Here, the district court applied the correct standards and did not subject McCain's allegations to improper "factual testing." Rather, its analysis was limited to the allegations of the pleading and the documents that McCain chose to *voluntarily attach and incorporate into his pleadings*. As this Court has held, when "an allegation [in a pleading] is contradicted by the contents of an exhibit attached to the pleading, **then indeed the exhibit and not the allegation controls**." *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (*citing Simmons v. Peavy–Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir.), *cert. denied,* 311 U.S. 685, 61 S.Ct. 63, 85 L.Ed. 442 (1940)) (emphasis added). Thus, "[i]f the plaintiff's allegations are contradicted by facts disclosed by a document attached to the complaint … **then the plaintiff's contradicted allegations are not accepted as**

34

**true**." *Doe v. Univ. of Texas M.D. Anderson Cancer Ctr.,* 653 F.Supp.3d 359, 370 (S.D. Tex.2023) (*citing Carter v. Target Corp.,* 541 Fed. App'x 413, 417 (5th Cir. 2013)). Accordingly, it was not error for the district court to examine McCain's own attachments, on which he explicitly relied in asserting his allegations. Where McCain's attachments do not align with the conclusory allegations of the pleadings, the district court was not required to accept them as true. This was not an improper weighing of evidence as McCain contends.

There is no question that neither the First Amended Complaint nor proposed Second Amended Complaint allege that all fish served by Mary Mahoney's during the relevant time frame was fraudulently substituted for foreign fish. Nor is there any allegation that the only fish sold to Mary Mahoney's during the relevant time frame was foreign fish, or that QPS was Mary Mahoney's exclusive supplier and sold only foreign fish. Rather, based entirely on speculation and conjecture derived from the criminal proceedings, McCain asked the district court to *presume* that the volume of foreign fish purchased by Mary Mahoney's was so great (allegedly) that when he dined there on three (or two) occasions, he was sold foreign fish. The inference is simply not supported by facts sufficient to demonstrate an injury-in-fact. McCain's purely conclusory allegations inserted in the proposed Second Amended Complaint, based on the same speculation, that he was sold foreign fish, are insufficient to correct the defects in the First Amended Complaint.

35

McCain argues that he alleged a "concrete," "direct … injury-in-fact" because he claims he purchased what he believes, but does not know, to be substituted fish on two or three occasions during the class period. In an effort to show his alleged injury is not based on pure speculation, he contends that "two" of the dates he dined at Mary Mahoney's were "within less than a month of specific orders and sales of the frozen foreign fish." Appellant's Original Brief, p. 37. McCain, notably, does not point to any specific paragraphs of his pleadings. That is because these facts do not appear therein.

Rather, the "sales/delivery" dates specified in the First Amended Complaint were primarily in 2019, and McCain did not allege he dined at Mary Mahoney's in 2019. ROA.151-52, ¶ 38.[17] There are no allegations in the First or Second Amended Complaints of any of possible orders remotely close to McCain's alleged first dining experience on July 29, 2013 or his second visit on December 28, 2016. ROA.144, ¶ 12; ROA.149-50, ¶¶ 36, 38; ROA.1272, ¶ 16; ROA.1277-78, ¶ 40. His next visit was on August 21, 2018. ROA.144, ¶ 12; ROA.1272, ¶ 16. But, again, neither the First nor Second Amended Complaint allege any sales or deliveries before that date and certainly not "within less than a month." The closest alleged sale/delivery was not

---

[17]    These allegations were removed in the Second Amended Complaint, but the chart of 2019 deliveries was still in the indictments. *See* ROA.1407-1409, 1439-1442.

until *September 19, 2018*, nearly a month *after* McCain claims he dined at Mary Mahoney's. ROA.150, ¶ 36(e); ROA.1277, ¶ 40(b), (c).

McCain attempts to distinguish *Earl v. Boeing Company* (which relied on *Rivera v. Wyeth-Ayerst Laboratories*). But as discussed above, and found by the district court, these cases present issues similar to those asserted by McCain. ROA.1256. And these cases clearly hold that injuries of the type alleged by McCain "cannot support Article III standing." *Id.*

