**Case No. 25-60663**

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

Todd McCain, Individually and on behalf of all others similarly situated

*Plaintiff-Appellant*

v.

Mary Mahoney's, Incorporated, doing business as Mary Mahoney's Old French House; Anthony C. Cvitanovich; Quality Poultry & Seafood, Incorporated; James W. Gunkel; Todd A. Rosetti; Does 1-10

*Defendants-Appellees*

_____

On Appeal from the United States District Court
for the Southern District of Mississippi
No. 1:24-CV-241, Hon. Louis Guirola, Jr.

---

## BRIEF OF DEFENDANT-APPELLEE

---

MATTHEW W. MCDADE (MSB # 103207)
BRYAN C. SAWYERS (MSB # 107144)
BALCH & BINGHAM LLP
1310 Twenty Fifth Avenue
Gulfport, MS 39501
Telephone: (228) 864-9900
Facsimile: (228) 864-8221
mmcdade@balch.com
bsawyers@balch.com

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to Local Rule 28.2.1, undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

(1)    Anthony Cvitanovich – *Defendant / Appellee*

(2)    Mary Mahoney's, Inc. d/b/a Mary Mahoney's Old French House – *Defendant / Appellee*

(3)    Balch & Bingham LLP; Matthew W. McDade, Esq. & Bryan C. Sawyers, Esq. – *Counsel for Defendants / Appellees, Anthony Cvitanovich & Mary Mahoney's Inc. d/b/a Mary Mahoney's Old French House*

(4)    Boyce Holleman & Associates; Tim Holleman, Esq. - *Counsel for Defendants / Appellees, Anthony Cvitanovich & Mary Mahoney's Inc. d/b/a Mary Mahoney's Old French House*

(5)    Michael F. Cavanaugh Law Firm; Michael F. Cavanaugh, Esq. - *Counsel for Defendants / Appellees, Anthony Cvitanovich & Mary Mahoney's Inc. d/b/a Mary Mahoney's Old French House*

(6)    Quality Poultry & Seafood, Incorporated - *Defendants / Appellees*

(7)    Schonekas, Evans, McGoey & McEachin, L.L.C.; Patrick S. McGoey, Esq. & Andrea V. Timpa, Esq. – *Counsel for Defendants / Appellees, Quality Poultry & Seafood, Incorporated*

(8)    Hengen & Hengen; Wayne Hengen, Esq. - *Counsel for Defendants / Appellees, Quality Poultry & Seafood, Incorporated*

(9)    Todd Rosetti - *Defendant / Appellee*

(10)    Joe M. Hollomon & Associates, P.A.; Joseph Hollomon, Esq. - *Counsel for Defendant / Appellee, Todd Rosetti*

(11)    James Gunkel - *Defendant / Appellee*

i

(12) Owen, Owen & Smith, PLLC; Joe Sam Owen, Esq. - *Counsel for Defendant / Appellee, James Gunkel*

(13) Todd McCain – *Plaintiff / Appellant*

(14) Fishman Haygood, L.L.P.; Harvey Bartlett, Esq. - *Counsel for Plaintiff / Appellant, Todd McCain*

(15) Gill, Ladner & Priest, P.L.L.C.; William Gill, Esq. & James Priest, Esq. - *Counsel* for *Plaintiff / Appellant, Todd McCain*

(16) Abdalla Law, P.L.L.C.; Gerald Abdalla, Esq. - *Counsel for Plaintiff / Appellant, Todd* McCain

(17) Dumas Law Firm, L.L.C.; Joey Dumas, Esq. - *Counsel for Plaintiff / Appellant, Todd McCain*

Respectfully Submitted,

*/s/ Matthew W. McDade*
MATTHEW W. MCDADE (MSB # 103207)
BRYAN C. SAWYERS (MSB # 107144)
BALCH & BINGHAM LLP
1310 Twenty Fifth Avenue
Gulfport, MS 39501
Telephone: (228) 864-9900
Facsimile: (228) 864-8221
mmcdade@balch.com
bsawyers@balch.com

*Counsel of Record for Defendant-Appellee*

ii

**STATEMENT REGARDING ORAL ARGUMENT**

The District Court correctly dismissed Plaintiff's putative class action for lack of Article III standing based on the allegations in the pleadings.  This Court's inquiry on appeal involves straightforward application of those same allegations to settled 5th Circuit precedent applied by the District Court.  Thus, oral argument would not significantly aid this Court's decisional process or resolution of this appeal.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ......................................................i

STATEMENT REGARDING ORAL ARGUMENT ......................................... iii

TABLE OF AUTHORITIES ...............................................................................vi

ISSUES PRESENTED FOR REVIEW....................................................................1

STATEMENT OF THE CASE..................................................................................1

    A.    The Amended Complaint ........................................................................2

    B.    Order of Dismissal..................................................................................4

    C.    Proposed Second Amended Complaint....................................................6

    D.    Order Denying Leave to Amend .............................................................8

SUMMARY OF ARGUMENT ...............................................................................10

STANDARD OF REVIEW .....................................................................................12

    A.    Lack of Subject Matter Jurisdiction and Article III Standing.............12

    B.    Denial of Motion to Amend under Rule 59 ........................................13

ARGUMENT.........................................................................................................14

    A.    The District Court Correctly Dismissed Plaintiff's Claims Because He Failed to Plausibly Allege an Actual and Particularized Injury-in-Fact.....................................................................................................15

        1.    The District Court Applied the Correct Legal Standard for Standing. ......................................................................................15

        2.    Plaintiff Did Not Plausibly Allege an Injury in Fact. ...............19

    B.    The District Court Did Not Abuse its Discretion in Affirming Dismissal and Denying Leave to Amend...........................................26

        1.    Plaintiff's Proposed Amendment was Futile. .........................26

        2.    The Proposed Amendment was also Procedurally Deficient. ..30

**CONCLUSION**.............................................................................................**36**

**CERTIFICATE OF SERVICE** ..........................................................................**38**

**CERTIFICATE OF COMPLIANCE** ................................................................**39**

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*,
    998 F.3d 190 (5th Cir. 2021) ..................................................................35

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................... 12, 16, 17, 18

*Babb v. Dorman*,
    33 F.3d 472 (5th Cir.1994) ....................................................................36

*Blackburn v. City of Marshall*,
    42 F.3d 925 (5th Cir. 1995) ...................................................................13

*Clark v. Dep't of Public Safety and Corrections*,
    141 F.4th 653 (5th Cir. 2025) ................................................................14

*D.L. Markham DDS, MSD, Inc. 401(K) Plan v. Variable Annuity Life Ins. Co.*,
    88 F.4th 602 (5th Cir. 2023) ..................................................................33

*Degruy v. Wade*,
    586 F. App'x 652 (5th Cir. 2014) ..........................................................36

*Denning v. Bond Pharmacy, Inc.*,
    50 F.4th 445 (5th Cir. 2022) ..................................................................12

*Earl v. Boeing Co.*,
    53 F.4th 897 (5th Cir. 2022) ........................................................ passim

*Farrelly v. Sifuentes*,
    124 F.3d 193 (5th Cir. 1997) .................................................................36

*Food & Drug Admin v. All for Hippocratic Med.*,
    602 U.S. 367 (2024)...................................................................... 13, 17

*Hebert v. Dizney*,
    295 F. App'x 717 (5th Cir. 2008) ..........................................................34

*Heimlich v. Harris Cty., Tex.*,
    81 Fed. Appx. 816 (5th Cir. 2003).................................................. 34, 35

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) .................................................................12

*In re Hearst Newspapers, L.L.C.*,
    641 F.3d 168 (5th Cir. 2011) .................................................................32

*In re Recalled Abbott Infant Formula Products Liab. Litig.*,
    97 F.4th 525 (7th Cir. 2024) ..................................................................22

*Infusion Resources v. Minimed*,
    351 F.3d 688 (5th Cir. 2003) .......................................................... 31, 33

