**No. 25-60663**

---

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Todd McCain, individually and on behalf of all others similarly situated,
Plaintiff-Appellant

v.

Mary Mahoney's, Incorporated, doing business as Mary Mahoney's Old French House; Anthony C. Cvitanovich; Quality Poultry & Seafood, Incorporated; James W. Gunkel; Todd A. Rosetti; Does 1-10,
Defendants-Appellees

---

**Appeal from the U.S. District Court for the Southern District of Mississippi**
No. 1:24-CV-241, Hon. Louis Guirola, Jr.

---

### REPLY BRIEF OF PLAINTIFF-APPELLANT

---

*Respectfully submitted by:*

H.S. Bartlett III (La. Bar No. 26795),
   *Lead Appellate Counsel*
FISHMAN HAYGOOD LLP
201 St. Charles Ave., Suite 4600
New Orleans, LA 70170
T: (504) 586-5252
F: (504) 586-5250
tbartlett@fishmanhaygood.com

Gerald M. Abdalla, Jr. (MSB No.
   101213)
ABDALLA LAW, PLLC
602 Steed Road, Suite 200
Ridgeland, MS 39157
T: (601) 278-6055
jerry@abdalla-law.com

*Attorneys for Todd McCain, individually*
*and on behalf all others similarly situated*

4127194v1

**TABLE OF CONTENTS**

Table of Contents.................................................................................... i

Table of Authorities ............................................................................. ii

I.      Introduction ..............................................................................1

II.     Mr. McCain's Allegations of Injury-In-Fact More than Meet the
        "Plausibility" Requirement, Both in the Proposed Second
        Amended Complaint that the District Court Abused its
        Discretion in Not Allowing and in the First Amended
        Complaint that the District Court Erred in Dismissing ......................3

        A.      Mr. McCain's Allegations Are Not "Threadbare".....................3

        B.      The District Court's Dismissal of the First Amended
                Complaint and Denial of Leave to Amend with the
                Proposed Second Amended Complaint Are Not
                Supported by the Law ..............................................................11

III.    The Appellees' Briefing Fails to Provide Any Basis for
        Affirming the District Court's Judgment of Dismissal .....................14

IV.     The Appellees' Briefing Fails to Provide Any Basis for
        Affirming the District Court's Denial of Leave to Amend ................18

        A.      Mr. McCain did not Waive Appeal of the Denial of
                Leave to Amend.......................................................................18

        B.      Mr. McCain's Proposed Amendment Was Not Untimely........19

        C.      Mr. McCain's Proposed Second Amended Class
                Complaint Contained Plausible Allegations of Concrete
                Injury ......................................................................................24

V.      Conclusion..............................................................................26

Certificate of Service .........................................................................27

Certificate of Compliance ..................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Academy of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190 (5th Cir. 2021)......................................................23

*Allstate Indem. Co. v. Bhagat*, 164 F.4th 426 (5th Cir. 2026)...............................12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).........................................................4, 12

*Barilla v. City of Houston*, 13 F.4th 427 (5th Cir. 2021) ...............................11, 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................24

*Briddle v. Scott*, 63 F.3d 364 (5th Cir. 1995)........................................................23

*Burnett Specialists v. Cowen*, 140 F.4th 686 (5th Cir. 2025) ...............................11

*Calhoun v. Collier*, 78 F.4th 846 (5th Cir. 2023)......................................13, 18, 20

*Carson v. Polley*, 689 F.2d 562 (5th Cir. 1982).....................................................13

*Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762 (5th Cir. 2019) ..................12

*Clark v. Dep't of Public Safety and Corrections*, 141 F.4th 653 (5th Cir. 2025)........................................................................................................13

*Cole v. General Motors Corp.*, 484 F.3d 717 (5th Cir. 2007)......................4, 17-18

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000)...................4

*Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127 (5th Cir. 2009)...........................................................................................11

*Czeremcha v. Intern. Ass'n of Mach. & Aero. Workers*, 724 F.2d 1552 (11th Cir. 1984) ....................................................................................22

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594 (5th Cir. 1981).........................13

*Earl v. Boeing Co.*, 53 F.4th 897 (5th Cir. 2022).................................................12

*FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024).........................15

*Ghedi v. Mayorkas*, 16 F.4th 456 (5th Cir. 2021)................................................13

*Hebert v. Dizney*, 295 Fed. Appx. 717 (5th Cir. 2008) ...........................................24

*Heimlich v. Harris County*, 81 Fed. Appx. 816 (5th Cir. 2003) .............................22

*Huertas v. Bayer US LLC*, 120 F.4th 1169 (3d Cir. 2024)......................................24

*In re Recalled Abbott Infant Formula Products Liability Litigation*, 97
    F.4th 525 (7th Cir. 2024) ................................................................................15

*Lowery v. Mills*, 157 F.4th 729 (5th Cir. 2025) ......................................................12

*Onaka v. Shiseido Americas Corp.*, 2023 WL 2663877 (S.D.N.Y.
    3/28/2023) .......................................................................................................25

*Pederson v. La. State Univ.*, 213 F.3d 858 (5th Cir. 2000) ....................................11

*Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002).....................11

*Rose v. Grappler Pressure Pumping, L.L.C.*, 2025 WL 416996 (5th
    Cir. 2/6/2025)...................................................................................................21

*Rose v. Grappler Pressure Pumping, L.L.C.*, 721 F. Supp. 3d 510
    (W.D. Tex. 2024)..............................................................................................21

*Rose v. Grappler Pressure Pumping, L.L.C.*, 2024 WL 1516130
    (W.D. Tex. 2/2/2024)........................................................................................21

*Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003)....................................23