The only authority McCain discusses in depth is this Court's recent decision in asserted *Wilson v. Centene Mgmt. Co., L.L.C.*, 168 F.4th 217, 221 (5th Cir. 2026). But *Wilson* does not support McCain's position. There, the putative class representatives alleged that defendant Ambetter provided materially inaccurate medical provider lists in violation of Texas and federal law. *Id.* at 222. They alleged the lists contained thousands of alleged in-network physicians who were not available to provide medical care, on average 49%. *Id.* As a result, they alleged that they were overcharged when they paid artificially inflated premiums for access to providers who were not available. *Id.* For example, one plaintiff, an adult female, alleged she reviewed the list of available providers before purchasing an Ambetter policy. She was assigned a pediatrician as her primary care provider by Ambetter. When she attempted to switch to another physician, none of those on the list that she contacted accepted Ambetter insurance. She was forced to pay for out of network

37

care to receive treatment. The other class representatives made similar allegations of being unable to find adequate in-network care, and of Ambetter refusing to pay covered medical expenses. Another class representative alleged that she selected Ambetter because her current obstetrician was on the in-network list and was a maternal-fetal medicine specialist. She was, at the time, a high-risk pregnancy patient. After purchasing Ambetter, she was told her obstetrician did not accept that insurance. There were no other specialists within a four hour drive from her home and she decided to pay her existing doctor out of pocket. She then had difficulty getting Ambetter to pay covered medical expenses including at clinics she was referred to by Ambetter and an in-network hospital.

On certification, the Plaintiffs presented an expert witness to support their overcharge theory. The district court denied class certification finding that Plaintiffs had not established that network size meaningfully accounted for the higher premiums they paid. *Id.* at 224. On review, this court found that the district court's analysis was based on both a review of the pleadings as well as the evidence. *Id.* at 226. It found the district court erred in finding that plaintiff's injury in fact was based on an expectation of a certain "network size." Rather, "each policyholder was overcharged to the extent the network was inaccurate." *Id.* This Court held:

> The size of the network is certainly relevant in determining the extent to which policyholders were overcharged, but the extent of any injury is beyond the scope of the standing inquiry. Insofar as the district court reached its standing

38

> determination by characterizing the Plaintiffs' injury theory as resting on a 'counterfactual' promise of a network of a particular size, that was error.

*Id.* at 226.

McCain's attempt to fit the facts of his case into the framework of *Wilson* must be rejected. Where the allegations of an overcharge in *Wilson* were supported by concrete factual allegations; McCain's are not. The class representatives in *Wilson* alleged actual injuries. McCain, conversely, cannot plead with any certainty that he was actually served the foreign fish he claims was fraudulently substituted for local fish. As such, *Wilson* does not support a finding that McCain has plead an injury-in-fact.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should affirm the district court's orders and judgment dismissing the lawsuit below.

Respectfully submitted:

/s/Patrick S. McGoey
Patrick S. McGoey, La. Bar #24549
Andrea V. Timpa, La. Bar #29455
Emily H. Ribera, La. Bar #39909
SCHONEKAS, EVANS, MCGOEY &
MCEACHIN, LLC
909 Poydras St., Suite 1600
New Orleans, Louisiana 70112
Telephone: (504) 680-6050
Facsimile: (504) 680-6051
patrick@semmlaw.com
andrea@semmlaw.com
emily@semmlaw.com

/s/ Joe Sam Owen
Joe Sam Owen, MS Bar #3965
OWEN, OWEN AND SMITH, PLLC
1414 25th Ave.
Gulfport, Mississippi 39501
Telephone: (228) 868-2821
jso@ooslaw.com

*Counsel for Defendant-Appellee,*
*James W. Gunkel*

*Counsel for Defendant-Appellee,*
*Quality Poultry & Seafood,*
*Incorporated*


*/s/ Joe M. Hollomon*
Joe M. Hollomon, MS Bar #2551
JOE M. HOLLOMON & ASSOCIATES, P.A.
107 North State Street
Jackson, Mississippi 39201
Telephone: (601) 353-1300
Facsimile: (601) 353-1308
jhollomon@outlook.com
joehollomonlaw@yahoo.com

*Counsel for Defendant-Appellee,*
*Todd A. Rosetti*


## CERTIFICATE OF SERVICE

I certify that on April 27, 2026, I electronically filed the foregoing with the Clerk of Court via the court's CM/ECF system, which sent a notice of filing to all counsel of record.

*/s/Patrick S. McGoey*
Patrick S. McGoey

## RULE 32(g) CERTIFICATE OF COMPLIANCE

1.  This Brief contains less than 13,000 words, with an exact word count of 9604, exclusive of parts exempted by <u>Fed. R. App. P. 32(f)</u>.

2.  This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font in text and 12-point Times New Roman font in footnotes in compliance with <u>Fed. R. App. P. 32(a)(5)</u>.

Date: April 27, 2026.

<em>/s/Patrick S. McGoey</em><br>Patrick S. McGoey