*Jones v. Greninger*,
  188 F.3d 322 (5th Cir. 1999) ...................................................................14

*Kell v. Lily's Sweets, LLC*,
  No. 23-147, 2024 WL 1116651 (S.D. N.Y. Mar. 13, 2024)................................22

*Krim v. pcOrder.com, Inc.*,
  402 F.3d 489 (5th Cir. 2005) ...................................................................17

*L & A Contracting Co. v. S. Concrete Servs., Inc.*,
  17 F.3d 106 (5th Cir. 1994) ....................................................................27

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..............................................................................15

*Matadi v. Garland*,
  2022 WL 17712954 (5th Cir. Dec. 14, 2022).............................................27

*Rivera v. Wyeth-Ayerst*,
  *Lab'ys*, 283 F.3d 315 (5th Cir. 2002) ................................... 12, 16, 17, 22

*Rose v. Grappler Pressure Pumping, L.L.C.*,
  2025 WL 416996 (5th Cir. Feb. 6, 2025) ................................ 31, 32, 33

*Rosenzweig v. Azurix Corp.*,
  332 F.3d 854 (5th Cir. 2003) ...................................... 13, 14, 31, 34

*Shaw v. Restoration Hardware, Inc.*,
  93 F.4th 284 (5th Cir. 2024)....................................................................14

*Sojourner T v. Edwards*,
  974 F.2d 27 (5th Cir.1992) ......................................................................30

*Spiller v. City of Texas City, Police Dep't*,
  130 F.3d 162 (5th Cir. 1997) ..................................................... 35, 36

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)..............................................................................15

*Stevens v. St. Tammany Par. Gov't*,
  17 F.4th 563 (5th Cir. 2021) ...................................................................34

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)..............................................................................15

*Thomas v. Chevron U.S.A., Inc.*,
  832 F.3d 586 (5th Cir. 2016) ..................................................................14

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021).............................................................. 13, 16

*Vetcher v. Immigr. & Customs Enf't*,
  844 F. App'x 691 (5th Cir. 2021) ...........................................................34

*Vielma v. Eureka Co.*,
  218 F.3d 458 (5th Cir. 2000) ..................................................... 33, 35

*Wallace v. ConAgra Foods, Inc.*,
  747 F.3d 1025 (8th Cir. 2014) ................................................... 20, 21

*Whitaker v. City of Houston, Tex.*,
   963 F.2d 831 (5th Cir. 1992) ...............................................................................36
*Whitaker*,
   963 F.2d ..............................................................................................................36
*Wilson v. Centene Management Co., LLC*,
   168 F.4th 217 (2026)................................................................................. 25, 26
*Winzer v. Kaufman Cty.*,
   916 F.3d 464 (5th Cir. 2019) .............................................................................14

## **RULES**

Fed. R. App. P. 32(a) .............................................................................................39
Fed. R. Civ. P. 15(a)..............................................................................................33

## **OTHER AUTHORITIES**

Wright & Miller, Fed. Prac. & Proc. § 1489 (2nd ed. 1990 & Supp. 1999) ...........33

## ISSUES PRESENTED FOR REVIEW

Plaintiff's Brief overly complicates the issue for review, which is more simply stated as follows: Whether the District Court errored in finding Plaintiff failed to plausibly allege an injury-in-fact required for Article III standing because even in a light most favorable to Plaintiff, he merely alleged that it is *possible* that on one, two or three occasions, within a span of five years, he was unsuspectingly served a mislabeled seafood dinner that he would not have otherwise purchased, but the consumption of which caused him no physical harm.

## STATEMENT OF THE CASE

This lawsuit attempts to transform criminal proceedings against Defendants for mislabeling of fish sold by Defendant, Mary Mahoney's, Incorporated, doing business as Mary Mahoney's Old French House ("Mary Mahoney's"), into a civil payday.  In sum, Plaintiff, an Alabama resident, alleges having eaten "foreign fish" at Mary Mahoney's which was purportedly mispresented to be caught in the Gulf of Mexico.  (ROA.19).  Based on this allegation, Plaintiff asserts counts under civil RICO and state law claims for fraud, civil conspiracy and unjust enrichment. (ROA.32-43).  But as Senior District Court Judge (and former Chief Judge) Guirola correctly found, Plaintiff's claims do not get past the pleading stage due to lack of Article III standing. (ROA.1251-52).

1

**A.      The Amended Complaint**

Plaintiff's original Complaint was filed August 2, 2024.  (ROA.17).  Attached thereto was a DOJ press release of May 30, 2024, which detailed criminal pleas by Mary Mahoney's and Anthony Cvitanovich, and which Plaintiff alleged put him on notice of his claims. (ROA.46-47). That press release informed the public (including Plaintiff) of the date these Defendants were to be sentenced. (*Id.*). Plaintiff also attached to his original Complaint the charging documents against and plea agreements of these Defendants.  (ROA.48-79).

On September 30, 2024, Plaintiff filed his First Amended Complaint, adding Defendants Poultry & Seafood, Inc. ("QPS"), James Gunkel and Todd Rosetti (the "QPS Parties"). (ROA.141). The amended pleading also attached the charging documents against and plea agreements of the QPS Parties, as well as a DOJ press release dated August 27, 2024 which informed the public (including Plaintiff) the date they would be sentenced.  (ROA.174-175, 188-200, 221-247).

Plaintiff's primary allegation is that "as early as 2002, but no later than 2012, and continuing through November 2019," Defendants conspired to import, market and mislabel foreign fish as local fish caught from the Gulf Coast. (ROA.146). QPS is a seafood wholesale supplier alleged to have imported and sold the foreign fish through its business manager, Mr. Gunkel, and sales manager, Mr. Rosetti.  Mr.

Cvitanovich is the manager of Mary Mahoney's, and is alleged to have purchased the foreign fish from QPS that was sold at Mary Mahoney's. (ROA.144-45).

The allegations specific to Plaintiff and Mary Mahoney's are as follows:

- "On or about July 29, 2013, December 28, 2016, and August 21, 2018, Plaintiff traveled across state lines to Mary Mahoney's where he purchased what Defendants marketed and represented as snapper and red snapper. Had he known that the species of fish were instead inexpensive frozen Foreign Fish, he would not have purchased and ingested them." (ROA.144);

- "Between May 26, 2019, and August 16, 2019, and longer, Mary Mahoney's advertised on the website Yelp®, which was hosted outside of Mississippi, that 'all our seafood is caught in our bountiful gulf waters.'" (ROA.149-51).

- "During the relevant time period, Mary Mahoney's advertised on the websites OpenTable® and Tripadvisor®, which are hosted outside Mississippi, that is specialized in 'locally sourced seafood.'" (ROA.151).

- Mary Mahoney's menu "was also posted on the publicly-accessible website, www.marymahoney.com, which was hosted outside of Mississippi, where Defendants advertised the sale of high-priced premium local fish" which was allegedly substituted with foreign fish. (ROA.148-49).

Plaintiff never alleges that he actually accessed or read any of the alleged advertising by Mary Mahoney's and or relied on same in placing his order. *See* (ROA.141-71). **Plaintiff also does not allege that Mary Mahoney's exclusively sold "Foreign Fish" during the relevant time period**. (*Id.*). Plaintiff rather acknowledges, as he must, that "[s]ome of the products sold by the [RICO] Enterprise were legitimate, including other types of seafood and poultry that were not mislabeled and fraudulently sold to consumer." (ROA.163). Since Plaintiff

3

concedes legitimate Gulf Coast fish were sold by Mary Mahoney's, Plaintiff does not and cannot allege any specific proof that he in fact ate "Foreign Fish"—thus requiring pure speculation as to the plausibility of Plaintiff's alleged "injury."