*Stevens v. St. Tammany Pari. Govt.*, 17 F.4th 563 (5th Cir. 2021).........................24

*Vetcher v. Immigration & Customs Enforcement*, 844 Fed. Appx. 691
    (5th Cir. 2021) .................................................................................................24

*Vielma v. Eureka Co.*, 218 F.3d 461 (5th Cir. 2000) .............................................22

*Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014)..................... 14-15

*Whitaker v. City of Houston*, 963 F.2d 831 (5th Cir. 1992) ...................................22

*Wilson v. Centene Management Co., L.L.C.*, 168 F.4th 217 (5th Cir.
    2026) ................................................................................................................17

iii

## I.    Introduction

The appellees' briefing actually provides a straightforward framework for analyzing whether the district court erred when it dismissed Todd McCain's First Amended Class Complaint and denied his Rule 59(e)/Rule 15(a) motion for leave to file a Second Amended Class Complaint. The QPS Appellees'[1] brief states, "Plaintiff would not need to contort the alleged facts to attempt to meet the 'widespread' mislabeling conduct prong … *if he had alleged facts to indicate that all snapper entrées were mislabeled for four years.*"[2] Mr. McCain alleged precisely this in the proposed Second Amended Class Complaint, with allegations supported by admissions and fact-findings in the parallel criminal proceedings that during the class period, of the 55,500 Snapper Entrees ordered and sold by Mary Mahoney's, "the overwhelming majority—if not all—were substituted with inexpensive Foreign Fish."[3] Thus, the appellees have made the point for reversal themselves.

---

[1] "The QPS Appellees" are Defendants-Appellees Quality Poultry & Seafood, Inc. ("QPS"), James W. Gunkel, QPS's business manager; and Todd A. Rosetti, QPS's sales manager, who filed one joint Appellee Brief. The remaining Defendants-Appellees—Mary Mahoney's, Inc., doing business as Mary Mahoney's Old French House; and Anthony C. Cvitanovich, Mahoney's manager—jointly filed another Appellee Brief and are referred to herein as "the Mahoney's Appellees."

[2] QPS Appellee Br., at 31 n.15 (emphasis added); *see also id.* at 27 ("Absent factual allegations that directly link the product a plaintiff purchased to the universe of products that were allegedly mislabeled, a plaintiff might endeavor *to allege facts indicating that the mislabeling was uniform or universal*….") (emphasis added).

[3] ROA.1270.

What the appellees ignore in the proposed Second Amended Class Complaint—as pointed out nine times in Mr. McCain's original appellant brief—is that Mr. McCain relied on a finding by the federal district court judge in the parallel criminal proceedings (in the transcript of the sentencing hearing for Mr. Cvitanovich) that the fraudulent mislabeling of inferior frozen foreign fish as fresh Gulf-caught snapper during 2016-2019 "***was essentially an unbroken chain*** of either identical or substantially similar conduct[.]"[4]

Under the appellees' own conceded standard—that an allegation that all snapper entrées in the class period were mislabeled would satisfy plausibility—an allegation of "an unbroken chain" of mislabeling for at least four years clearly meets that standard. During that period, Mr. McCain alleged he twice ordered snapper entrées from Mahoney's. That the chain was "unbroken" necessarily means there was no gap in the fraud during which Mr. McCain could have been served properly labeled snapper. And because the federal judge made this finding in a criminal proceeding where the defendants admitted to the fraud, the serving of mislabeled frozen foreign fish was not just "plausible"—it was admitted beyond a reasonable doubt.[5] Moreover, the court expressly found by a preponderance of the

---

[4] ROA.1312 – ROA.1313 (emphasis added); cited in Mr. McCain's Original Appellant Brief at 3, 22, 23, 24, 28, 33, 35, 38.

[5] As alleged in Mr. McCain's First Amended Class Complaint, the Mahoney's Appellees pled guilty to conspiring to defraud customers by knowingly receiving and misbranding imported fish as "premium higher priced local species." ROA.1401, ROA.1402, ROA.1412, ROA.1413, ROA.1425. As alleged in Mr. McCain's First Amended Class Complaint, the QPS Appellees

evidence that this fraudulent mislabeling was "an unbroken chain" of conduct throughout the entire four-year period—well more than merely "plausibly" alleged.

## II. Mr. McCain's Allegations of Injury-In-Fact More than Meet the "Plausibility" Requirement, Both in the Proposed Second Amended Complaint that the District Court Abused its Discretion in Not Allowing and in the First Amended Complaint that the District Court Erred in Dismissing

### A. Mr. McCain's Allegations Are Not "Threadbare"

The appellees' briefing is divorced from the actual record. They assert that "[i]t would be 'pure speculation' and conjecture to say the particular pieces of fish Plaintiff consumed on three occasions in the past 11 years (which Plaintiff believed was snapper), in fact, was not snapper…"[6]; that Mr. McCain's allegations are "hindsight speculation"[7]; that he "leap[s] to the conclusory assertion that 'the overwhelming majority—if not all' of the entrées were foreign fish"[8]; that his "allegations that the alleged substitution scheme was 'repetitious,' 'regular,' 'continuous,' and involved an 'overwhelming majority, if not all,' of the Snapper Entrées sold" were "conclusory, and gratuitous"[9]; that the allegations of economic harm in Mr. McCain's proposed Second Amended Class Complaint were

---

also pled guilty to the criminal conspiracy to defraud customers by selling imported inexpensive fish as "premium priced local fish species." ROA.1434 – ROA.1442, ROA.1445, ROA.1451 – ROA.1454, ROA.1461 – ROA.1465.

[6] Mahoney's Appellee Br., at 23.
[7] Mahoney's Appellee Br., at 25.
[8] Mahoney's Appellee Br., at 29.
[9] QPS Appellee Br., at 25-26.