Also absent from the Complaint is an allegation that Plaintiff suffered any physical harm from allegedly consuming "Foreign Fish." (ROA.141-71).[1] Plaintiff's alleged "injury" is instead purely economic and hypothetical at best. (ROA.158) (alleging class members "have suffered similar economic injury"); (ROA.166) (alleging "Plaintiff and the Class suffered actual money damages"); (ROA.167-68) (itemizing RICO injuries, which are limited to "payments made for the Foreign Fish" or "overpayment for the Foreign Fish"). Despite alleging a purely economic injury, Plaintiff fails to allege: (1) what he paid for the fish he consumed; or (2) what he should have been charged if Plaintiff actually was in fact served "Foreign Fish" as he alleges. (ROA.141-71).

**B.    Order of Dismissal**

On December 2, 2024, Defendants filed separate Motions to Dismiss. (ROA.303-367). In addition to lack of standing, Defendants separately sought dismissal because the applicable statute of limitations barred Plaintiff's claims due

---

[1] The Complaint merely alleges that consuming "Foreign Fish" is "potentially hazardous and toxic" and thus does not allege that Plaintiff or any other consumer ever suffered any physical harm. (ROA.141 and 155) (emphasis added).

to numerous public news articles from November 2019 detailing Defendants' conduct having put Plaintiff on notice of his claims. (ROA308-35).

Instead of seeking to amend, Plaintiff filed a response brief on January 31, 2025. (ROA.373-478). Therein, Plaintiff doubled down on his allegations, declaring: "[a]t the pleading stage, Mr. McCain has plausibly alleged a concrete economic injury-in-fact." (ROA.452). In February and March of 2025, certain Defendants filed additional Motions to Dismiss, again challenging the pleadings. (ROA.514-635, and 706-773). Instead of seeking to amend, Plaintiff filed responses, the latest of which was filed April 3, 2025. (ROA.636-705, 777-1100-34). Therein, Plaintiff again stood by his allegations, stating: "Todd McCain has plausibly alleged a concrete economic injury-in-fact at the pleadings stage." (ROA.785).

On June 10, 2025, Judge Guirola dismissed Plaintiff's claims for insufficiently pleading an injury-in-fact for Article III standing. (ROA.1251-63). In its Order, the Court correctly found Plaintiff's claim that he was "injured" for paying for alleged foreign fish he "would not have otherwise purchased" is not a concrete injury under Article III. (ROA.1258). The Court also addressed Plaintiff's "overpayment" damages theory, properly applying Fifth Circuit precedent to find the allegations insufficient to support such a theory. (*Id.*) ("McCain next claims he suffered the economic injury of overpayment. However, he does not allege that QPS and Mahoney's mislabeled all of the fish they sold or that Mahoney's mislabeled all

5

of the snapper it sold on a date that he purchased fish.  In fact, McCain concedes there is no way to determine whether he was actually served foreign fish or red snapper.").  The Court ultimately concluded that while it is "possible" Plaintiff was served mislabeled fish, his allegations did not present facts to plausibly infer Defendants' liability for the alleged conduct, holding:

> In the light most favorable to the Plaintiff, McCain has essentially alleged that it is *possible* that on one, or two, or three occasions, within a span of five years, he was unsuspectingly served a mislabeled seafood dinner, which he would not have otherwise purchased, and the consumption of which has heretofore caused him no harm. The claims in the Amended Complaint are based on possibilities, supported by assumptions and suppositions, but do not present facts from the Court may draw the reasonable inference that the defendants are liable for the misconduct alleged.

(ROA.1262-63).

## C.    Proposed Second Amended Complaint

In an attempt to plead around the Court's Order, on July 2, 2025 Plaintiff filed a Rule 59 Motion seeking to alter or amend the judgment and leave to file a Second Amended Complaint (the "SAC").  (ROA.1264-1498).

Despite having clearly monitored Defendants' criminal proceedings from their inception, Plaintiff's Rule 59 Motion was entirely based on purported "newly discovered" facts.  These consisted of the transcripts from the sentencing of Mr. Cvitanovich and Mr. Rosetti, and Mr. Cvitanovich's plea hearing. (ROA.1294-1375,

1380-1399).  Mr. Cvitanovich's publicly accessible plea hearing occurred on May 30, 2024 (transcript publicly available November 6, 2024), Cvitanovich's publicly accessible sentencing hearing occurred November 18, 2024 (transcript publicly available March 3, 2025), and Rosetti's publicly accessible sentencing hearing occurred December 11, 2024 (transcript publicly available March 12, 2025).  (*Id*.).  Thus, all the purported "new" facts upon which Plaintiff's proposed SAC is based were available to Plaintiff well before dismissal.[2]

The proposed SAC revises the allegations in three categories designed to address the Court's dismissal.  These are: (1) the SAC "clarifies" Plaintiff's damages theory by only seeking damages for overpayment; (2) the putative class period is narrowed to January 1, 2016 to November 18, 2019; and (3) alleging roughly 55,500 mislabeled snapper entrées were sold during this time, which consisted of "the overwhelming majority-if not all" fish entrées sold by Mary Mahoney's.  (*Id*.).  The SAC alleges Plaintiff received mislabeled snapper entrées on only two occasions, December 28, 2016 and August 21, 2018.  (ROA.1272).

**Plaintiff did not assert any "newly discovered" facts were necessary to "clarify" his damages theory**.  Indeed, Plaintiff's original damages theory included "overpayment" for foreign fish.  (ROA.1253 and 1258).  Of the "new" facts, Plaintiff

---

[2] Despite these "new" facts, Plaintiff's proposed SAC continues to allege that all his claims were not discovered until the May 30, 2024 DOJ press release.  (ROA.1271 and 1282).

only cited specific parts of Mr. Cvitanovich's transcripts as a basis for the SAC. (ROA.1491-92). These consisted of: (1) a statement by the District Judge during Mr. Cvitanovich's November 18, 2024 sentencing that he thinks the pre-sentence report claims roughly 55,500 mislabeled entrées were sold at Mary Mahoney's from 2016 to 2019; and (2) a statement from the prosecutor during Mr. Cvitanovich's May 30, 2024 plea hearing in which he claims evidence would show Mr. Cvitanovich was aware that in the beginning of 2015 "most" of the fish he ordered was foreign fish. (ROA.1307 and 1369). Notably, Plaintiff did not contend he exercised any diligence to uncover these "new" facts, but merely offered that "as a practical matter" the proposed SAC was the first opportunity to incorporate them. (ROA.1394).

## D.    Order Denying Leave to Amend

On November 17, 2025, Judge Guirola issued another well-reasoned Order denying Plaintiff's Rule 59 Motion. (ROA.1604-12). Though Judge Guirola agreed that Plaintiff had access to the purported "new facts" forming the basis of the proposed SAC well before dismissal, he denied the amendment on the basis that the SAC could not cure Plaintiff's pleading deficiencies for lack of Article III standing and was therefore futile. (ROA.1612).

Judge Guirola noted that although Plaintiff now alleged an approximate number of red snapper entrées sold, and claimed the "overwhelming majority" were foreign fish, he failed to include any additional facts to demonstrate he personally

8

suffered a concrete, particularized injury. (ROA.1606, 1609-10). Specifically, Judge Guirola held that Plaintiff's reliance on the "new facts" in Mr. Cvitanovich's sentencing transcript attached to the SAC did not support his assertions, stating:

> The Court finds Cvitanovich's objection does not lead to a plausible inference that Mahoney's always or almost always substituted frozen, foreign fish for its snapper entrees. **In fact, the sentencing transcript contains no reference to snapper**.

(ROA.1611) (emphasis added). The District Court also noted that Plaintiff's SAC now contended that he allegedly consumed foreign fish on only two occasions (rather than three). (ROA.1610). Further, in the prior Complaint, Plaintiff alleged purchasing "snapper and red snapper" but in the SAC Plaintiff merely claims having "twice ordered a Snapper Entree"—leaving the Court to speculate as to which type of "snapper" Plaintiff allegedly purchased. (ROA.1612). Compounding this problem was that the exhibits attached to the SAC "indicate that snapper may not have been the only local fish substituted with foreign fish." (ROA.1611).