"anchor[ed] … to conclusions, threadbare allegations, labels, and conjecture"[10]; and that Mr. McCain's allegations are "based entirely on speculation and conjecture derived from the criminal proceedings."[11]

Yet, as the QPS Appellees acknowledge, "the district court must accept as true" both "the non-conclusory allegations of the complaint" and "any attachments thereto, to ascertain if standing is plausible on its face."[12] They likewise concede that the district court was required to "examine McCain's own attachments, on which he explicitly relied in asserting his allegations."[13] And they concede that, in claims such as these, "it could be undisputed that a product line was uniformly defective/mislabeled."[14]

The appellees' assertions that Mr. McCain's allegations are "conclusory," "threadbare," "conjecture," or "speculation" fly in the face of the record—a fact hinted at by their own assertion that his allegations are "speculation and conjecture *derived from the criminal proceedings*." That phrase is self-defeating. Allegations cannot be conclusory, conjectural, speculative, or threadbare if they are admittedly "derived from" and based on criminal records attached to the complaints. The First

---

[10] QPS Appellee Br., at 32.
[11] QPS Appellee Br, at 35.
[12] QPS Appellee Br., at 14 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).
[13] QPS Appellee Br., at 35.
[14] QPS Appellee Br., at 27 n.12 (citing *Cole v. General Motors Corp.*, 484 F.3d 717, 722-23 (5th Cir. 2007)).

Amended Class Complaint attached press releases from the U.S. Attorney's Office for the Southern District of Mississippi regarding the guilty pleas of the Mahoney's Appellees[15] and the QPS Appellees[16]; the criminal charging documents for Mahoney's,[17] Mr. Cvitanovich,[18] QPS,[19] Mr. Gunkel,[20] and Mr. Rosetti[21]; the guilty plea agreements of Mahoney's,[22] Mr. Cvitanovich,[23] QPS,[24] Mr. Gunkel,[25] and Mr. Rosetti[26]; and Mahoney's corporate consent to the guilty plea.[27] The Second Amended Class Complaint *additionally* attached the transcripts of the sentencing hearing[28] and guilty plea hearing[29] for Mr. Cvitanovich, and the transcript of the sentencing hearing[30] for Mr. Rosetti.

　　Far from "threadbare," Mr. McCain's allegations form a densely stitched quilt of detailed facts. Each patch reinforces the next until the overall pattern is too substantial to dismiss as mere loose threads. The First and proposed Second

---

[15] ROA.172.
[16] ROA.174.
[17] ROA.176.
[18] ROA.212.
[19] ROA.188.
[20] ROA.227.
[21] EOA.237.
[22] ROA.201.
[23] ROA.214.
[24] ROA.221.
[25] ROA.230.
[26] ROA.241.
[27] ROA.206.
[28] ROA.1294.
[29] ROA.1338.
[30] ROA.1380.

Amended Class Complaints attach a wealth of detailed criminal-proceedings documents and transcripts in which the appellees admitted to their fraudulent conduct and the federal district court judge made specific factual findings about its pervasiveness.

As highlighted throughout Mr. McCain's original appellant brief and repeated above, the district court in the criminal proceedings made a specific factual finding when sentencing Mr. Cvitanovich: from at least 2016 through 2019, the criminal defendants (appellees here) engaged in "essentially an unbroken chain" of fraudulent conduct.[31] Later during that hearing, the court observed:

> So here when the Court looks **to the record in this matter**, the **factual basis** that was read into the record at the time of the plea hearing, which **Mr. Cvitanovich agreed to**, stated that beginning in 2015 he assumed responsibilities for purchasing much of the food that Mahoney's prepared or served; that thousands of pounds of fish per year were ordered that did not bear the names of those native to local waters **even though they were represented to be local premium seafood on the menu**; and in 2018 and 2019, the defendant intentionally misled and defrauded customers by mislabeling approximately 17,000 pounds of fish held for sale at the restaurant after it had been shipped in interstate commerce. The sale was of

---

[31] ROA.1312 ("So here when the Court compares the time frame encompassed by the charging instrument, to which the defendant pled guilty, with the earlier time period included in the Presentence Report, 2016, 2017, it seems fairly clear that the conduct in that earlier time period was part of the same course of conduct as that which occurred during the time period covered by the bill of information. As is stated in the Presentence Report, when the previous head chef retired in 2016, Mr. Cvitanovich assumed all responsibility for ordering seafood and fish products for the kitchen. And the scheme was apparently preexisting and he was aware of it, but he continued it knowing what was going on. So in other words, **there was essentially an unbroken chain** of either identical or substantially similar conduct that occurred from the time the defendant began ordering the seafood products for the kitchen and continuing through the time period covered by the bill of information.") (emphasis added).

6

inexpensive foreign frozen imported fish, including Lake Victoria Perch from Africa, tripletail from Suriname, and Unicorn Filefish from India. So those are all the ***facts that were acknowledged, and they're not disputed***.[32]

The appellees suggest that an equally plausible inference from the allegations is that Mr. McCain could have purchased snapper entrées containing actual local-caught snapper. They characterize the opposite inference as a mere "possibility." But this ignores the criminal court's findings in the documents attached to the complaints, that the fraudulent mislabeling of inferior frozen foreign fish was essentially the appellees' business plan. If the fraud was designed to profit from selling cheaper foreign fish at premium local-caught prices, it is implausible that the businesses and their representatives would have departed from that plan. Indeed, in the First Amended Class Complaint, Mr. McCain included a specific—not conclusory—allegation of a January 19, 2018, email among QPS personnel laying out their business plan in stark terms: "'Raise the price and make money where we can make money!'"[33]

The predication of the appellees' business plan on fraudulent mislabeling of inferior frozen foreign fish is no conjecture or speculation. It is based on facts found by the district court and admitted by the appellees and their representatives in the parallel criminal proceedings—facts documented in transcripts attached to

---

[32] ROA.1317 (emphases added).
[33] ROA.150.