Judge Guirola thus denied Plaintiff's Motion because the proposed allegations still did not plausibly allege standing and were thus futile, holding:

> The facts in McCain's proposed amended complaint do not lead to a plausible inference that McCain purchased and consumed mislabeled fish. He was apparently satisfied with the fish because he consumed it and paid the price set by Mahoney's on at least two occasions. And he concedes that he had no idea that he may have been served something other than snapper until criminal arrests were announced. **McCain has not provided the name of the**

9

**snapper entrees he ate, and there are no facts from which the Court could infer the number of times Mahoney's sold the entrée(s) McCain purchased during the class period or the number of times that entrée may have been mislabeled.** McCain does not have Article III standing because he has not alleged that he suffered an actual and particularized injury. **He has merely alleged a possibility that he may have been overcharged for the entrees he consumed**.

(ROA.1611-12) (emphasis added). On November 17, 2025, Final Judgment was entered dismissing Plaintiff's lawsuit without prejudice for lack of standing. (ROA.1613). Plaintiff then filed this appeal. (ROA.1614).

## SUMMARY OF ARGUMENT

Plaintiff's lawsuit is a manufactured attempt to profit from criminal proceedings for which Defendants have already paid substantial restitution. Indeed, the Amended Complaint (and SAC) largely copy the criminal indictments attached thereto, with only minimal allegations related to the named Plaintiff.

But Plaintiff acknowledges, as he must, that there is no way to actually know whether he was served "Foreign Fish" or authentic Gulf Coast snapper at Mary Mahoney's. Of course, had this litigation proceeded, Plaintiff would bear the burden to prove that he in fact consumed "Foreign Fish"—an insurmountable hurdle because Plaintiff does not have the ability to forensically test the fish he alleges having consumed a decade ago. This case thus has no place on an already over-crowded federal docket and early dismissal was appropriate.

10

As Senior District Court Judge (and former Chief Judge) Guirola correctly found, Plaintiff lacks Article III standing because Plaintiff cannot plausibly allege a concrete injury in fact. Plaintiff alleges no physical harm and only purely economic "injury," which is insufficient for standing absent allegations that plausibly infer that Plaintiff himself actually purchased "Foreign Fish." But as Judge Guirola correctly held, and even in a light most favorable to Plaintiff, the allegations are merely that it is *possible* that Plaintiff was unsuspectingly served "Foreign Fish"—and possibilities and assumptions do not establish Article III standing.

Judge Guirola's well-reasoned dismissal is based on sound precedent from this Court and multiple other federal circuit courts, including the Second, Seventh and Eighth Circuits. These cases emphasize that in the consumer goods context, standing cannot be based on an alleged overpayment theory when the plaintiff's allegations amount to just that—a theory or *possibility* of overpayment. The same analysis applies here. Since Plaintiff's Complaint specifically acknowledges that authentic Gulf Coast fish was simultaneously served at Mary Mahoney's during the relevant time, Plaintiff does not and cannot allege anything more than the possibility that he was served "Foreign Fish" and therefore lacks Article III standing.

Since Plaintiff cannot plead sufficient facts for standing, Judge Guirola also did not abuse his discretion in denying Plaintiff leave to amend to file a Second Amended Complaint because it would be futile. As Judge Guirola correctly found,

11

Plaintiff's proposed new allegations contain the same deficiencies and do not plausibly allege a concreate injury in fact. This Court may also affirm denial of leave to amend on alternative procedural grounds, including: (1) the purported "new facts" for the amendment were not "newly discovered" as required by Rule 59 but rather publicly available well before dismissal; and (2) Plaintiff did not "clearly establish" he could not have sought amendment prior to dismissal.

## STANDARD OF REVIEW

### A.    Lack of Subject Matter Jurisdiction and Article III Standing

"Standing is a question of law that we review de novo." *Denning v. Bond Pharmacy, Inc*., 50 F.4th 445, 449–50 (5th Cir. 2022) (citing *Rivera v. Wyeth-Ayerst Lab'ys*, 283 F.3d 315, 319 (5th Cir. 2002). "We review for clear error all facts expressly or impliedly found by the district court." *Id*. Plaintiff bears the burden to establish standing, and thus "each element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Id*. (quoting *In re Deepwater Horizon*, 739 F.3d 790, 799 (5th Cir. 2014).

When, as here, the jurisdictional challenge is a facial attack on the pleadings, the facial plausibility standards applicable in the Rule 12(b)(6) context apply. *See Earl v. Boeing Co.*, 53 F.4th 897, 903 (5th Cir. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive dismissal, Plaintiff must allege "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v.*

12

*Iqbal*, 556 U.S. 662, 678, 129 (2009). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

To establish standing, Plaintiff must plausibly allege an "injury in fact" which is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Food & Drug Admin v. All for Hippocratic Med.*, 602 U.S. 367, 368 (2024). In other words, concrete injuries are "real, not abstract." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Thus, even Defendants' violation of federal law does not necessarily give rise to an injury in fact because Plaintiff himself must have been "concretely harmed" in order to have standing. *Id.* at 426-27. As this Court has emphasized: "**That means a claimed injury must be real—it must actually exist. And it must not be too speculative for Article III purposes**." *Earl*, 53 F.4th at 902 (internal quotations omitted) (emphasis added).

## B.    Denial of Motion to Amend under Rule 59

A Rule 59(e) motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence," and "cannot be used to raise arguments which could, and should, have been made before the judgment." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003). When, as here, the Complaint was dismissed without prejudice and Plaintiff sought to amend through Rule 59(e), the considerations of Rule 15(a) are also invoked. *Id.* at 864.

13

"Denial of a motion to amend is reviewed for abuse of discretion." *Shaw v. Restoration Hardware, Inc.*, 93 F.4th 284, 288 (5th Cir. 2024). Though leave to amend is to be freely given, "that generous standard is tempered by the necessary power of a district court to manage a case." *Winzer v. Kaufman Cty.*, 916 F.3d 464, 471 (5th Cir. 2019). "Permissible reasons for denying a motion for leave to amend include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [and] futility of amendment, etc." *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016). Courts assess futility "under the same standards as dismissal under Rule 12(b)(6)." *Clark v. Dep't of Public Safety and Corrections*, 141 F.4th 653, 661 (5th Cir. 2025).

Moreover, "[a] litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003). And, where the prior "complaint alleges the plaintiff's best case," further amendment should be denied. *See Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

## **ARGUMENT**

In two thorough, well-reasoned opinions, Judge Guirola properly dismissed Plaintiff's Complaint and denied Plaintiff's post-judgment motion for leave to amend. In so doing, Judge Guirola properly applied the applicable legal standard set

14

forth by this Court to find that Plaintiff's alleged injury is not plausible on its face. This Court should affirm Judge Guirola's ruling in its entirety.

**A.    The District Court Correctly Dismissed Plaintiff's Claims Because He Failed to Plausibly Allege an Actual and Particularized Injury-in-Fact.**

1.    <u>The District Court Applied the Correct Legal Standard for Standing.</u>

The Article III standing doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for an actual (or imminent) injury that is concrete and particularized and suffered by (or impending to) the plaintiff filing suit.  "[A]t the pleading stage, the plaintiff must clearly … allege facts demonstrating each element [of standing]." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).  The familiar "irreducible constitutional minimum of standing consist of three elements."  *See Spokeo, Inc.*, 578 U.S. at 338 (citing *Lujan*, 504 U.S. at 560).  All plaintiffs seeking relief in federal court must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*  (citing *Lujan*, 504 U.S. at 560).

To establish injury in fact, a plaintiff must show that he suffered "an invasion of a legally protected interest" that is "concrete *and* particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* (emphasis added; citation omitted); *see also Lujan*, 504 U.S. at 560 ("To have standing, a litigant must seek relief for an

injury that affects him in a 'personal and individual way'"). To put it directly, the allegations contained in the complaint "must be able to sufficiently answer the question: 'What's it to you?'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). That question must be answered with more than a bald monetary demand. *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315, 319 (5th Cir. 2002) ("Merely asking for money does not establish an injury in fact.").