Mr. McCain's complaints. At Mr. Cvitanovich's sentencing hearing, his attorney admitted that Mr. Cvitanovich "continued ***a practice that was already going***. …"[34] The sentencing court emphasized this finding that this was the appellees' regular business practice:

> This is an offense in which Mr. Cvitanovich pled to ***a fraudulent course of conduct*** of misbranding and mislabeling thousands of meals—or the fish in these thousands of meals for a time period of 2016 to 2019. It is true that he is not the one who originated ***this practice***, but he did continue it and knew ***he was continuing it*** and over that period of time served a large number of meals, which are documented in the Presentence Report and have been set forth in the record here today. He engaged in ***a pattern of misleading customers in an effort to reduce costs***.[35]

Mr. McCain alleged in his First Amended Class Complaint that the defendants' "scheme and conspiracy was to directly profit from the sale of inexpensive frozen Foreign Fish as high-priced premium local fish at the expense of Plaintiff and the putative class," who therefore "suffered ascertainable monetary losses based on Defendants' fraudulent scheme."[36] Mr. McCain alleged, as supported by the documents from the criminal proceedings attached to his complaints, that the defendants' business plan was to profit from fraudulently overcharging for the frozen foreign fish. "[T]hey targeted Plaintiff and the Classes' funds and avoided the expenses associated with selling high-priced premium fresh fish."[37]

---

[34] ROA.1321.
[35] ROA.1328.
[36] ROA.147.
[37] ROA.166.

Similarly, the allegation in the proposed Second Amended Class Complaint that the appellees' fraudulent mislabeling of the frozen foreign fish was "regular" and "repetitious" was not conclusory, but was taken directly from the sentencing hearing transcript for Mr. Cvitanovich.[38] And the allegation in the proposed Second Amended Class Complaint that the "overwhelming majority, if not all," of the snapper entrées during the class period were actually mislabeled frozen foreign fish is also supported by the attached sentencing hearing transcript of Mr. Cvitanovich, as documented in footnotes three and four of the proposed amendment. Mr. Cvitanovich, in objecting during sentencing to the number of victims of the fraud during the 2016-2019 period, pointed to evidence in the Presentence Report that equal numbers of people ordered mislabeled entrées prior to the end of the scheme in November 2019 as ordered the subsequently properly labeled entrées in a corresponding time period after the end of the scheme, which was confirmed in a finding by the district court:

> [I]t's Paragraph 43 of the Presentence Report that says that … during the period from 2016 to 2019, roughly 55,500 lunch or dinner entrées **were sold that were misbranded** at a time when Mr. Cvitanovich was solely responsible for purchasing the fish. And I think the argument in the objection is, well, in the corresponding time after the menu changed, **another 50,000 people** bought the same dishes.[39]

---

[38] ROA.1313 ("The conduct was **repetitious,** it was **regular,** it was similar, and it was at regular and rather small time intervals.") (emphasis added).
[39] ROA.1307 – ROA.1308.

9

The plausible allegation this supports is that approximately 50,000 of the entrées at issue were sold, total—the same amount being sold both before and after the menu change—and the criminal judge's finding that that approximate number also constituted those that were misbranded during the charged (class) period shows that the misbranded fish constituted "the overwhelming majority, if not all" of those entrées. This is particularly plausible in light of the "unbroken chain" and business-plan-oriented documentation and allegations.

The appellees address none of this. Not once do either of the appellees' briefs even mention the word "unbroken," much less address the attached material containing the federal district court's finding that the appellees' conduct was an "unbroken chain." The appellees' entire defense of the district court's judgments rests on their assertion that Mr. McCain's allegations of widespread, pervasive, and total replacement of fresh-caught local snapper with cheap frozen foreign fish were merely speculative. By ignoring the detailed allegations and attached materials that belie this assertion, the appellees illustrate why the district court's dismissal and denial of leave to amend—both also predicated on ignoring Mr. McCain's allegations and the materials attached to the complaints—are reversible error.

10

**B.      The District Court's Dismissal of the First Amended Complaint and Denial of Leave to Amend with the Proposed Second Amended Complaint Are Not Supported by the Law**

This Court reviews the dismissal of Mr. McCain's First Amended Complaint under Rule 12(b)(1), including all of the material attached to the complaint, *de novo. Barilla v. City of Houston*, 13 F.4th 427, 430 (5th Cir. 2021) (citing *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 133 (5th Cir. 2009)). The QPS Appellees agree that this is the proper standard of review.[40]

The Mahoney's Appellees attempt to insert a "clear error" standard, but they misapprehend when that standard applies. They quote *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315, 319 (5th Cir. 2002), as providing, "We review for clear error all facts expressly or impliedly found by the district court"[41]—but omit the critical beginning of that sentence: "Standing is a question of law ***that we review de novo***. We review for clear error all facts expressly or impliedly found by the district court." *Id.* (citing *Pederson v. La. State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000)) (emphasis added). The distinction matters. The clear-error standard might apply to findings about when deliveries of foreign fish were ordered and

---

[40] QPS Appellees' Br., at 13-14 (citing *Burnett Specialists v. Cowen*, 140 F.4th 686, 693 (5th Cir. 2025)).

[41] Mahoney's Appelles' Br., at 17.

delivered, but the legal question—whether a plausible allegation of concrete injury was made based on those facts—is reviewed *de novo*.