These fundamental standing principles have been regularly applied in the consumer context by this Court. In *Rivera*, this Court rejected a claim brought by a plaintiff on behalf of a putative class seeking a return of money after purchasing a painkiller that was later recalled due to adverse health consequences, since plaintiff himself suffered no such adverse health consequences. 283 F.3d at 319-21. The Court considered the nature of plaintiff's theory of injury and found no injury in fact. *Id.* A similar analysis was conducted in *Earl v. Boeing Company*, 53 F.4th 897 (5th Cir. 2022). There, the Court carefully analyzed the factual allegations underlying plaintiffs' "overcharge-by-fraud" theory of injury and found that it "rests on two unsupportable inferences." *Id.* at 903 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) for the Court's facial plausibility analysis requiring a "reasonable inference" between the factual allegations and defendant's liability). In other words, the Court, although accepting plaintiffs' factual allegations as true, drew "on its experience and

16

common sense" when determining whether the allegations amounted to a plausibly alleged injury in fact. *Iqbal*, 556 U.S. at 663-64.

Likewise, the District Court below properly applied binding Circuit and Supreme Court precedent in its analysis of Plaintiff's complaint, precedent which required the District Court to "prevent[] the federal courts from becoming a vehicle for the vindication of the value interests of concerned bystanders." *FDA v. All. For Hippocratic Med.*, 602 U.S. 367, 382 (2024) (citations and quotations omitted).

Plaintiff argues that the District Court's analysis was overly "rigorous" and failed to draw all inferences in his favor. But the examples presented show the District Court followed this Court's precedent when it analyzed the Complaint's allegations against Article III's requirements and, in any case, did not commit clear error in its analysis. *Rivera*, 283 F.3d at 319 ("We review for clear error all facts expressly or impliedly found by the district court."); *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) ("In considering a challenge to subject matter jurisdiction, the district court is free to weigh the evidence and resolve factual disputes . . . We review the district court's jurisdictional findings of fact for clear error.") (quotations and citations omitted).

Plaintiff's theory of injury has a factual starting line: that he was served and ate a mislabeled red snapper dinner. But, critically, the Complaint did not (and could not) allege that he certainly ate mislabeled fish, nor does it allege Mary Mahoney's

17

exclusively sold mislabeled fish.  Accordingly, the applicable legal standard required the District Court to analyze the facts alleged and determine whether reasonable inferences from those facts allowed the Plaintiff off the factual starting line.  *Iqbal*, 556 U.S. at 663-64; *Earl*, 53 F.4th at 903.  The District Court's analysis noted inconsistences in the alleged time frame in which Mary Mahoney's purchased a particular amount of foreign fish, the lack of any dates when red snapper was substituted with foreign fish, and that none of the dates where Mary Mahoney's purchased foreign fish were close in time to the dates where Plaintiff allegedly dined at the restaurant.  (ROA.1261-62).  Collectively, these issues led the District Court, based on "its experience and common sense" to determine that there was no reasonable inference to be drawn that Plaintiff did more than allege a mere possibility that he was served foreign fish.  *Iqbal*, 556 U.S. at 663-64.

Plaintiff's complaints against the District Court's reasoning essentially amount to a demand that *all* inferences—and not just reasonable ones—be drawn in his favor.  This position is not only unsupported by the fundamental "*Twiqbal*" standard, but leads to absurd results here.  For example, Plaintiff takes particular exception to the District Court's determination that Plaintiff's meals did not occur "close in time" to purchases of foreign fish, claiming they occurred "within less than a month" of each other.  (App. Br. at 11, 32, 37).  But that timeline considers only the time between Plaintiff's meals and *later* dates Mary Mahoney's allegedly

18

purchased foreign fish.    The District Court took the reasonable position of considering Mary Mahoney's purchase dates *before* Plaintiff's three alleged meals, and correctly noted there was (1) no prior purchase date, (2) a nearly two-year gap, and (3) a four-month gap.[3]  The District Court therefore properly determined that Mary Mahoney's purchases, as alleged, did not occur close in time to Plaintiff's meals and, coupled  with other inconsistencies and factual gaps in the allegations of the Complaint, did not present a plausible injury in fact.

The District Court's refusal to make unreasonable (and unsupported) inferences in Plaintiff's favor was in conformance with applicable legal standards, reasoned, correct, and certainly not an abuse of discretion.

2.    Plaintiff Did Not Plausibly Allege an Injury in Fact.

In federal court, plaintiffs must allege facts that demonstrate a plausibly concrete and particularized injury. In the consumer context, courts routinely reject assertions of standing grounded on an overpayment or benefit of the bargain theory of harm when the plaintiff's theory of injury remains just that—a theory.

---

[3] The Complaint alleged Defendants purchased or sold mislabeled fish on the following dates: January 26, 2015, July 5, 2017, January 19, 2018, April 16, 2018, September 19, 2018, September 27, 2018, October 18, 2018, February 21, 2019, and May 26, 2019. (ROA.1261).  Plaintiff alleges he ate seafood at Mary Mahoney's on July 29, 2013 (before any alleged purchase date), December 28, 2016 (with January 26, 2015 being the closest preceding date), and August 21, 2018 (with April 16, 2018 being the closest preceding date).  (*Id*.).

19

Consider, for example, *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014). There, ConAgra promoted its "100% kosher" requirements as a reason to purchase its Hebrew National products at a premium over similar, but non-kosher competitor products. *Id.* at 1028 (noting that "[e]ach Hebrew National package says the contents are 'Made With Premium Cuts of 100% Kosher Beef' [and] ConAgra says Hebrew National 'answer[s] to a higher authority' and sells only products that 'meet a higher standard.'"). Consumers like Melvin Wallace sued ConAgra, claiming some Hebrew National beef products were not, as the label reads, "100% kosher." *Id.* Wallace sought to represent a class consisting of all Hebrew National buyers in the United States over a multi-year period, alleging that they paid a premium price for a deceptively marketed product that failed to meet the manufacturer's guarantee. *Id.*

Though the consumers alleged a theoretical economic harm, they could not satisfy the particularized injury in fact requirement for standing. *Id.* at 1029-30. Like here, the consumers admitted that "it is impossible to determine whether purportedly kosher meat is non-kosher" and the consumers' own allegations failed to establish "that all or even most Hebrew National products were not kosher, which means the particular packages of processed beef they purchased may have been . . . prepared in accordance with minimum kosher standards." *Id.* at 1030.

Accordingly, the Eighth Circuit determined the consumers lacked traditional Article III standing. Though "the consumers pin[ned] their Article III hopes on the allegation that they 'paid a premium price for the Hebrew National products purchased believing them to be 100% strictly kosher, when they weren't[,]'" given the consumers' own allegations failed to indicate any particular packages they purchased contained non-kosher beef, the Eighth Circuit held the plaintiffs' standing theory failed the particularity requirement, determining that "**it is pure speculation to say the particular packages sold to the consumers were tainted by non-kosher beef, while it is quite plausible ConAgra sold the consumers exactly what was promised: a higher quality, kosher meat product**." *Id.* at 1030-31 (emphasis added). "Not only have the consumers failed to provide any basis to think the particular packages they purchased were tainted," the court observed, "they affirmatively allege they could not possibly tell if the packages were not kosher. Because the consumers suffered no particularized[ ] and actual injury … we are bound to conclude the consumers lack traditional Article III standing[.]" *Id.* at 1033.