As the QPS Appellees concede, the plausibility framework from *Iqbal* applies.[42] Under that framework, in a 12(b)(1) analysis this Court takes the well-pleaded allegations as true, viewing them in the light most favorable to the plaintiff. *Barilla*, 13 F.4th at 431. And as this Court recognized in *Cicalese v. Univ. of Tex. Med. Branch*, a district court errs under this standard (as analogously applied in a 12(b)(6) context) when it "inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis" better suited to summary judgment. 924 F.3d 762, 767 (5th Cir. 2019); *see also Allstate Indem. Co. v. Bhagat*, 164 F.4th 426, 434 (5th Cir. 2026); *Lowery v. Mills*, 157 F.4th 729, 737 (5th Cir. 2025). Oddly, the QPS Appellees criticize Mr. McCain for citing *Cicalese* because that decision "did not concern pleading standards for Article III standing or injury in fact, but was on review of a Rule 12(b)(6) motion to dismiss,"[43] even though they had already agreed that "the familiar facial plausibility standards applicable in the Rule 12(b)(6) context apply."[44] This Court definitively recognizes that the plausibility analysis is

---

[42] QPS Appellees' Br., at 14 ("When, as here, the challenge is limited to a facial attack, ***then the familiar facial plausibility standards applicable in the Rule 12(b)(6) context apply.***") (emphasis added) (citing *Earl v. Boeing Co.*, 53 F.4th 897, 903 (5th Cir. 2022) (in turn citing *Iqbal*, 556 U.S. at 678).

[43] QPS Appellee's Br., at 33.

[44] QPS Appellees' Br., at 14

equivalent in both contexts. *See Ghedi v. Mayorkas*, 16 F.4th 456, 464 (5th Cir. 2021) ("In other words, the same plausibility standard that applies in the Rule 12(b)(6) context also applies to Rule 12(b)(1).").

This Court reviews the district court's denial of Mr. McCain's motion for leave to amend for abuse of discretion—but "with a bias in favor of granting leave to amend." *Calhoun v. Collier*, 78 F.4th 846, 854 (5th Cir. 2023) (quoting *Carson v. Polley*, 689 F.2d 562, 584 (5th Cir. 1982)).[45] Importantly, "'Discretion' may be a misleading term, for Rule 15(a) severely restricts the judge's freedom…. Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Id.*

This is particularly true here, where the dismissal of the First Amended Class Complaint was explicitly "***WITHOUT PREJUDICE.***"[46] In denying Mr. McCain's Rule 59(e)/Rule 15(a) motion, the district court implicitly recognized that its earlier dismissal did not close the litigation, writing, "Since the Court did not enter a final judgment along with its previous Memorandum Opinion and

---

[45] The QPS Appellees quote to *Clark v. Dep't of Public Safety and Corrections*, 141 F.4th 653, 661 (5th Cir. 2025) that "leave to amend is by no means automatic," but conveniently for their argument leave out that the next sentence of *Clark* is "But 'unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.'" *Id.* (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

[46] ROA.1251, ROA.1263 (emphasis added).

Order, the Court will now enter one as required by Fed. R. Civ. P. 58(a)."[47] But even that "final judgment" dismissed Mr. McCain's claims "without prejudice."[48]

### III.    The Appellees' Briefing Fails to Provide Any Basis for Affirming the District Court's Judgment of Dismissal

Nothing in the appellees' briefing supports affirming the district court's judgment dismissing Mr. McCain's First Amended Class Complaint. Their principal tack is that Mr. McCain's allegations of economic injury are not plausible because they are conclusory, speculative, or threadbare. As detailed above, that tack has no wind to fill the appellees' sails; and it flounders on the shoals of the appellees' own guilty pleas and the district court's finding in the criminal proceedings that the admitted fraudulent conduct was regular, repetitious, and an "unbroken chain" of how the appellees did business during the class period. And, while the appellees decry diners' lack of "genetic testing" of food they are served, they cite no legal authority requiring such testing before a defrauded consumer may seek recompense.[49]

Accordingly, the cases on which appellees rely are readily distinguishable:

- In *Wallace v. ConAgra Foods, Inc.*, the court emphasized that the plaintiffs argued "the non-kosher status of *some* packages of beef tainted *all* Hebrew

---

[47] ROA.1612.
[48] ROA.1613.
[49] Mahoney's Appellees' Br., at 24.

National's products," meaning they were "'not required to allege the *specific products or packages* that failed to meet the represented standard.'" 747 F.3d 1025, 1030 (8th Cir. 2014). This is not *Wallace*. Mr. McCain alleged that *all* snapper entrées during the class period failed to meet the standard of being the fresh local-caught snapper they were represented to contain, and backed that allegation with admissions and findings from the parallel criminal proceedings. He does not argue he need not prove the snapper entrées he ordered contained substituted frozen foreign fish.

- In *In re Recalled Abbott Infant Formula Products Liability Litigation*, similarly to *Wallace*, the court based its 12(b)(1) dismissal on a finding that "plaintiffs here cannot and do not maintain that the infant formula they purchased was contaminated." 97 F.4th 525, 531 (7th Cir. 2024). Here, Mr. McCain can and does allege that the snapper entrées he purchased were mislabeled. *Abbott* is inapposite.

- Nor does *FDA v. Alliance for Hippocratic Medicine* support the appellees. 602 U.S. 367, 382 (2024). That case involved a claim that was merely a "vehicle for the vindication of the value interests of concerned bystanders." Mr. McCain and the putative class are not bystanders. Under the allegations in the First Amended Complaint and its attachments, they are consumers who were themselves defrauded.