For plaintiffs proceeding on a benefit of the bargain or overpayment theory of economic harm, they must sufficiently and plausibly allege an actual *de facto* economic injury; they cannot base their standing theory on their mere subjective belief in a product's quality or the mere suggestion that some, but less than all, products were defective in some way. *See id.*; *see also Earl v. Boeing Company*, 53

21

F.4th 897 (5th Cir. 2022) (dismissing claim on behalf of all American Airlines and Southwest Airlines ticket purchasers while defective Boeing MAX 8 planes were in use where passengers arrived safely and defective planes made up only a portion of the airlines' fleets); *In re Recalled Abbott Infant Formula Products Liab. Litig.*, 97 F.4th 525, 531 (7th Cir. 2024) ("plaintiffs here cannot and do not maintain that the infant formula they purchased was contaminated [and thus] Plaintiffs have no economic injury because the products they purchased were not rendered valueless; they received the infant formula for which they bargained.");[4] *cf. Kell v. Lily's Sweets, LLC*, No. 23-147, 2024 WL 1116651 (S.D. N.Y. Mar. 13, 2024) (granting motion to dismiss lawsuit for lack of standing for failure to plead injury in fact: "the allegation that [plaintiff] purchased chocolate contaminated with lead is supported

---

[4] The Seventh Circuit provided this hypothetical to explicate why plaintiffs' theory of injury did not confer standing:

> **Consider a popular restaurant at which a diner gets food poisoning**. An investigation reveals the restaurant did not meet the sanitation code, so its food was at risk of contamination. The sick diner had a real, particularized injury. **But any patron who has ever eaten at the restaurant does not have a real, particularized injury**. The risk that other patrons' food could have been contaminated because it was prepared and served at a restaurant that did not meet the sanitation code does not mean that the other patrons' food was ever contaminated. **Any injury to those other patrons is hypothetical or conjectural, and they have no particular or individual harm**. So, the other patrons would **not have standing** to sue the restaurant under a risk-of-harm theory of injury, unlike the diner with food poisoning who suffered an actual harm.

*Id.* at 532 (emphasis added). Notably, the Seventh Circuit cited with approval the Fifth Circuit's decision in *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 316 (5th Cir. 2002).

only by the anecdotal findings of *Consumer Reports* based on a limited sample of allegedly contaminated products.").

The lesson from these holdings from this Court and sister circuits is that when plaintiffs proffer generalized grievances regarding consumer goods or products, but concede they suffered no physical harm, courts scrutinize the proffered theory of economic harm in order to determine whether such a theory is indeed plausible. Here, Plaintiff alleges no harm, merely claiming that he ordered snapper from Mary Mahoney's when it is possible that—and *still* unbeknownst to him—he *may have been* served some other type of fish that resembled or could pass as a convincing substitute for snapper but that was not snapper, was not on the menu, and thus was mislabeled. He has not and cannot allege an actual, particularized injury.

Much like the putative *Wallace* class, Plaintiff "pin[s] his Article III hopes on the allegation that he paid a premium" for snapper, believing it to be snapper, but it's *possible* that he may have been served mislabeled fish that was not snapper. But, just like in *Wallace*, where it was possible that the plaintiffs had paid for kosher beef products, it is equally possible that Plaintiff paid for and was indeed served Gulf Coast snapper. It would be "pure speculation" and conjecture to say the particular pieces of fish Plaintiff consumed on three occasions during the past 11 years (which Plaintiff believed was snapper), in fact, was not snapper or was not some other fish listed on Mary Mahoney's menu/described by the server/otherwise found in the Gulf

23

of Mexico.  Even construing the pleaded facts in his favor—including allegations that Mary Mahoney's sold correctly labeled fish as well—there is no way to know.  And, it follows, there is no actual and particularized injury in fact.

As the above summarized cases make clear, the Court assesses the plausibility of what is alleged, what is not alleged, and indeed what could not be alleged in assessing overpayment by fraud standing theories.  Critically, Plaintiff concedes and specifically alleges that "[s]ome of the products sold by [Mary Mahoney's and QPS] were legitimate, including other types of seafood and poultry that were not mislabeled and fraudulent sold to consumers[.]" (ROA.163) (emphasis added).  Plaintiff does not (and cannot) allege that that Mary Mahoney's exclusively sold "Foreign Fish."  Similarly, Plaintiff does not and cannot allege that Mary Mahoney's neither sold nor served any snapper (or any other fish on its menu at the relevant time), much less that Mary Mahoney's had no Gulf sourced fish on its menu on the three occasions over the past 10 years which Plaintiff dined with Mary Mahoney's.  Absent allegations of exclusivity—or absent allegations that Plaintiff genetically tested the fish he was served and ate on those occasions and/or that Mary Mahoney's universally served *only* mislabeled fish and never any snapper—Plaintiff has not and cannot plausibly allege (and certainly will not be able to prove) that the fish he ate was not, in fact, snapper or some other fish listed on Mary Mahoney's menu at the relevant time.  Therefore, in light of Plaintiff's allegations regarding legitimate and

24

correctly labeled fish being sold, Plaintiff's hindsight speculation as to what he consumed is insufficient to confer standing.

Plaintiff pushes back on this analysis by citing *Wilson v. Centene Management Co., LLC*, 168 F.4th 217 (2026).  But in addition to being procedurally distinguishable,[5] the named plaintiff's allegations in *Wilson* highlight where Plaintiff's allegations fail here.  In *Wilson*, plaintiffs sought a return of premiums paid for a health insurance policy "which requires policyholders to use in-network healthcare providers" and which they alleged published a list of available providers with "thousands" of names of providers who would not, in fact, accept the policy. *Id*. at 221.  Plaintiff Cynthia Wilson purchased the policy "after reviewing the directory of in-network providers."  *Id*. at 222.  When she developed shingles, she contacted nine of the listed "in-network" physicians, none of whom accepted the policy.  Unable to locate a suitable in-network physician, she "was never able to use her Ambetter policy to see a healthcare provider."  *Id*.  Unlike Plaintiff here, who alleged the mere possibility of not receiving what was paid for, Wilson alleged—in a concrete and particularized way—that she was sold one product and received another, lesser product.  Indeed, the plaintiff in *Wilson* had a contract for insurance

---

[5] In *Wilson*, the Fifth Circuit reversed a district court's dismissal based on a <u>merits-based evaluation of plaintiffs' expert report</u> at the class certification stage.  *Id*. at 228-29 (holding a "merits-based evaluation of an expert report to determine standing at the class-certification stage is improper . . .").  No such "battle of the experts" determination was made by the District Court below in its Rule 12(b)(1) analysis.

with the defendant for the bargained-for product. Thus, Plaintiff's Complaint in this case mirrors the deficiencies in *Wallace*, not the concreteness of *Wilson*.

Like many plaintiffs in cases dismissed for lack of Article III standing, Plaintiff has buyer's remorse about a consumable product—that he consumed to his ostensible benefit (or at least not to his detriment, as he alleges that no physical or emotional harm befell him). Subjective allegations that, in hindsight, the product *may not have been satisfactory to him* are simply academic and fall short of alleging a plausible actual concrete injury. Furthermore, ordering fish from a restaurant that indisputably sold both foreign and Gulf-caught fish during a particular time period might render it *possible* that he consumed foreign fish, but stops short of the level of plausibility required by Article III. Plaintiff's standing theory therefore fails to plausibly allege any economic injury particular to him. The Court should affirm the District Court's dismissal for lack of Article III standing.

**B.    The District Court Did Not Abuse its Discretion in Affirming Dismissal and Denying Leave to Amend.**

1.    Plaintiff's Proposed Amendment was Futile.

Plaintiff's proposed SAC failed to introduce any new allegations, or modify existing allegations necessary to cure, or even address, the deficiencies of his First

Amended Complaint. As a result, the District Court properly found the amendment to be futile. (ROA.1611-12).[6]

In his First Amended Complaint, Plaintiff alleged that Defendants sold 58,750 pounds of foreign fish as snapper. Relying on that same figure, Plaintiff argued in opposition to the Motions to Dismiss that the First Amended Complaint plausibly alleged an injury in fact. In particular, Plaintiff asserted that this total equated to approximately 55,000 fraudulent meals (assuming 17-ounce portions), and that such a "staggering" number made it reasonable to infer that the alleged scheme was sufficiently widespread to have affected at least one of his own purchases. (ROA.458, 649, 684, 792). Judge Guirola correctly found Plaintiff's allegations internally inconsistent as to the volume of foreign fish purportedly sold and, critically, devoid of facts showing when any substitution occurred or whether Plaintiff himself was ever served foreign fish. (ROA.1262).