15

The appellees also make hay of Mr. McCain's allegation that Mahoney's and QPS sold "other types of seafood and poultry that were not mislabeled and fraudulently sold to consumers." But it is unclear how the appellees' treatment of "other" seafood and poultry undercuts the plausibility of allegations that it was their business plan to sell inferior frozen foreign fish as fresh local-caught snapper. Selling genuinely labeled "other" seafood and poultry items may have veiled their fraud regarding the snapper entrées in legitimacy, enabling them to escape detection until the news broke. But it does not undercut the plausibility of their admitted—and judicially found to be an "unbroken chain" of—fraudulent mislabeling specifically of the snapper entrées.

The appellees also reiterate their argument—and the district court's finding—that the snapper entrées "apparently functioned as expected"[50] because Mr. McCain ordered the dish again and did not become ill. But physical illness is not required to allege financial fraud. And the "apparently satisfied" analysis is exactly the kind of inference *against* the plaintiff that the plausibility standard prohibits. Neither set of appellees rebuts Mr. McCain's argument that the "apparently" framework is a sure sign of an impermissible inference against the

---

[50] QPS Appellees' Br., at 31.

plaintiff.[51] Indeed, the QPS Appellees appear to concede that such "factual testing" and "weighing of evidence" would be "improper."[52]

The appellees throw other arguments at the wall that were not part of the district court's basis for its judgment, to see what sticks, but those arguments are not fully cooked or appropriate for the pleadings-stage of this litigation.[53] *See Wilson v. Centene Management Co., L.L.C.*, 168 F.4th 217, 227 (5th Cir. 2026) ("In considering a plaintiff's Article III standing in the Rule 23 context, courts accept ***arguendo*** the merits of the plaintiff's legal claim. Because the Plaintiffs' ability to recover for a claim 'under governing law is a separate question' from standing, 'it is sufficient for standing purposes that the Plaintiffs seek recovery for an economic harm that they allege they have suffered.'") (quoting *Cole*, 484 F.3d

---

[51] Original Appellant Br., at 33-34 (citing Black's Law Dictionary, "inference" (11th ed.) (defining "inference" to include a finding of what is "apparent" from the evidence)).

[52] QPS Appellees' Br., at 34, 35.

[53] For example, they argue that "plaintiffs must still plausibly allege that they actually are worse off financially due to the defendants' fraud," QPS Appellees' Br., at 18, which Mr. McCain alleges, *e.g.*, at ¶ 24 of the First Amended Class Complaint (ROA.147) ("The purpose of Defendants' scheme and conspiracy was to directly profit from the sale of inexpensive frozen Foreign Fish as high-priced premium local fish ***at the expense of Plaintiff and the putative class***, who would otherwise not have purchased the Foreign Fish, and ***suffered ascertainable monetary losses based on Defendants' fraudulent scheme***.") (emphasis added), at ¶ 116 of the First Amended Class Complaint (ROA.168) ("at a minimum," tying the economic harm to the "artificially inflated prices for the Foreign Fish"), and at ¶¶ 27, 28, and 53-54 of the Second Amended Class Complaint (ROA.1275, ROA.1281) (laying out the overcharging damage and measure); and they argue that the allegations are unclear about the basis of the overpricing, QPS Appellees' Br., at 32-33 & n.16, which is contained in Mr. McCain's allegations at ¶¶ 36(b) and (d) of the FACC (ROA.149 – ROA.150) (containing appellees' text message explaining the financial disparity of the foreign fish and why they use it in the fraud), ¶ 41 of the FACC (ROA.152) (alleging that premium local snapper was "high-priced"), and ¶ 8 of the SACC (ROA.1270) ("The Foreign Fish were not as marketable pricewise; as they were inferior and accordingly much less expensive in comparison to authentic snapper.").

at 273)). It should also be noted that the appellees' rhetorical flourishes are as devoid of record support as their substantive argument; for example, they assert that the "Defendants have already paid substantial restitution" in the criminal proceedings that resulted from their admitted conduct,[54] but they ignore that the government did not seek a restitution award in the criminal proceedings due to the large number of victims and the difficulty in locating them all.[55]

## IV.    The Appellees' Briefing Fails to Provide Any Basis for Affirming the District Court's Denial of Leave to Amend

The appellees likewise fail to show that the district court had "a substantial reason to deny leave to amend." *Calhoun*, 78 F.4th at 854.

### A.    Mr. McCain did not Waive Appeal of the Denial of Leave to Amend

As a threshold matter, the Mahoney's Appellees' waiver argument must be rejected. They contend that Mr. McCain waived his argument regarding denial of leave to amend by failing to cite legal authority in his original appeal brief.[56] But in addition to extensive citation to the allegations in the Second Amended Complaint and its attached criminal-proceedings materials throughout the background discussion in Mr. McCain's original appellant's brief, he cited

---

[54] Mahoney's Appellees' Br., at 10.
[55] ROA.1296 – ROA.1297 (sentencing transcript for Mr. Cvitanovich) ("… there's been a finding that the identification of the victims would involve too complex a process to identify, locate, and notify all of them; so therefore restitution is not an issue in this case").
[56] Mahoney's Appellees' Br., at 27 n.6.

specifically to *Calhoun* as providing the analytical framework for reviewing the denial of the Rule 59(e)/Rule 15(a) motion, and returned to the *Calhoun* standard throughout his brief. [57] He summarized his argument as including that the district court's error in holding there were no plausible allegations of economic injury "was repeated by finding Mr. McCain's proposed Second Amended Class Complaint would have been futile" in the face of the allegations and attached criminal materials that the fraudulent mislabeling was "regular," "continuous," and part of an "unbroken chain" of conduct. [58] And he briefed specifically and extensively the district court's error in finding the proposed Second Amended Class Complaint would be futile.[59]

Indeed, the QPS Appellees expressly recognized that "[t]he same cases and authorities" discussed regarding dismissal of the First Amended Class Complaint also apply to "McCain's proposed Second Amended Complaint."[60] They do not join in the Mahoney's Appellees' waiver argument.