Those same defects persist in Plaintiff's proposed SAC. Indeed, the SAC alleges Plaintiff visited Mary Mahoney's *even less frequently* (only twice) during the revised class period. (ROA.1272). Yet Plaintiff places undue emphasis on the

---

[6] Plaintiff's Brief cites no legal authority for why denial of leave to amend was in error, much less provide any meaningful analysis of this issue. "The failure to raise an argument in an opening brief generally waives the argument on appeal." *Matadi v. Garland*, 2022 WL 17712954, at *2 (5th Cir. Dec. 14, 2022). "To be adequate, a brief must address the district court's analysis and explain how it erred." *Id*. "Arguments without citation or authority are considered abandoned on appeal." *L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994) (district court did not abuse its discretion in denying leave to amend futile complaint). Plaintiff has thus waived this issue on appeal.

purported total of 55,500 snapper entrées sold during that time, without providing any context as to what that number actually signifies. (ROA.1270). As the proposed SAC acknowledges in footnote 3, and as reflected in the sentencing transcript Plaintiff relies upon, that figure is merely a "rough" estimate accepted by the sentencing court for purposes of assessing Mr. Cvitanovich's sentencing, not a precise or reliable measure of actual sales. (*Id.*).   The SAC's alleged "55,500 misbranded snapper entrées" is thus simply a repackaging of the same rough total previously plead as "58,750 pounds of fish." (ROA. 12, 1270). Such semantic repackaging does not give rise to an injury in fact.

Furthermore, Plaintiff's SAC continues to focus almost entirely on the Defendants' criminal proceedings, again without linking Plaintiff *personally* to any alleged wrongful conduct.   Plaintiff argues the SAC satisfies the particularity requirement by focusing on a narrower "class period" that includes Plaintiff's fish purchases using "newly available" transcripts from the criminal proceedings to substantiate how many snapper entrées were sold during the class period (allegedly 55,500).  (App.'s Br., pp. 38-39).  Plaintiff relies on those materials to allege that the "overwhelming majority, if not all," of the snapper entrées sold during the class period incorporated foreign fish rather than authentic snapper.  (*Id.*).

But these allegations do not allow the Court to plausibly infer what percentage of fish served at Mary Mahoney's was mislabeled or when any such mislabeling

occurred. Instead, both his original Complaint and proposed SAC rely on "rough" aggregate totals: either the total amount of foreign fish allegedly sold, or the total number of snapper entrées purportedly served over a nearly four-year period. From those figures alone, Plaintiff then leaps to the conclusory assertion that "the overwhelming majority—if not all" of the entrées were foreign fish. (App.'s Br., pp. 3, 21, 24, 28, 38). But a raw total, standing in isolation, says nothing about proportion and cannot support that inference. Instead, it invites only speculation.

That speculation is further compounded by Plaintiff's own conclusory allegations. As Plaintiff acknowledges in footnote 4 of the SAC, QPS was not Mary Mahoney's exclusive seafood supplier, and at least some of the fish it provided was, in fact, the local species listed on the menu. (ROA.1270). These admissions confirm that Mary Mahoney's served a mix of Gulf-caught and imported fish, meaning the universe of allegedly mislabeled entrées is necessarily something less than the total number sold. Plaintiff's proposed amendment offers no facts to bridge that gap. Rather, at most, the allegations of the SAC (again) render it *possible* that one of the approximately 55,500 allegedly mislabeled entrées sold between January 2016 and November 2019 was served to Plaintiff during one of his two visits, on December 28, 2016 or August 21, 2018. Such required conjecture again falls well short of establishing a concrete and particularized injury in fact.

29

McCain is required to allege sufficient facts to allow the plausible inference that the fish that *he* purchased was, in fact, mislabeled. Judge Guirola correctly found the SAC fails this threshold. (ROA.1611). Specifically, Judge Guirola properly found that Plaintiff failed to allege the name of the snapper entrées he ate or even the number of times the entrées were mislabeled by Mary Mahoney's. (ROA.1612). As a result, Judge Guirola was correct to hold that Plaintiff's SAC again "merely alleged a possibility that he may have been overcharged for the entrees he consumed," rendering the proposed amendment futile. (*Id*.). Thus, Judge Guirola properly affirmed dismissal and denied leave to amend because Plaintiff's proposed SAC merely repackages the same aggregate estimates without alleging any facts showing a concrete, particularized injury in fact.

2.    The Proposed Amendment was also Procedurally Deficient.

Denial of leave to amend was appropriate even if Plaintiff's proposed SAC adequately alleged Article III standing (it does not). This Court may affirm the District Court's decision on alternative grounds. *See Sojourner T v. Edwards*, 974 F.2d 27, 30 (5th Cir.1992). Here, these alternative grounds are: (1) the purported "new facts" for amendment were not "newly discovered" as required by Rule 59 but rather publicly available well before dismissal; and (2) Plaintiff did not "clearly establish" he could not have sought amendment prior to dismissal.

30

Plaintiff's Rule 59(e) motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence," and said motion "cannot be used to raise arguments which could, and should, have been made before the judgment." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003). "A motion to reconsider should not be granted unless the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence." *Rose v. Grappler Pressure Pumping, L.L.C.*, 2025 WL 416996, at *3 (5th Cir. Feb. 6, 2025) (quoting *Infusion Resources v. Minimed*, 351 F.3d 688, 696-97 (5th Cir. 2003)).

Plaintiff's Rule 59(e) Motion fails this threshold. Plaintiff sought amendment solely on "newly discovered" facts. (ROA.1487-98). But these facts were neither "new" or "newly discovered," rather consisting of publicly available information, which any reasonable investigation would have revealed months prior to dismissal.

In its Order denying leave to amend, the District Court noted "McCain had access to the information he used to prepare his proposed amendment before the parties finished briefing Defendants' Motions to Dismiss." (ROA.1608). In particular, Plaintiff relied on Mr. Cvitanovich's plea hearing and sentencing transcripts in the criminal proceedings. This information was available to Plaintiff nearly seven (7) months before he sought leave to amend. (*Id.*). Indeed, Plaintiff was clearly monitoring Defendants' criminal docket, as evidenced by the attachments to the original complaint, filed August 2, 2024, which included Mr. Cvitanovich's bill of information, plea agreement,

31

and the May 30, 2024 DOJ article. (ROA.17-81). Plaintiff could have obtained the transcript from Mr. Cvitanovich's plea hearing when it became available on November 6, 2024 and used the information therein to seek leave to amend before any party filed a Motion to Dismiss (the earliest of which was on December 2, 2024).

As a member of the public, Plaintiff also had an opportunity to attend Mr. Cvitanovich's sentencing on November 18, 2024. *See In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 175 (5th Cir. 2011) ("The first question in this case is whether the press and public, including the Chronicle, have a First Amendment right of access to a sentencing proceeding. We conclude that they do.").[7]

Recent Fifth Circuit precedent warrants denial of leave to amend in this scenario. In *Rose v. Grappler Pressure Pumping, L.L.C.*, 2025 WL 416996 (5th Cir. Feb. 6, 2025), plaintiffs filed a class action in a bankruptcy adversary proceeding. *Id*. at *1. After the bankruptcy court dismissed the case, plaintiffs re-filed in district court, which also dismissed the case under Rule 12(b)(6). *Id*. The plaintiff then filed a Rule 59(e) motion, seeking to amend based on "new" evidence obtained in the bankruptcy filings. *Id*. In affirming denial of leave to amend, this Court explained that public court filings are not "new" evidence, holding:

---

[7] Even excusing Plaintiff from attending sentencing, Plaintiff had access to Mr. Cvitanovich's sentencing transcript when it was publicly available on March 3, 2025. This was during the second round of Motions to Dismiss filed by QPS and Mary Mahoney's, to which Plaintiff's latest Response brief was filed on April 3, 2025. (ROA.1294-1375).