### B.    Mr. McCain's Proposed Amendment Was Not Untimely

Equally unavailing are the appellees' arguments that the denial of leave to amend should be affirmed on the basis that the proposed amended complaint was

---

[57] Appellant's Br., at 26, 28, 32.
[58] Appellant's Br., at 27-29.
[59] Appellant's Br., at 32, 33, 34, 35, 36, 38, 39, 41, 42.
[60] QPS Appellees' Br., at 25.

untimely or "procedurally deficient" because the Cvitanovich sentencing transcript became publicly available before the district court's June 10 judgment.

First, the appellees do not address that, as to timeliness of the proposed amendment, the district court already expressly rejected the argument that amendment should not be allowed on that basis. The district court found that Mr. McCain "had access to the information he used to prepare his proposed amendment before the parties finished briefing Defendants' Motions to Dismiss," but then specifically held, "Although McCain's delay has caused Defendants and the Court to expend additional resources, the delay has not caused a sufficient burden on Defendants and the Court to warrant denying McCain's Motion to Amend on that basis."[61] The appellees' entire timeliness argument on appeal must, therefore, overcome this finding by the district court under the abuse of discretion standard applicable to its ruling on the motion for leave to amend. *See Calhoun*, 78 F.4th at 854. While the district court's denial of leave to amend on the basis that amendment would be futile *was* an abuse of discretion under the *Calhoun* standard, the district court's finding as to timing of amendment was well within its discretion.

Moreover, the appellees' argument on the merits of the timing issue is unavailing. The Mahoney's Appellees rely on this Court's unpublished decision in

---

[61] ROA.1608.

*Rose v. Grappler Pressure Pumping, L.L.C.* to argue that a motion to reconsider "should not be granted unless the facts alleged are actually newly discovered and could not have been discovered by proper diligence." 2025 WL 416996, *3 (5th Cir. 2/6/2025). But a critical distinction exists: in *Rose*, the dismissal was with prejudice, rejecting the plaintiff's argument that it should instead be without prejudice to allow an amendment. *See Rose*, 721 F. Supp. 3d 510, 520 (W.D. Tex. 2024). Here, the dismissal was specifically "without prejudice," so the stricter standard from *Rose* does not apply.

The timeline in *Rose* is also illustratively distinct. There, the original complaint was filed on August 11, 2023, and the plaintiff's opposition to the motion to dismiss on November 3, 2023—four months before the March 1, 2024, dismissal. Moreover, the court found that the information underlying the post-judgment motion to amend was publicly available on the internet after October 22, 2021—almost two years before the original complaint. *Rose*, 2024 WL 1516130, *3 (W.D. Tex. 2/2/2024). Here, by contrast, the Mahoney's Appellees concede that "Plaintiff had access to Mr. Cvitanovich's sentencing transcript when it was publicly available on March 3, 2025" [62]—only approximately three months before the judgment, with no multi-year lead-time for knowledge of the background facts as in *Rose*.

---

[62] Mahoney's Appellee Br., at 32 n.7.

The appellees also rely on *Vielma v. Eureka Co.*, but that case concerned the timeliness of amending to add federal-law causes of action based on the same facts that were in the original complaint—not an assertion of newly discovered facts. 218 F.3d 461, 468-69 (5th Cir. 2000).

The Mahoney's Appellees then quote *Heimlich v. Harris County* as upholding "the denial of leave to amend where the party seeking to amend has not clearly established that he could not reasonably have raised the new matter prior to the trial court's merits hearing."[63] They omit, however, that *Heimlich* cited for this point to *Vielma* and to *Whitaker v. City of Houston*, 963 F.2d 831 (5th Cir. 1992)—both distinguishable. As discussed, *Vielma* did not involve newly discovered facts, but rather new causes of action based on the same facts. In *Whitaker*, the plaintiff did not file his proposed amended complaint until almost two months after judgment—beyond Rule 59's deadline—and filed it only under Rule 15(a), not Rule 59. 963 F.2d at 832-33, 837. That contrasts with this case, where Mr. McCain filed his proposed amendment timely and invoked both Rule 59(e) and Rule 15(a). Notably, the *Whitaker* court also adopted the rule enunciated by the Eleventh Circuit in *Czeremcha v. Intern. Ass'n of Mach. & Aero. Workers*, [724 F.2d 1552, 1554-56 (11th Cir. 1984)] that "unless the dismissal order of the district court expressly states or clearly indicates the court's intention to dismiss the action, a

---

[63] Mahoney's Appellees' Br., at 34 (citing *Heimlich*, 81 Fed. Appx. 816 (5th Cir. 2003)).

22

plaintiff may seek leave to amend under Fed. R. Civ. P. 15(a), even though the complaint has been dismissed." Here, the initial dismissal was "without prejudice,"[64] so *Whitaker* limits the reach of *Heimlich* in this case.

The appellees' citation to *Heimlich* also omits that the quoted language was actually from *Briddle v. Scott*, 63 F.3d 364, 380 (5th Cir. 1995). *Briddle* addressed a plaintiff arguing "that the district court abused its discretion by not vacating its judgment so as to allow Briddle to amend his complaint to assert new claims raised for the first time more than a year after the judgment." 63 F.3d at 379. Given such a long delay after judgment, a heightened burden to "clearly establish" that the amended matter could not reasonably have been raised earlier makes sense. That is not this case. None of the other cases relied on by the appellees are similar, as they involved dismissals **with prejudice**, longer gaps between briefing and judgment, failure to include amended material in multiple prior amendments, or failure to present any new factual matter at all.[65]

---

[64] ROA 1263.