> Plaintiffs argue that the district court erred by declining to reconsider its dismissal order based on 'newly acquired evidence' . . . But the district court's reconsideration order clearly explained none of this evidence is new. **Plaintiffs could have found and brought the 'publicly available' information and the trustee's fraudulent transfer filing to the district court's attention long before it issued the order dismissing Plaintiffs' case**. The district court therefore did not abuse its discretion in denying the motion for reconsideration based on this evidence.

*Id*. at \*3 (emphasis added) (citing *Infusion Resources*, 351 F.3d at 696-97)).

The same analysis applies here. Plaintiff could have brought the publicly available transcripts to the District Court's attention long before dismissal. Plaintiff does not (and cannot) argue having exercised any diligence to obtain them before, further warranting denial of leave to amend.[8]

Plaintiff also failed to clearly show that these "new" facts could not have been presented to the District Court earlier. "While Fed. R. Civ. P. 15(a) endows a district court with 'virtually unlimited discretion' to allow amendments before entry of judgment, that discretion narrows considerably after entry of judgment." *Vielma v. Eureka Co*., 218 F.3d 458, 468 (5th Cir. 2000) (citing Wright & Miller, Fed. Prac. & Proc. § 1489 (2nd ed. 1990 & Supp. 1999)). As a result, "[i]n cases where a party seeks to amend her complaint after entry of judgment, we have consistently upheld

---

[8] While Rule 15(a) does not contain an express time limit to amend, "at some point, time delay on the part of a plaintiff can be procedurally fatal. In these cases, a plaintiff must show that the delay is due to oversight, inadvertence, or excusable neglect." *D.L. Markham DDS, MSD, Inc. 401(K) Plan v. Variable Annuity Life Ins. Co*., 88 F.4th 602, 613 (5th Cir. 2023) (affirming denial of leave to amend).

the denial of leave to amend where the party seeking to amend has not clearly established that he could not reasonably have raised the new matter prior to the trial court's merits ruling." *Heimlich v. Harris Cty., Tex.*, 81 Fed. Appx. 816 (5th Cir. 2003). In other words, "[a] litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend." *Rosenzweig,* 332 F.3d at 864.

In *Rosenzweig*, a securities fraud class action was dismissed. 332 F.3d at 859. Just as Plaintiff did here, the plaintiffs filed a Rule 59(e) motion seeking to amend based on "new facts." *Id*. at 864. In affirming denial, this Court emphasized the plaintiffs "have not raised facts which were not available previous to the district court's opinion." *Id*. at 865. Numerous Fifth Circuit cases follow this precedent.[9]

The same analysis applies again here. At the earliest, Plaintiff had access to Mr. Cvitanovich's plea hearing and transcript on the date of the sentencing hearing, November 18, 2024. At the absolute latest, he had access to all purported "new" evidence on March 12, 2025 (the date Mr. Rosetti's sentencing transcript became

---

[9] *See e.g., Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 575 (5th Cir. 2021) (affirming denial of post-dismissal amendment because "plaintiffs do not explain why any of the facts in the third amended complaint were not otherwise 'available previous to the district court's opinion.'") (quoting *Rosenweig*, 332 F.3d at 865)); *Hebert v. Dizney*, 295 F. App'x 717, 725 (5th Cir. 2008) ("[A]s was the case in *Rosenzweig*, Relators here failed to seek leave to amend prior to dismissal and do not argue that their proposed amendment 'raised any facts which were not available previous to the district court's opinion.'" (quoting *Rosenzweig*, 332 F.3d at 865)); *Vetcher v. Immigr. & Customs Enf't*, 844 F. App'x 691, 694 (5th Cir. 2021) ("Because Vetcher's motion to amend contained facts and arguments that he reasonably could have raised before dismissal, he has not shown that the district court abused its discretion in denying that motion.").

publicly available). This was well before the date Plaintiff filed his last response brief on April 3, 2025. (ROA.13-14). This was also three (3) months prior to the District Court's June 10, 2025 Order. (ROA.14). Denial of leave to amend was, therefore, entirely appropriate on the alternative ground that the amendment could have easily been sought by Plaintiff prior to dismissal. *See e.g., Vielma*, 218 F.3d at 468; *Heimlich, Tex.*, 81 Fed. Appx. 816.

This conclusion is only supported by the fact that Plaintiff repeatedly doubled down on the sufficiency of his pleadings during the pendency of Defendants' multiple Motions to Dismiss. "When parties delay seeking leave to amend for several months after a motion to dismiss is filed, we have held that district courts do not abuse their discretion in denying the request for leave." *Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190, 202 (5th Cir. 2021); *see also Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162 (5th Cir. 1997) (holding plaintiff's post-dismissal motion to amend "rings hollow" in light of plaintiff's "failure to furnish the district court with a proposed amendment during the two months following the filing of the motion to dismiss and the order granting

that motion."). Indeed, a plaintiff who stands by the sufficiency of his allegations for months instead of seeking to amend does so at his peril.[10]

This principle applies in this case, where despite eight separate Motions to Dismiss being filed, Plaintiff made the strategic decision to stand by his allegations. (ROA.458) (arguing "Mr. McCain plausibly alleges an actual and particularized injury."). Indeed, the first Motion to Dismiss was filed on December 2, 2024, and thus Plaintiff had over six months to request amendment before dismissal. (ROA.8-14). This timeframe is more than sufficient to deny amendment. *See Spiller*, 130 F.3d at 167 (two months between motion and dismissal); *Degruy v. Wade*, 586 F. App'x 652 (5th Cir. 2014) (seven months between motion and dismissal; citing *Whitaker*, 963 F.2d at 837). Therefore, denial of leave to amend was equally appropriate on the alternative ground that Plaintiff elected to stand by his pleadings for months after Motions to Dismiss were filed and prior to dismissal.

## CONCLUSION

For the foregoing reasons, the decision below should be summarily affirmed.

---

[10] *See Farrelly v. Sifuentes*, 124 F.3d 193 (5th Cir. 1997) ("Because Farrelly was notified in Sifuentes's motion to dismiss of the defects in his complaint he sought to remedy but waited until after the dismissal of his complaint to move for leave to amend, the denial of his motion for leave to amend was not an abuse of discretion."); *Whitaker v. City of Houston, Tex.*, 963 F.2d 831, 837 (5th Cir. 1992) (affirming denial of leave to amend post-dismissal since request was not sought during briefing); *Babb v. Dorman*, 33 F.3d 472, 479 (5th Cir.1994) (affirming denial of leave to amend because plaintiff declared the sufficiency of his pleadings and did not offer a sufficient amended complaint in response to defendant's motion to dismiss).

Respectfully submitted,

Dated: April 27, 2026

*/s/ Matthew W. McDade*
MATTHEW W. MCDADE (MSB # 103207)
BRYAN C. SAWYERS (MSB # 107144)
BALCH & BINGHAM LLP
1310 Twenty Fifth Avenue
Gulfport, MS 39501
Telephone: (228) 864-9900
Facsimile: (228) 864-8221
mmcdade@balch.com
bsawyers@balch.com

*Counsel for Mary Mahoney's, Inc. D/B/A Mary Mahoney's Old French House and Anthony C. Cvitanovich*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing brief was filed electronically on April 27, 2026, and will, therefore be served electronically upon all counsel.

*/s/ Matthew W. McDade*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that the foregoing:

1.　　This brief complies with Fed. R. App. P. 32(a)(7)(A)-(B) because it contains less than 13,000 words, with an exact word count of 8,141, exclusive of the parts excluded under Fed. R. App. P. 32(f).

2.　　This brief also complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced, roman style typeface of 14 points or more in the body of the brief and 12 point roman style typeface in the footnotes.

Date: April 27, 2026

*/s/ Matthew W. McDade*