[65] In *Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003), the opposition to the motion to dismiss was filed on August 15, 2001, and the judgment not issued until March 20, 2002, more than seven months later, the dismissal was with prejudice, and the post-judgment motion to amend "did not explain what new facts would be pleaded, nor did plaintiffs attach an amended complaint to the motion." 332 F.3d at 863; *see also* 2002 WL 32191306 (*Rosenzweig* appellants' brief), at *11-13. Also, the plaintiffs "admit they deliberately chose to delay amending their complaint," and the "motion to amend hardly presents any new information." *Id.* at 865. In *Academy of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, the motion to dismiss had been filed on March 9, 2018, and the judgment of dismissal almost a year later on February 22, 2019. 998 F.3d 190, 195-96, 202 (5th Cir. 2021); and the post-judgment motion for leave to amend did not attach an amended complaint, which the court found operative. *Id.* ("Though Plaintiffs' request was within thirty days of the district court's entry of dismissal, we cannot

### C.   Mr. McCain's Proposed Second Amended Class Complaint Contained Plausible Allegations of Concrete Injury

The appellees also double down on their argument that the First Amended Class Complaint did not contain plausible allegations of concrete injury by arguing the same as to the proposed Second Amended Class Complaint, but the cases on which they rely to not support their argument.

For example, the appellees cite *Huertas v. Bayer US LLC*, 120 F.4th 1169 (3d Cir. 2024)—but *Huertas* actually supports Mr. McCain: "Plaintiffs need only plausibly allege that they purchased contaminated products. ***This does not require a showing that all products in the recall were contaminated, as this would impose a heightened standard requiring that it be more likely than not—or probable—that Plaintiffs purchased a defective product.***" *Id.* at 1179 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to

---

conclude that the court abused its discretion because Plaintiffs did not seek to amend during the eleven months that Quest's motion was pending or provide an amended complaint once they did move for leave to amend."). *Stevens v. St. Tammany Pari. Govt.* was a denial of a fourth attempt to plead claims, after losing in state court, and filing original, first amended, and second amended complaints in federal court and then seeking to file a third amended complaint, with plaintiffs providing no explanation of why the facts in third amended petition were not otherwise available previously and the district court citing the repeated failures to cure deficiencies in previous amendments. 17 F.4th 563, 575 (5th Cir. 2021). In *Hebert v. Dizney*, the proposed amendment would have been the fourth amendment. 295 Fed. Appx. 717, 720-21, 725 (5th Cir. 2008). And, in *Hebert*, the plaintiffs did not even attempt to argue that there were new facts not previously available. *Id.* at 725. *Vetcher v. Immigration & Customs Enforcement* (an unpublished decision relied on by the Mahoney's Appellees) involved a proposed amendment that contained facts the plaintiff "reasonably could have raised before dismissal." 844 Fed. Appx. 691, 694 (5th Cir. 2021).

infer [contamination] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [an injury].")). Such a "heightened standard" is precisely what the district court imposed here, and what the appellees seek when they demand that Mr. McCain's allegations be based on "genetic testing" of the entrées he ordered.

In *Onaka v. Shiseido Americas Corp.*, 2023 WL 2663877 (S.D.N.Y. 3/28/2023), the court did not require both pervasive mislabeling and frequent purchases, as the appellees suggest. Rather, the court required "*either*" allegations to support that the same product line purchased by the plaintiff contained the mislabeled ingredient "*or*" allegations that the plaintiff purchased the products with sufficient frequency for it to be plausible that they had purchased the mislabeled products. *Id.* at *5. Accordingly, the appellees have no support for their argument that Mr. McCain must have alleged both that the mislabeling was pervasive in the snapper entrées he purchased and that he ordered the snapper entrées with some requisite frequency. Where, as here, he alleged pervasive mislabeling and attached materials in which the criminal judge found an "unbroken chain" of such mislabeling during the period when Mr. McCain purchased his snapper entrées, there is no requirement that he also allege some threshold frequency of purchase.

25

## V.    Conclusion

For these reasons and those detailed in Mr. McCain's original appeal brief, this Court should reverse the district court's June 10 Judgment dismissing Mr. McCain's First Amended Class Complaint, reverse the district court's November 17 Judgment denying leave to file the Second Amended Class Complaint, and remand for further proceedings.

Respectfully submitted,

*/s/ H.S. Bartlett III*

H.S. Bartlett III (La. Bar No. 26795),
  *Lead Appellate Counsel*
FISHMAN HAYGOOD LLP
201 St. Charles Ave., Suite 4600
New Orleans, LA 70170
T: (504) 586-5252
F: (504) 586-5250
tbartlett@fishmanhaygood.com

Gerald M. Abdalla, Jr. (MSB No. 101213)
ABDALLA LAW, PLLC
602 Steed Road, Suite 200
Ridgeland, MS 39157
Telephone: (601) 278-6055
jerry@abdalla-law.com

Attorneys for Todd McCain, individually and on behalf all others similarly situated

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2026, I electronically filed the foregoing with the Clerk of Court via the court CM/ECF system, which sent a notice of filing to all counsel of record.

*/s/ H.S. Bartlett III*
H.S. Bartlett III

## RULE 32(g) CERTIFICATE OF COMPLIANCE

1. This Brief contains less than 7,500 words, exclusive of parts exempted by Fed. R. App. P. 32(f). The exact word count is 6,418, exclusive of parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font in text and 12-point Times New Roman font in footnotes.

Date: May 18, 2026                    Respectfully submitted,

                                      /s/ H.S. Bartlett III
                                      H.S. Bartlett III